**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, and PETER ANDREYEV,**

**Plaintiffs,**

**-against-**

**KLEISSNER INVESTMENTS S.R.O., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,**

**Defendants.**

**25 Civ. 17065 (HB)**

**ECF CASE**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Andrew Gerber

Gerber Law PLLC

27 Union Square West, Suite 301

New York, NY 10003

(212) 658-1810

andrew@gerberlaw.com

Of Counsel:

Victor Suthammanont

Kostelanetz LLP

7 World Trade Center, 34th Floor

New York, NY 10007

## <u>TABLE OF CONTENTS</u>

Table of Contents ........................................................................................................... i

Table of Authorities........................................................................................................ ii

Introduction ..................................................................................................................... 1

Background ...................................................................................................................... 3

    I.    Kleissner Investments S.R.O. and Intelligence X ....................................... 3

    II.    Daniel's Law and Atlas Data Privacy's Lawsuits ..................................... 6

    III.    Procedural History .................................................................................. 7

Standard of Review ......................................................................................................... 8

Argument .......................................................................................................................11

    I.    Plaintiffs Presumably Agreed to ArbItration.........................................11

        A.    The Plaintiffs or Their Agents Presumably Entered into the Agreement......................11

        B.    The Agreement Contains a Mandatory Arbitration Provision ..................................... 13

    II.    Plaintiffs' Claims Are Within the Scope of the Arbitration Provision ............................. 14

    III.    The Arbitration Provision Is Enforceable ........................................................................ 15

Conclusion ...................................................................................................................... 18

**TABLE OF AUTHORITIES**

**Cases**

*AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643 (1986)...... 10, 14

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513 (3d Cir. 2009) .. 14

*Davis v. Dell, Inc.,* 2007 WL 4623030 (D.N.J. Dec. 28, 2007) .................................................. 12

*E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S,* 269
 F.3d 187 (3d Cir. 2001) ........................................................................................................11

*Elliott-Lewis Corp. v. Int'l Bhd. of Elec. Workers,* 2008 WL 4435925 (E.D. Pa. Sept. 30, 2008) 14

*Gay v. CreditInform,* 511 F.3d 369 (3d Cir. 2007) .................................................................. 9, 15

*Guidotti v. Legal Helpers Debt Resol.,* LLC, 716 F.3d 764 (3d Cir. 2013) ............................. 9, 10

*Harris v. Green Tree Fin. Corp.,* 183 F.3d 173 (3d Cir. 1999) ...................................................... 9

*In re Remicade (Direct Purchaser) Antitrust Litig.,* 938 F.3d 515 (3d Cir. 2019) ........................ 9

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156 (3d Cir. 2009)................................... 9

*Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.,* 247 F.3d 44 (3d Cir. 2001) ..... 18

*Meyer v. Uber Techs., Inc.,* 868 F.3d 66 (2d Cir. 2017) ............................................................... 13

*Nicosia v. Amazon.com, Inc.,* 834 F.3d 220 (2d Cir. 2016)........................................................... 12

*Parkin v. Avis Rent A Car Sys. LLC,* 774 F. Supp. 3d 707 (D.N.J. 2025) ...................................... 9

*Serv. Emps. Int'l Union Healthcare Pennsylvania v. Heritage Valley Health Sys.,* 842 F. App'x
 757 (3d Cir. 2021)................................................................................................................. 14

*Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529 (3d Cir. 2005) ........................................... 10

*Zirpoli v. Midland Funding,* LLC, 48 F.4th 136 (3d Cir. 2022)..................................................... 9

**Laws of the Czech Republic**

Act No. 216/1994 Coll. on Arbitration Proceedings and Enforcement of Arbitral Awards.... 10, 16

Act No. 99/1963 Coll., Civil Procedure Code ...................................................................... 10, 15

Czech Code of Civil Procedure § 106............................................................................................. 9

**Rules**

Fed. R. Civ. P. 11(b) ................................................................................................................11, 12

Fed. R. Civ. P. 11(b)(3) ...............................................................................................................2, 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 9

Fed. R. Civ. P. 56.................................................................................................................... 9

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 4....................................................................................... 8

Federal Arbitration Act, 9 U.S.C. §§ 1-2 ................................................................................ 8

Federal Arbitration Act, 9 U.S.C. §§ 1-4 ................................................................................ 1

## INTRODUCTION

Defendant Kleissner Investments S.R.O. ("Kleissner Investments") respectfully submits this memorandum of law in support of its motion to compel Plaintiffs' claims to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-4, and related relief.

As explained more fully in the Memorandum of Law in Support of Defendant's Motion to Dismiss ("Motion to Dismiss Br.") filed contemporaneously with this motion, Plaintiff Atlas Data Privacy Corp. ("Atlas") and various individuals (two in this case, the "Individual Plaintiffs") filed hundreds of lawsuits in state court alleging violations of Daniel's Law, which was designed to prevent disclosure of certain public servants' home addresses and unlisted home telephone numbers. One of the defendants in those suits is Kleissner Investments, which is based in and operates entirely from the Czech Republic, from where it provides a search engine that allows users to assess security threats on the internet. Defendant removed to this Court on October 30, 2025. DE 1 (Notice of Removal).

The specific allegations concerning Kleissner Investments in Plaintiffs' Complaint are threadbare. But among the allegations was that Defendant operates a website, intelx.io (the "Website"), and on that Website Defendant "made available" or "disclosed" the "name and address and/or unpublished home telephone number" of the Individual Plaintiffs and other Covered Persons under Daniel's Law. Compl. ¶¶ 37, 59. In addition, Plaintiffs pleaded that Defendant failed to cease such alleged disclosures after receiving takedown requests purportedly transmitted by the Plaintiffs. *Id.* ¶ 51. With a single exception concerning information as of the date of the Complaint's filing, *id.* ¶ 52, none of these allegations was made "upon information and belief." Thus, presumably, Plaintiffs, their counsel, or their other agents made such pleadings

"after an inquiry reasonable under the circumstances" to ensure that the factual contentions in the Complaint had "evidentiary support."[1] *See* Fed. R. Civ. P. 11(b)(3).

There was only one method of doing so—visiting Defendant's Website which is operated from and hosted in the Czech Republic. The Website, like other search engines, indexes the content of other publicly available data and returns results based on a user's search. A user *cannot* search the Website by an individual or entity's name or address. Importantly for purposes of this motion, there is no way to access full information on the Website (such as a full name, address, and telephone number) or even to determine what type of information is available about a person on the Website unless a user is registered with Kleissner Investments and affirmatively assents to the Website's Agreement on Provision of Search Engine Services (the "Agreement").

The Defendant is unable to identify which of Plaintiffs or their attorneys or agents searched the Website to determine that the Complaint's allegations had a factual basis. Nevertheless, assuming Plaintiffs and/or their attorneys or agents accessed the full search capability on the Website to ensure that the Complaint's allegations were supported, they would have entered into the Agreement during registration, forming an enforceable contract. The Agreement includes a clear and conspicuous written arbitration provision requiring that all disputes arising from or pertaining to that Agreement, which governs data-removal requests through the incorporated Privacy Policy, be decided by binding arbitration in the Czech Republic in accordance with Czech law. Therefore, this Court should compel arbitration of Plaintiffs' claims in accordance with parties' Agreement.

---

[1] At least some allegations in the Complaint, however, may be inaccurate. *See* Declaration of Peter Kleissner ¶¶ 32-37; *see also* Mot. to Dismiss Br. 6 n.3.

**BACKGROUND**

## I.    KLEISSNER INVESTMENTS S.R.O. AND INTELLIGENCE X

Defendant Kleissner Investments is a foreign společnost s ručením omezeným (a Central European legal structure equivalent to a limited liability company) incorporated in the Czech Republic. *See* Declaration of Peter Kleissner ¶ 4 ("Kleissner Decl."). Defendant operates its "Intelligence X" service via the Website, which it hosts from its offices in Prague. *Id*. ¶¶ 5, 7. The purpose of Intelligence X is to provide open-source intelligence for entities and governments. *Id.* ¶ 8. Intelligence X, like other search engines such as Google, uses web-crawling techniques to index the content of other publicly available data and does not publish any information as the initial publisher of such data. *Id.* ¶¶ 9-12. The Website allows a user to conduct a search by specific criteria that include email addresses, domains, URLs, Bitcoin addresses, and certain internet and electronic identifiers. *Id.* ¶ 15. A user *cannot* search by an individual or entity's name or address. *Id*. Full results of user searches are only available to registered customers. *Id.* ¶¶ 16-17. Anonymous users (those who have not registered) are presented only with previews of results, which are generally fully redacted. *Id.* ¶ 16. For example, they appear as follows:



Simply stated, there is no way to access full information via the Website (such as a full name, address, and telephone number published elsewhere on the internet) or even to see what

*type* of information may be available unless a user is registered with Kleissner Investments, and through that registration process, affirmatively assents to the Agreement. *Id.* ¶¶ 16-18, 24.

All visitors to the Website—registered or not—are presented with a home screen clearly displaying a "Terms of Service" link in English. *Id.* ¶ 19. A screenshot of the Website's home screen is below.



Following the "Terms of Service" link takes the user to a page entitled "AGREEMENT ON PROVISION OF SEARCH ENGINE SERVICES," which contains the entire Agreement, again presented in English (just over 2,000 words in a large, legible font). *Id.* ¶ 20; *see also* Kleissner Decl. Exhibit A.

Visitors who wish to register with Kleissner Investments to utilize the Website's full functionality can do so by visiting intelx.io/signup, entering their account details and chosen password, filling out a CAPTCHA to confirm they are human, and affirmatively checking a box stating: "I agree to the Terms of Service & Privacy Policy." Kleissner Decl. ¶ 24. Both the Terms of Service and Privacy Policy are hyperlinked, and a user will not be allowed to complete their

registration process without checking the box. A screenshot of the Website's registration page is below.



The full Agreement specifies that the "contractual parties" are Kleissner Investments and all users of the Website, "including free users (whether using the services with a registered account or not) and paid users." *See* Kleissner Decl. Exhibit A. The Agreement dictates that it "and all rights and obligations of the Parties [i.e., Kleissner Investments and any user of the website] arising from or related to this Agreement shall be governed by Czech law." *Id.* ¶ 39. The Agreement, through the incorporated Privacy Policy, addresses how data-removal requests should be submitted. *See* Kleissner Decl. ¶¶ 23, 25. Finally, the Agreement contains a clear mandatory arbitration provision, stating: "All disputes arising from this Agreement and in connection therewith shall be finally decided by the Arbitration Court attached to the Economic Chamber of the Czech Republic. . . The place of arbitration shall be Prague and the language shall be English." Kleissner Decl. Ex. A ¶ 39.

## II.    DANIEL'S LAW AND ATLAS DATA PRIVACY'S LAWSUITS

Notwithstanding the above, Plaintiffs filed the Complaint against Kleissner Investments and unknown individuals and entities in New Jersey state court on April 30, 2025. *See* Compl. The Complaint alleges that Kleissner Investments violated Daniel's Law by disclosing or re-disclosing on the Internet or otherwise making available the home addresses and/or unpublished home telephone numbers of "Covered Persons" under Daniel's Law. *See* Compl. ¶¶ 35, 51-52. This case is one of over a hundred lawsuits brought by Atlas (in this case, as the assignee of 19,658 Covered Persons, *see* Compl. ¶ 21) and varied individual plaintiffs.

The Complaint's allegations concerning the conduct of Kleissner Investments (as opposed to background on Daniel's Law and Plaintiffs' conduct) are sparse. Plaintiffs allege that "visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number" including those of Covered Persons. Compl. ¶ 38. In addition to the Individual Plaintiffs, *id.*,[2] Plaintiffs apparently allege that "each" of the 19,658 Covered Persons' information was disclosed or made available on Defendant's Website, *id.* ¶ 25, an allegation Plaintiffs presumably ensured that there was a basis for pleading. As noted above, there is no way to access full information on the Website, such as a full name, address, and telephone number, unless a user is registered with Kleissner Investments and affirmatively assents to the Agreement. To the extent that protected information of any Covered Person or the Individual Plaintiffs was disclosed on the Website, Plaintiffs do not explain who, or how many people, registered with Kleissner Investments to gain access to these results.

---

2    The allegation in Paragraph 38 concerning Plaintiff Peter Andreyev may be inaccurate, at least in part, as is the allegation in Complaint ¶ 51. No search on the Website reveals the home address or unlisted phone number of Andreyev. Kleissner Decl. ¶ 34. The only information available for Andreyev was his business address and phone number. *Id.* ¶ 37.

The Complaint further alleges that, on or about January 6, 2024, the Individual Plaintiffs and Atlas (on behalf of its assignors) began sending "written nondisclosure requests (via) email" to Defendants using Atlas's email system. Compl. ¶ 49. The Complaint included an image of the email from Plaintiff Andreyev in which he requested removal of his home address. *Id*. ¶ 50. Plaintiffs allege that Kleissner then "failed to cease the disclosure or re-disclosure . . . of the protected information of the Individual Plaintiffs and Covered Persons within the time period required by Daniel's Law." *Id*. ¶ 51. Again, Plaintiffs do not explain how they gained access to the Website's search results, but presumably Plaintiffs or their agents visited the Website to ensure that there was a basis for the allegation.

A review of Defendant's user and customer records did not reveal an immediate connection to the Plaintiffs or their known counsel and/or other agents. Kleissner Decl. ¶ 38.

## III.    PROCEDURAL HISTORY

Following filing of the Complaint, Plaintiffs engaged a vendor to serve Kleissner Investments via the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"). *See* Aug. 12, 2025 Letter of Rahul Agarwal, DE 1-1 ¶ 4. The Complaint and service documents were provided to Kleissner Investments on or about October 2, 2025. DE 1 ¶ 2. Defendant contested in the Czech Republic whether the Complaint was properly delivered under Czech Law. DE 1 ¶ 3. On October 30, 2025, Kleissner Investments removed the case to this Court. *See* DE 1. On November 6, 2025, this Court entered an order extending Defendant's time to answer the complaint to December 17, 2025. DE 6.

On January 14, 2026, the Czech court issued a decision returning the Hague Service Convention without a certificate of delivery. Kleissner Decl. Exhibit C. Subsequently, the Court

entered an order allowing Defendant to respond to the Complaint by February 25, 2026. DE 25 (Feb. 5, 2026 Order). Plaintiffs have not filed proof of service in this matter.[3]

Contemporaneously with this motion, Kleissner Investments is filing a Motion to Dismiss based upon lack of personal jurisdiction, that Daniel's Law is unconstitutional under the First Amendment and the Foreign Commerce Clause, and a failure to state a claim upon which relief can be granted. Defendant respectfully submits that the Court should rule on the motion to dismiss first because (1) the Court requires jurisdiction over the parties to make a ruling (and there is no personal jurisdiction over the Defendant) and (2) it presents several complete defenses to the action, a decision on which obviates the need to determine which Plaintiffs, claims, and remedies are subject to arbitration under Czech law, which may require discovery.[4]

## <u>STANDARD OF REVIEW</u>

The FAA allows any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA applies to written provisions involving "commerce among the several States or with foreign nations" and establishes that written arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. §§ 1-2. The Third Circuit has recognized that "the FAA establishes a strong federal policy in favor of the resolution of disputes through

---

[3]    To be clear, Defendant is not waiving proper service of the summons and complaint. It maintains that service was not properly completed under Czech law, and that the ruling of the Czech court, including that this Court should determine matters of Czech law, was in error. Preserving all of its rights and remedies with respect to any Czech proceedings, however, Defendant is not seeking dismissal of the action pursuant to Fed. R. Civ. P. 12(b)(4).

[4]    If the Court were to order jurisdictional discovery in this case, which Defendant contends is unwarranted and futile, then it respectfully requests for the sake of efficiency, that it obtain discovery in connection with its motion to compel arbitration if necessary. *See*, *infra*, p. 13, n. 9.

arbitration," *Zirpoli v. Midland Funding*, LLC, 48 F.4th 136, 138 (3d Cir. 2022) (cleaned up), and

that "the law presumptively favors the enforcement of arbitration agreements." *Harris v. Green

Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999). This is broadly in line with Czech law concerning

arbitration provisions. Kokešová Report at 19-20 (citing § 106 of the Czech Code of Civil

Procedure).

Issues concerning the "interpretation and construction of arbitration agreements" are

governed by federal substantive law, applying the laws of the involved state or territory as

necessary. *See Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007). The Third Circuit uses a

simple two-step review to assess motions to compel arbitration. A court must find first that a

valid agreement to arbitrate exists, and second that the parties' dispute falls within the

agreement's scope. *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir.

2019); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

In evaluating whether an agreement to arbitrate exists, courts in the Third Circuit will

sometimes use the traditional Rule 12(b)(6) standard without discovery and other times use the

Rule 56 summary-judgment standard after limited discovery. *Parkin v. Avis Rent A Car Sys. LLC*,

774 F. Supp. 3d 707, 711 (D.N.J. 2025). To determine which standard is appropriate, the Third

Circuit has articulated the following framework: A court will compel arbitration "when it is

apparent, based on the face of a complaint, and documents relied upon in the complaint, that

certain of a party's claims are subject to an enforceable arbitration clause," *Guidotti v. Legal

Helpers Debt Resol.*, LLC, 716 F.3d 764, 776 (3d Cir. 2013), or if "no genuine issue of fact

concerning the formation of the agreement [to arbitrate]" exists. *Kirleis*, 560 F.3d at 159. The

summary judgment standard applies, however, if "the complaint and its supporting documents

are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to

compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F3d at 774. If limited discovery is ordered, then afterwards a court "may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id*.

In evaluating whether parties' dispute falls within the Agreement's scope, the Court should consider facts related to the dispute and the text of the Agreement itself. The Supreme Court has held that "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986). Therefore, given the strong federal policy and precedent in favor of enforcing arbitration agreements, any ambiguity about the scope of arbitrability should be resolved in favor of arbitration. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (noting the "presumption in favor of arbitrability" when determining "both the existence and the scope of an arbitration agreement").

Under Czech law, "[a]s soon as the court finds . . . that the case is to be heard in accordance with the parties' agreement in proceeding before arbitrators . . ., it may not continue to hear the case[.]" Kokešová Report at 19 (citing Provision 106(1) of Act No. 99/1963 Coll., Civil Procedure Code). Moreover, whether the case is arbitrable may be decided by the arbitrator. *See* Kokešová Report at 20 (citing Provision 15(1) of Act No. 216/1994 Coll. on Arbitration Proceedings and Enforcement of Arbitral Awards ("The arbitrators shall be entitled to examine their jurisdiction.")). Thus, the determination of whether Plaintiffs' claims are subject to arbitration is the same as federal law on the issue.

## ARGUMENT

## I.    PLAINTIFFS PRESUMABLY AGREED TO ARBITRATION

The Court should compel Plaintiffs to arbitrate if they (or their attorneys or agents on their behalf)[5] entered into the Agreement, and the Court finds that the dispute is within the scope of the arbitration provision in that Agreement.

### A.    The Plaintiffs or Their Agents Presumably Entered into the Agreement

As explained above, a user of Defendant's Website *cannot* search by an individual or entity's name or address. Kleissner Decl. ¶ 15. Moreover, anonymous users (those who have not registered, but who are still presented with the Terms of Service and Privacy Policy on the Website) are presented only with previews of results, which are generally fully redacted such that a user cannot determine what type of information may be revealed. *Id.* ¶ 16. Full results of user searches that might reveal information such as names, phone numbers, and addresses are only available to registered customers. *Id.* ¶ 17. Accordingly, there is no way to access information protected by Daniel's Law (a full name in connection with a home address and unlisted telephone number) from the Website unless a user is registered with Kleissner Investments, and through that registration process, affirmatively assents to the Agreement. *Id.* ¶¶ 16-18, 24.

Federal Rule of Civil Procedure 11(b) requires that an attorney "signing, filing, submitting, or later advocating" a pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support[.]"[6] Notwithstanding the one clear factual error in

---

5    The Third Circuit recognizes that agents can bind their principals to agreements to arbitrate. *See, e.g., E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates*, *S.A.S*, 269 F.3d 187, 194-95 (3d Cir. 2001).

6    Rule 11(b)(3) also provides for allegations "if specifically so identified" that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"

the Complaint concerning Plaintiff Andreyev (whose home address and telephone number were not available on the Website), Kleissner Decl. ¶ 34, in light of Rule 11(b), Plaintiffs (or their attorneys or agents) presumably undertook a "reasonable" inquiry of whether the protected information of the Individual Plaintiffs or Atlas's assignors was available on the Website and by doing so, entered into the Agreement. Otherwise, they would have been confronted with a fully redacted search return from which they could not reasonably determine what type of information was available, much less whether it was the name of a Covered Person in connection with a home address or home telephone number.[7]

Thus, to gather evidentiary support for the Complaint in compliance with Rule 11(b), three distinct actions presumably occurred. *First*, one or more Plaintiffs (or their attorneys or agents) presumably registered as users of the Website in order to determine whether protected information was available on it. *See* Compl. ¶ 38. In doing so, those Plaintiffs necessarily manifested assent via clickwrap agreement[8] to the Website's Terms of Service dictating all rights,

---

Other than arguably Paragraph 52 of the Complaint ("Upon information and belief . . ."), there are no such allegations identified in the Complaint.

[7]      In the event that Plaintiffs or their attorneys proceeded on this basis and without properly identifying that its allegations were based on such guesswork or on "information and belief," Defendant fully reserves all rights available to it to seek appropriate relief from this Court.

[8]      Under Czech law, where users of a website are on-notice of the site's hyperlinked Terms of Service and affirmatively click a box indicating "I agree to the Terms of Service," mutual assent exists. Under Czech law, "clickwrap" assent forms a valid contract—and satisfies the written-form requirement—where a user is clearly placed on notice of hyperlinked Terms of Service and affirmatively clicks "I agree." *See* Kokešová Report at 16-18.

The same is true under New Jersey law. *See Davis v. Dell, Inc.*, 2007 WL 4623030, *4 (D.N.J. Dec. 28, 2007) ("when a party uses his computer to click on a button signifying his acceptance of terms and conditions in connection with an online transaction, he thereby manifests his assent to an electronic agreement") (internal citations omitted). This form of agreement is a "clickwrap" or "click-through" agreement, which are common online and generally enforced by courts. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233-38 (2d Cir. 2016) (finding that because "[c]lickwraps force users to 'expressly and unambiguously manifest either assent or rejection'. . . they are certainly the easiest method of ensuring that terms are agreed to")

obligations, and disputes arising out of the use of Defendant's product shall be governed by Czech law. *Second*, the Individual Plaintiffs and Atlas allegedly sent take-down notices en masse requesting that certain protected information be removed from the Website's search results. *Id.* ¶ 49. *Third*, the registered Plaintiffs (or their attorneys or agents) presumably re-visited the Website to collect evidence that the protected information was still available to view after the ten-day statutory compliance period had expired. *Id.* ¶ 51. During each of these visits to and use of the Website, Plaintiffs exercised their rights under the Agreement and were continuously placed on-notice of its terms via the hyperlinked Terms of Service on every page.

Accordingly, the Court may presume that the Plaintiffs directly, or via their attorneys or agents, entered into the Agreement by using or registering to use the Website.[9]

### B.    The Agreement Contains a Mandatory Arbitration Provision

The parties' Agreement clearly contains a binding mandatory arbitration provision. The Agreement states: "All disputes arising from this Agreement and in connection therewith shall be finally decided by the Arbitration Court attached to the Economic Chamber of the Czech Republic. . . The place of arbitration shall be Prague and the language shall be English." Kleissner Decl. Ex. A ¶ 39. Accordingly, the Plaintiffs presumptively entered into the mandatory arbitration provision.

---

(internal citations omitted); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75, 77 (2d Cir. 2017) (acknowledging that "[c]ourts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented" and enforcing Uber's clickwrap agreement after "considering the perspective of a reasonable smartphone user").

9      If Plaintiffs contest that they did not enter into the Agreement directly or through their attorneys or agents, Defendant requests discovery to test such claims and determine whether Plaintiffs are party to the Agreement, including through their agents.

## II.   PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION PROVISION

The Website's arbitration provision requires users to arbitrate "[a]ll disputes arising from this Agreement and in connection therewith [it]." *Id*. ¶ 39. The Agreement fully incorporates the Privacy Policy, which is hyperlinked within. *Id.* ¶ 4. The Privacy Policy specifies the Defendant's procedures for data collection and removal, stating that "[c]ontent removal requests may be submitted at https://intelx.io/abuse" and listing reasons removal requests may be granted, including "personal data." Kleissner Decl. Exhibit B ¶ c. Thus, the Agreement requires all disputes arising from the free or paid usage of the Website's search engine (including disputes arising from the incorporated Privacy Policy, such as requests for data removal) be "decided by the Arbitration Court attached to the Economic Chamber of the Czech Republic and the Agrarian Chamber of the Czech Republic." Kleissner Decl. Ex. A ¶ 39.

Because the Agreement's arbitration provision is broad in scope, there is a presumption of arbitrability for any claims or disputes which are not clearly excluded. *Serv. Emps. Int'l Union Healthcare Pennsylvania v. Heritage Valley Health Sys.*, 842 F. App'x 757, 760 (3d Cir. 2021) (quoting *AT&T Techs, Inc.,* 475 U.S. at 650) (a broad arbitration provision entails a presumption of arbitrability, and that presumption can be rebutted by "only the most forceful evidence of a purpose to exclude the claim from arbitration"); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 556 (3d Cir. 2009) (arbitration provision was broad, and therefore applied where it was "susceptible of an interpretation that covers the dispute in this case"); *see also Elliott-Lewis Corp. v. Int'l Bhd. of Elec. Workers*, No. CIV.A.07-4446, 2008 WL 4435925, at *4-6 (E.D. Pa. Sept. 30, 2008) (arbitration provision was broad, and therefore

applied where the contract did "not *expressly* limit the subject matter of disagreements covered") (emphasis added).

Plaintiffs' claims fall squarely within the broad scope of the Agreement's arbitration provision because they arise (1) from registered use of the Website's search engine services in general and (2) from a data-removal request addressed by the Privacy Policy specifically. Plaintiffs' claims under Daniel's Law only arise because Defendant allegedly "failed to cease the disclosure or re-disclosure on the Internet" following the nondisclosure requests. *See* Compl. ¶ 51. The Privacy Policy, which is part of the Agreement to which Plaintiffs presumably assented, governs the parties' agreement concerning such data-removal requests. Kleissner Decl. ¶ 23-25. As such, the dispute about the purported noncompliance with those requests is subject to the arbitration provision in paragraph 39 of the Agreement.

Accordingly, the Court should find a valid arbitration agreement exists.

## III.    THE ARBITRATION PROVISION IS ENFORCEABLE

The Third Circuit is clear that if the arbitration clause covers the dispute at issue, as is the case here, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Gay*, 511 F.3d at 387 (cleaned up). While on its face, the arbitration agreement covers the dispute in this case, the court may also look to the law of the "involved state or territory." *Id.* at 388. In this case, it would be the law of the Czech Republic pursuant to the choice of law provision in the Agreement. As noted above, under Czech law, once the court finds that the parties agreed to proceed before arbitrators, it may not continue to hear the case. Kokešová Report at 19-20 (citing Provision 106(1) of Act No. 99/1963 Coll., Civil Procedure Code). Moreover, determinations concerning whether the case is arbitrable may be decided by the arbitrator. *See* Kokešová Report at 20 (citing Provision 15(1) of Act No. 216/1994 Coll. on

Arbitration Proceedings and Enforcement of Arbitral Awards ("The arbitrators shall be entitled to examine their jurisdiction.")).

The Czech Republic Act No. 216/1994 Coll. on Arbitration Proceedings and Enforcement of Arbitral Awards provides that arbitration agreements must be in writing, as the Agreement here clearly is. Kokešová Report at 11-12. Under Czech law, arbitrability is determined by (1) the nature of the dispute (i.e., the "property" character of the claim); (2) whether the parties may "conclude a settlement regarding the subject matter of the dispute[;]"[10] and (3) the absence of a statutory exclusion. Kokešová Report at 3. The arbitrability of claims is determined on a claim-by-claim basis on the basis of the arbitrator's determination of its jurisdiction. Kokešová Report at 20-21.

Under Czech law, a dispute has a "property character" when the dispute "affects the property sphere of a participant and whether it is capable of having an economic (monetarily expressible) value." Kokešová Report at 4. But the concept is broader than mere monetary disputes and may include claims for performance (such as injunctive relief) if such performance aims at the protection of property rights. *Id.* at 4. The property character of a dispute may arise from the breach of a statutory duty. *Id.* at 5.

Plaintiffs seek monetary damages in this action in the form of alleged "actual damages, not less than liquidated damages[,]" punitive damages, and attorneys' fees and costs, as well as injunctive relief. *See* Compl. at ¶¶ A-G (DE 1 at 26). At a minimum, the actual and liquidated damages are clearly "property" in character. *See* Kokešová Report at 6. Despite that punitive damages are not recognized under Czech law damages (which may include liquidated damages

---

[10]    Because the parties may settle the claims at issue, including by not enforcing certain "personality rights" if those are even applicable, this element is unquestionably satisfied. *See* Kokešová Report at 9-10.

under Daniel's Law because they have a punitive component), given the monetary nature of such damages, *see* Kokešová Report at 6-7, they appear to qualify as having a property character under Czech law.

The injunctive relief may also have a "property character," but would require specific assessment by an arbitrator depending on the nature of the rights affected under Czech law. *See* Kokešová Report at 7. Accordingly, the dispute here satisfies the "property character" under Czech law.

Finally, as to statutory exclusions, only one might apply—which is whether the dispute arises from a "consumer contract." *See* Kokešová Report at 11. This exclusion applies when the dispute arises from a person's status as a consumer, that is whether it was an "individual, who, outside his trade, business or profession, enters into a contract or has other dealings with an entrepreneur." *See* Kokešová Report at 10-11. Here, because Atlas is a "legal entity" and not an "individual," the exclusion does not apply. *See* Kokešová Report at 11. With respect to the Individual Plaintiffs, to the extent that their agents accessed the Website on their behalf, those agents were acting in the course of their "trade, business or profession" and accordingly the exclusion would not apply. Even if the Individual Plaintiffs personally accessed the Website, they did so within the course of their "profession" as both are law-enforcement officers and did so in order to assert rights and claims granted to them in the course of their profession.

Accordingly, under Czech law, the arbitration provision in the Agreement is enforceable against the Plaintiffs. In the alternative, if there is a dispute about enforceability under Czech law, such disputes are subject to determination by the Czech arbitrator, which is the best situated authority to make rulings on challenges under Czech law. Court have repeatedly held that arbitration should be ordered absent "positive assurance" that the arbitration provision is

incapable of an interpretation covering the dispute. *See Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (collecting cases). Accordingly, the arbitration agreement is enforceable under Czech law, or at least the determination of its enforceability under Czech law is properly submitted to arbitration in the first instance.

## **CONCLUSION**

For the reasons set forth above, this Court should grant Defendant's motion (including after discovery, if necessary as to whether and which Plaintiffs accessed Defendant's Website) and direct Plaintiffs' claims to arbitration in the Czech Republic. Defendant seeks an order dismissing this litigation, or in the alternative, staying all claims pending such arbitration.

February 25, 2026

_____
Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
    Victor Suthammanont
    Kostelanetz LLP
    7 World Trade Center, 34th Floor
    New York, NY 10007
    (212) 719-2649
    vsuthammanont@kostelanetz.com