**Mgr. Alžběta Kokešová, attorney**

Křivoklátská 254, 199 00, Praha 18 • CBA no. 19495 • Data mailbox: 7nsq29i
kokesova.a@gmail.com • +420 721 726 614

# LEGAL ANALYSIS OF THE ARBITRATION CLAUSE
## UNDER THE LAWS OF THE CZECH REPUBLIC

# **CONTENTS**

Introduction ........................................................................................................................... 1

Opinion ................................................................................................................................. 2

   1.   Requirements under Czech Law for a Validly Concluded Arbitration Agreement or
Arbitration Clause .............................................................................................................. 2

      1.1.   Arbitrability ........................................................................................................... 2

      1.2.   Written Form of the Arbitration Agreement and Arbitration Clause ........................ 11

   2.   Electronic Legal Acts and the Possibility to Conclude a Contract by Clickwrap under
Czech Law ........................................................................................................................ 14

      2.1.   Requirements for Legal Acts by Electronic Means ................................................. 14

      2.2.   Conclusion of a Contract by Clickwrap .................................................................. 16

   3.   The Effect of Agreeing to an Arbitration Clause in the Contract: Binding Effect on Courts
and the Arbitrators' Power to Rule on their Own Jurisdiction ................................................. 19

      3.1.   Exclusion of Court Jurisdiction .............................................................................. 19

      3.2.   Arbitrators' Power to Rule on their own Jurisdiction .............................................. 20

      3.3.   Applicable Law ...................................................................................................... 21

   4.   Summary ................................................................................................................... 24

i

**INTRODUCTION**

<u>Author.</u> Mgr. Alžběta Kokešová, attorney, registered seat at Křivoklátská 254, Letňany, 199 00, Prague 18 Czech Republic

<u>Qualifications.</u> I graduated the Charles University, Faculty of Law in Prague, in 2017. During my university studies, I commenced professional practice at a law firm specializing in arbitration law and related procedural matters, where, following completion of my Master's degree in law, I worked as an attorney trainee (associate). Subsequently I joined another law firm specializing in e-commerce and online services. Since successfully passing the Czech Bar Examination in 2020, I have been practicing as an independent attorney, with a long-term professional focus on e-commerce and online services, unfair competition, intellectual property and related areas of private law. As part of this specialization, I also deal with domain disputes resolved through arbitration proceedings.

<u>Assignment.</u> I have been engaged by attorneys for Defendant Kleissner Investments s.r.o. to provide an opinion concerning Czech law on arbitration agreements. The assignment was to provide an overview of the laws of the Czech Republic concerning arbitration clauses, and to assess potential legal effects of an arbitration clause such as the one contained in the Agreement on Provision of Search Engine Services, focusing on three questions:

1) requirements under Czech Law for a Validly Concluded Arbitration Agreement or Arbitration Clause,
2) electronic Legal Acts and the Possibility to Conclude a Contract by Clickwrap under Czech Law, and
3) the Effect of Agreeing an Arbitration Clause in the Contract: Binding Effect on Courts and the Arbitrators' Power to Rule On their Own Jurisdiction.

<u>Materials.</u> In preparing this opinion, I relied upon the following materials in addition to my legal training and experience and applicable law cited below:

1) Agreement on Provision of Search Engine Services (available at https://intelx.io/terms)
2) Civil action (Complaint) dated on April 30, 2025 to Superior Court of New Jersey, Law Division, Essex County

<u>Prior Publications.</u> In accordance with Fed. R. Civ. P. 26(a)(2), my publications from the prior ten years are as follows:

1) *How to deal with customer deletion requests under the GDPR in practice*? (18.12.2018, available at: https://www.podnikatel.cz/clanky/jak-se-v-praxi-poprat-s-zadosti-o-vymaz-zakaznika-podle-gdpr/)

1

2) *No more automatic redirection to the most suitable language version of the e-shop?* (20.11.2018, available at: https://elegal.cz/konec-automatickeho-presmerovani-na-nejvhodnejsi-jazykovou-verzi-e-shopu)

3) *How will the "button" proposal change ordering in e-shops?* (31.10.2019, available at: https://elegal.cz/jak-zmeni-tlacitkova-novela-objednavani-v-eshopech)

4) *The Court of Justice of the European Union has invalidated the Privacy Shield – what does this mean in practice?* (7.8.2020, available at https://elegal.cz/soudni-dvur-eu-zrusil-privacy-shield-co-to-znamena-v-praxi-)

5) *Is the agency or the client responsible for distributing commercial communications?* (7.5.2020, available at https://elegal.cz/odpovida-za-sireni-obchodnich-sdeleni-agentura-nebo-klient)

## OPINION

1.    **REQUIREMENTS UNDER CZECH LAW FOR A VALIDLY CONCLUDED ARBITRATION AGREEMENT OR ARBITRATION CLAUSE**

### 1.1.    ARBITRABILITY

Arbitration under Czech law may be conducted only if the dispute falls within the category of disputes that may be decided in arbitration at all (i.e., is "arbitrable") and, at the same time, the parties have validly concluded an arbitration agreement / arbitration clause in the form required by law. The basic framework is set by Act No. 216/1994 Coll., on Arbitration Proceedings and Enforcement of Arbitral Awards (**"Arbitration Act"**), in particular Sections 1 to 3.

| § 1 The Arbitration Act | This Act governs: (a) the resolution of property disputes by independent and impartial arbitrators; (b) the resolution of disputed matters falling within association self-government by an association's arbitration commission under the Civil Code; and (c) the enforcement of arbitral awards. |
| --- | --- |
| § 2 The Arbitration Act | (1) The parties may agree that property disputes between them, with the exception of disputes arising from contracts concluded by an entrepreneur with a consumer, disputes arising in connection with the enforcement of decisions, and incidental disputes which would otherwise fall within the jurisdiction of a court or in respect of which a special statute so provides, shall be decided by one or more arbitrators or by a permanent arbitration court (the arbitration agreement). (2) An arbitration agreement may be validly concluded if the parties could conclude a settlement regarding the subject matter of the dispute. |

> **(3)** An arbitration agreement may relate to:
> **(a)** an individual dispute that has already arisen (arbitration agreement); or
> **(b)** all disputes that may arise in the future out of a particular legal relationship or a defined range of legal relationships (an arbitration clause).
> **(4)** Unless the arbitration agreement provides otherwise, it shall apply both to rights arising directly from the relevant legal relationships and to the issue of the legal validity of those legal relationships, as well as to rights related to those rights.
> **(5)** The arbitration agreement is also binding upon the parties' legal successors, unless the parties expressly exclude this in the agreement.

The starting point is that arbitrability is conditioned by:

a)    the property character of the dispute,

b)    the possibility to conclude a settlement regarding the subject matter of the dispute, and

c)    the absence of a statutory exclusion.

This summary of conditions is also reflected in legal literature, e.g., JUDr. Ing. Pavel Horák, Ph.D., Presiding Judge of the Civil and Commercial Division of the Supreme Court of the Czech Republic:

> *In the Czech legal order, arbitrability is, in principle, of an objective nature defined by three basic conditions that must be cumulatively met. It must be a dispute between the parties to the arbitration agreement, such dispute must have a property character, and the parties may conclude a settlement regarding the subject matter of the dispute.[1]*

These conditions are discussed in more detail below.

### 1.1.1.  PROPERTY CHARACTER OF THE DISPUTE.

In the above-cited provisions, the act limits arbitration to **property disputes**, without further defining this term either in the act or in any other statute. The property character of a dispute has therefore been interpreted by the courts and addressed in legal literature.

According to legal literature, a **property dispute**, i.e., a:

> *dispute concerning property rights," may include "all disputes that have a* **reflection in the property sphere** *of the participants in the legal relationship, i.e.,*

---

[1] *(HORÁK, Pavel. Objektivní arbitrabilita – možnosti rozhodčího řízení. Bulletin advokacie, 2018, č. 9, s. 23-26)*

3

>*disputes whose subject matter can be expressed in property values, can be valued, quantified, and have a qualified reflection in the property sphere of a participant to the dispute.*[2]

According to the established legal view, a property dispute must be construed broadly. The decisive factor is whether the claim affects the property sphere of a participant and whether it is capable of having an economic (monetarily expressible) value. The concept is not to be narrowed only to purely monetary disputes.

This interpretation is consistent with the case law of the Supreme Court of the Czech Republic, which has concluded that property rights are to be understood broadly - the decisive factor is whether it concerns a right "*having the nature of a property value,*" and not merely the formal type of action.

The Supreme Court of the Czech Republic previously reached the conclusion that even disputes concerning eviction of real property are objectively arbitrable and, provided that a valid arbitration agreement exists, may be subject to arbitration.[3] It subsequently followed this view in **Resolution file no. 20 Cdo 476/2009 of 23 September 2010**, where it expressly stated: "*A property dispute is not limited only to matters whose subject matter has the character of a property value, but extends to all matters that have or may have an impact on the property sphere of the parties and concern subjective rights with which the parties may dispose.*"

It is therefore apparent that a property character may also attach to claims for performance to "deliver something / tolerate something / refrain from something," if they aim at the protection of property rights.

---

[2] *(BĚLOHLÁVEK, Alexander J.. § 2 [Arbitrabilita; rozhodčí smlouva]. In: BĚLOHLÁVEK, Alexander J.. Zákon o rozhodčím řízení a o výkonu rozhodčích nálezů. Zákon o mezinárodním právu soukromém (vybraná ustanovení). 3. vydání. Praha: C. H. Beck, 2023, s. 93-191)*
[3] *Supreme Court of the Czech Republic, January 31 2006, decision no. 28 Cdo 3107/2005*

4

The Supreme Court of the Czech Republic has nevertheless accepted a **property character also in disputes that do not arise directly from a contract, but from the breach of a statutory duty**. The Supreme Court reached this conclusion in **Decision file no. 23 Cdo 476/2023 of 19 July 2023**, where it held that an arbitration agreement may be validly concluded also for unfair competition disputes. In this regard, the Supreme Court noted that the conclusion that an arbitration agreement may be validly agreed for the breach of a statutory (as opposed to contractual) duty had already been made in its earlier decisions (e.g., Resolution of 23 September 2010, file no. 20 Cdo 476/2009, or Resolution of 9 March 2016, file no. 25 Cdo 4840/2014).

With regard to the proprietary nature of the dispute in the assessment of the arbitrability of unfair competition claims, the following passage of the **Decision file no. 23 Cdo 476/2023 of 19 July 2023** is of key importance.:

> (...) it is not decisive whether the consequence of a particular conduct, which by definition takes place in the sphere of economic (i.e. proprietary) relations, is capable of causing a specific detriment (or the occurrence of such detriment) manifested on the part of competitors or customers directly in their assets or not. This is because **even non-pecuniary harm** (within the meaning of Section 2894(2) of the Czech Civil Code) in such a case derives precisely from the economic relations (and not from any other sphere) of the persons concerned, or, as the case may be, from the participation of competitors in economic competition as an expression of their activity within the proprietary sphere, which, in its concrete form, has its own (at least potential) economic value. Under such a broadly construed concept of a "property dispute", it is therefore also immaterial by what specific means any such harm that may have arisen is to be compensated or remedied (whether in monetary form or otherwise).

Furthermore, the Supreme court emphasized that:

> Not only is it possible to validly conclude an arbitration agreement in the case of an unfair competition dispute for the reasons stated above, but moreover both claims are equivalent and arbitrable, and it is not possible to conclude that a claim arising as a result of unfair-competition conduct takes precedence over a claim arising as a result of a breach of contractual duty.

It is therefore apparent that, in its decision-making practice, the courts apply the criterion of a claim's property character **even where it is derived from the breach of a statutory duty.**

5

## **Application to the Present Case**

In the case at hand, the statement of claim seeks the following relief:

(i) damages,

(ii) punitive damages,

(iii) injunctive / removal claims (to cease the disclosure and to remove data).

Damages constitute a property claim (monetary performance) and therefore typically satisfy the "property dispute" condition. This corresponds both to the statutory framework and to the above-described case-law approach, which links "property" to impact on the property sphere and a monetarily expressible effect. In particular, the above-cited Decision of the Supreme Court of the Czech Republic, file no. **23 Cdo 476/2023 of 19 July 2023**, is relevant, where the court concluded that a property character may attach to a claim derived not only from a breach of contract, but also from a breach of a statutory duty, and more importantly, this includes even non-pecuniary harm claims.

The conclusion that damages claim has a property character is also supported by the regulation of limitation (statute of limitations) under Czech law. Section 611 of Act No. 89/202 Coll., the Czech Civil Code, expressly provides:

| § 611 | All property rights are subject to limitation except as provided by a statute. Other rights are subject to limitation where provided by a statute. |

In the immediately following Section 612 it then specifies:

| § 612 | In the case of the rights to life and dignity, name, health, respect, honour, privacy and similar personal rights, only the rights to remedy harm caused to these rights are subject to limitation. |

From the wording of the statute, it is therefore clear that the legislature distinguishes between the nature of personality rights, which are not subject to limitation, and classifies rights to redress

6

harm – even if caused to personality rights – among those that are subject to limitation, i.e., property rights.

Punitive claims are, from the perspective of "property character," formally monetary (property) in nature. However, they may raise separate issues regarding the applicable law and enforcement of the decision, as punitive damages are not recognized under Czech law. These issues, however, do not in themselves mean that such a claim could not be assessed as a property dispute.

Injunctive / removal claims (to cease disclosure, to remove data) require specific assessment. If they primarily protect personality values without direct property value, they could be subsumed under personality rights, which are not subject to limitation and therefore do not have a property character. In that case, they would not fall within the category of disputes that may be decided in arbitration.

Legal literature, however, states that it cannot be excluded that arbitrators will affirm their jurisdiction only in respect of part of the claims, i.e., they may assess arbitrability of individual claims separately (see further under Question No. 3). In other words, it is possible that some claims be of a property character subject to arbitration, while others are not, and would be outside of arbitration. The arbitrator would arbitrate those claims of a property character.

### 1.1.2.  POSSIBILITY TO CONCLUDE A SETTLEMENT.

A further condition for the possibility to conclude an arbitration agreement is the possibility to conclude a settlement regarding the subject matter of the dispute. The conditions for concluding a settlement are regulated in Section 99 of Act No. 99/1963 Coll., the Code of Civil Procedure.

7

| | |
|---|---|
| § 99<br>the Code<br>of Civil<br>Procedure | (1) If it is allowed by the nature of the case, the participants may end the proceedings by a settlement. The court shall always have to attempt at a settlement between the parties; in attempting to achieve a settlement, the presiding judge shall, in particular, discuss the matter with the parties, draw their attention to the relevant legislation and to the opinions of the Supreme Court and decisions published in the Collection of Court Decisions and Opinions relating to the matter, and, depending on the circumstances of the case, recommend options for an amicable settlement of the dispute. If appropriate in view of the nature of the case, the presiding judge shall also draw the parties' attention to the possibility of using mediation under the Mediation Act or social counseling under the Social Services Act.<br>(2) The court shall decide on whether it approves the settlement; the settlement shall not be approved if it is contrary to legal regulations. In such case, the court shall continue in the proceedings after the ruling becomes final and conclusive.<br>(3) An approved settlement shall have the effects of an approved judgment. However, the court may quash by a judgment the ruling on approval of the settlement if the settlement is null according to the provisions of substantive law. The petition may be submitted within three years after the ruling on approval of the settlement became final and conclusive. |

A settlement may be defined as a procedural agreement of the parties (the parties to court proceedings) regarding a dispute that has become the subject of the specific proceedings. A settlement may be concluded only with respect to such a claim as the parties may dispose of. A settlement is thus a typical institute of adversarial proceedings, where the parties may dispose of the subject matter of the proceedings. By contrast, in non-contentious proceedings, where the creation, change, or termination of legal relationships is tied exclusively to a constitutive court or other decision, settlement is not permissible (typically divorce).

Case law repeatedly emphasizes that the permissibility of a settlement is assessed according to the **nature of the asserted claim**. The Supreme Court of the Czech Republic clearly declared this, for example, in **Resolution file no. 29 Cdo 2648/2013**: "*For the assessment whether a settlement may be concluded in the matter, the nature of the asserted claim is decisive, and not the general nature of the proceedings as such.*" It further stated: "*The nature*

8

*of the proceedings, i.e., whether it is so-called contentious proceedings or non-contentious proceedings, is not, in itself, decisive for the conclusion on arbitrability of the matter."*

According to the established legal view, a settlement is *"contrary to the nature of the matter if the resolution of the matter under substantive law is not within the disposition of the parties."* Such a situation will typically occur in matters of personal status and in matters that cannot be resolved by agreement of the parties to the legal relationship.[4]

Case law also came with the conclusion that the limits of the possibility to validly conclude an arbitration clause are given precisely by the limits of disposition with the underlying right itself (i.e., the possibility to conclude a settlement). The Supreme Court of the Czech Republic expressed this in Resolution file **no. 22 Cdo 1643/2012 of 23 July 2012** as follows: *"The limits of the possibility to validly conclude an arbitration clause are defined by the same circumstances that limit the possibility to conclude and approve a court settlement."*

### Application to the Present Case

The fact that the present action is brought on the basis of an alleged breach of a duty imposed by statute is not, in itself, decisive for the settlement test. What matters is whether the nature of the asserted claims permits disposition by agreement.

The right to claim damages is typically of a discretionary nature. The parties may agree on the amount and the manner of settlement, and therefore the condition "settlement possibility" is usually satisfied.

For claims seeking restraint of conduct or removal of data, it will be decisive whether the claim is dispositive. If these claims are subsumed under personality rights, it must be stated that a

---

[4] *(SVOBODA, Karel. § 99 [Smír]. In: SVOBODA, Karel, SMOLÍK, Petr, LEVÝ, Jiří, DOLEŽÍLEK, Jiří a kol. Občanský soudní řád. 3. vydání (3. aktualizace). Praha: C. H. Beck, 2024. Dostupné na beck-online.cz.)*

9

person cannot waive an absolute personality right (by contract, declaration, or other legal act). This means that this subjective right cannot cease to exist by a person's own will. However, a person is not obliged to exercise their right. In the matter of exercising an absolute personality right, the autonomy of will is not limited.[5] From the above, it may be inferred that there is disposition with the enforcement of these rights.

### 1.1.3. ABSENCE OF A STATUTORY EXCLUSION.

The third condition for arbitrability is that the dispute does not fall within statutory exclusions. Section 2(1) of Arbitration Act provides that arbitration may not hear and decide disputes:

(i)   arising in connection with enforcement of decisions and incidental disputes,
(ii)  for which the jurisdiction of a court would otherwise be given or for which a special statute so provides,
(iii) consumer contracts.

Incidental disputes are typically disputes arising from insolvency proceedings, heard within insolvency proceedings.

Certain special statutes provide exclusive jurisdiction of courts or other authorities. These include, for example, disputes in the telecommunications sector, which fall within the decision-making jurisdiction of the Czech Telecommunication Office (ČTÚ), or disputes in the energy sector, which fall within the Energy Regulatory Office.

In the case of the consumer exclusion, this concerns a contractual relationship in the "business – consumer" configuration within the meaning of substantive law. It is therefore not automatically an exclusion of all disputes in which a natural person appears. What is decisive is the person's status as a consumer. Under the Czech Civil Code a consumer is:

---

[5] (TŮMA, Pavel. § 81 [Osobnost člověka]. In: LAVICKÝ, Petr a kol. Občanský zákoník I. Obecná část (§ 1–654). 2. vydání. Praha: C. H. Beck, 2022, s. 293, marg. č. 35.)

| § 419 the Civil Code | A consumer is any individual who, outside his trade, business or profession, enters into a contract or has other dealings with an entrepreneur. |
|---|---|

### Application to the Present Case

In the present case, it is not an incidental dispute, nor a dispute arising in connection with enforcement of a decision. Nor does any other special statutory regime apply to this case that would confer jurisdiction on another authority.

As regards to the "consumer," it may be noted that if the Agreement were concluded by a natural person who is a "consumer," that is an individual acting outside of his trade, business, or profession, the agreed arbitration clause would not apply and would not be validly agreed. Consumer disputes were removed from the jurisdiction of arbitration by the 2016 amendment. A legal entity, however, is not a consumer; therefore, where the Agreement is concluded by a legal entity, this exclusion does not apply.

### 1.2.    WRITTEN FORM OF THE ARBITRATION AGREEMENT AND ARBITRATION CLAUSE

| § 3 The Arbitration Act | (1) An arbitration agreement must be concluded in writing, otherwise it shall be invalid. The written form is also preserved if the arbitration agreement is concluded by telegraph, telex, or electronic means that enable the content to be captured and the identification of the persons who concluded the arbitration agreement. |
|---|---|
| | (2) However, if the arbitration clause forms part of the terms and conditions governing the main contract to which the arbitration clause relates, the arbitration clause shall be validly agreed even if the written offer of the main contract containing the arbitration clause was accepted by the other party in a manner from which its consent to the content of the arbitration agreement is apparent. |

Under Czech law, an arbitration agreement (including an arbitration clause) must be concluded in writing in order to be valid. At the same time, the Arbitration Act in Section 2(1) expressly states that the written form may also be satisfied **electronically**.

11

Compliance with written form is also required by Article II (1) of the Convention on the

Recognition and Enforcement of Foreign Arbitral Awards (the New York Convention), as well

as Article I (2) of the European Convention on International Commercial Arbitration. Unlike

Czech law, neither of these conventions **expressly** allows concluding an arbitration agreement by

telefax, telex, or electronic means. However, interpretation and decision-making practice have, in

light of developments in forms of communication, reached the same conclusion – namely that

**electronic form is permissible and considered written form.**[6]

This conclusion, including references to the New York Convention and the European

Convention on International Commercial Arbitration, was clearly confirmed by the Supreme

Court of the Czech Republic in its **Resolution file no. 23 Cdo 3439/2018 of 16 May 2019**,

where it stated:

> *(1) As regards the validity of an arbitration agreement concluded between entities
> from different states in international commercial relations by an exchange of
> emails without a qualified electronic signature, it is appropriate to apply the New
> York Convention on the Recognition and Enforcement of Foreign Arbitral Awards
> (NY Convention) as lex specialis in relation to the European Convention on
> International Commercial Arbitration (EÚOArb). (2) The requirement that the
> arbitration agreement be contained 'in an exchange of letters or telegrams' must
> be interpreted as including an exchange of communication by email. If a qualified
> electronic signature of an arbitration agreement contained in an exchange of
> emails is not stricto sensu required, then between entities from different states in
> international commercial relations a valid arbitration agreement may also be
> concluded by an exchange of emails that do not contain a qualified electronic
> signature.*

This decision is also published on the website of the New York Convention.[7]

---

[6] *(BĚLOHLÁVEK, Alexander J.. § 3 [Forma, obsah a uzavření rozhodčí smlouvy]. In: BĚLOHLÁVEK,
Alexander J.. Zákon o rozhodčím řízení a o výkonu rozhodčích nálezů. Zákon o mezinárodním právu
soukromém (vybraná ustanovení). 3. vydání. Praha: C. H. Beck, 2023, s. 191-273)*
[7] *Supreme Court of the Czech Republic, 16 May 2019, NS 23 Cdo 3439/2018 (Zeveta Bojkovice a.s. v. Fagor Arrasate S.
Coop.) available at:* https://www.newyorkconvention.org/court-decisions/czech+republic+2022-b

**Arbitration Agreement vs. Arbitration Clause.** In practice, a distinction is made between:

    (i)      an arbitration agreement concluded as a separate document, and

    (ii)     an arbitration clause as a provision in the main contract or in general terms and conditions, which become part of the contractual arrangement.

From the above-cited provision it is evident that Czech law expressly allows concluding an arbitration clause as a form of an arbitration agreement, including as part of the terms governing the main contract. The requirement of written form thus also applies to an arbitration clause.

In addition to the issue of form, it is also necessary to address incorporation of general terms and conditions. If the arbitration clause is part of the general terms and conditions of the main contract, Czech law permits it to be validly agreed by reference to these terms and conditions, provided the statutory requirements for their attachment, making them available, and proving the other party's consent are met (see further under Question No. 2.)

**Model Arbitration Clause.** The Arbitration Court attached to the Czech Chamber of Commerce and the Agrarian Chamber of the Czech Republic, which is a permanent arbitration court established by statute, has published on its website recommended model wording of an arbitration clause in the following form:

> *All disputes arising from this contract and in connection with it shall be finally decided by the Arbitration Court attached to the Economic Chamber of the Czech Republic and the Agrarian Chamber of the Czech Republic in accordance with its Rules by one arbitrator appointed by the President of the Arbitration Court.*
>
> *All disputes arising from this contract and in connection with it shall be finally decided by the Arbitration Court attached to the Economic Chamber of the Czech Republic and the Agrarian Chamber of the Czech Republic in accordance with its Rules by three arbitrators.*

<u>**Application to the Present Case**</u>

In the case at hand, the arbitration clause was part of the Agreement, which was available on the IntelligenceX website. It was therefore an Agreement concluded by electronic means,

which the Arbitration Act expressly allows. The requirement of written form was thus satisfied. This conclusion is supported not only by Czech law, but also by decision-making practice in accordance with the New York Convention.

The wording of the arbitration clause in the Agreement may also be considered highly similar to the model arbitration clauses of the Arbitration Court attached to the Czech Chamber of Commerce and the Agrarian Chamber of the Czech Republic. Accordingly, the language of the assessed arbitration clause itself meets the requirements for its content.

## 2. ELECTRONIC LEGAL ACTS AND THE POSSIBILITY TO CONCLUDE A CONTRACT BY CLICKWRAP UNDER CZECH LAW

As explained above, the Arbitration Act expressly allows in its Section 3 concluding an arbitration agreement through electronic means, while preserving the mandatory written form. Below I further clarify the requirements for a legal act under Czech law.

### 2.1. REQUIREMENTS FOR LEGAL ACTS BY ELECTRONIC MEANS

The above special regulation in the Arbitration Act is fully consistent with the general requirements for forms of legal acts regulated in the Czech Civil Code, specifically:

| § 562 the Civil Code | (1) Written form is also maintained in juridical acts made by electronic or other technical means which enable its contents to be captured and the acting person to be identified. |
| --- | --- |

In practice, this means that for "written form" the medium (paper vs. electronic form) is not decisive; rather, it is whether:

    (i)     the content of the agreement is reproducible, and

    (ii)    it is possible to identify who acted.

14

For identification of the acting person, a signature is, under the Czech Civil Code regime, typically required. However, the statute also allows substitution of a signature by mechanical means where it is customary:

| § 561 the Civil Code | (1) The validity of a juridical act made in written form requires the signature of the acting person. The signature may be replaced by mechanical means, where it is typical to do so. Another legal regulation provides how a document can be electronically signed when making juridical acts by electronic means. |
|---|---|

**Capture of the Content of the Legal Act.** Legal literature states that capture of the content of a legal act must occur in a manner that "*enables subsequent reproduction of the content and repeated familiarization with the information carried by the communication medium. The communication medium must therefore be capable of preserving the informational value of certain data with which one can repeatedly familiarize oneself, without affecting their quality.*"[8] Publication of a contract on publicly accessible websites is undoubtedly such a manner.

**Identification of the Acting Person.** Section 3(1) of the Arbitration Act does not require unequivocal identity of the acting person, but only their identification. Therefore, it does not set a special qualitative requirement for such identification. Legal literature therefore finds no reason for electronic form to be disadvantaged compared to ordinary paper form by requiring a certified (secure) signature when concluding an arbitration agreement electronically, when no verification of signature is required for a traditional paper form.[9]

---

[8] *(JANOUŠEK, Michal. § 562 [Písemná forma právního jednání učiněného elektronickými prostředky]. In: LAVICKÝ, Petr a kol. Občanský zákoník I. Obecná část (§ 1−654). 2. vydání. Praha: C. H. Beck, 2022, s. 1800, marg. č. 1.)*

[9] *(BĚLOHLÁVEK, Alexander J.. § 3 [Forma, obsah a uzavření rozhodčí smlouvy]. In: BĚLOHLÁVEK, Alexander J.. Zákon o rozhodčím řízení a o výkonu rozhodčích nálezů. Zákon o mezinárodním právu soukromém (vybraná ustanovení). 3. vydání. Praha: C. H. Beck, 2023, s. 191-273, marg. č. 03.1.)*

In the online environment, various identification and authentication mechanisms are typically used (user account, login credentials, email confirmation, system logs), which serve to identify the acting person.

However, the Arbitration Act expressly takes into account modern technologies and their adoption in contracting practice. In this respect, the regulation is compatible with Section 562 the Czech Civil Code.

## 2.2.    CONCLUSION OF A CONTRACT BY CLICKWRAP

"Clickwrap" contracting is typically understood as an expression of consent to contractual terms in the conclusion of electronic contracts by clicking on a button "I accept," "I agree," or similar wording, or by actively ticking a checkbox to express consent.

**General Terms and Conditions and Their Incorporation.** Under the general provisions of the Czech Civil Code, terms and conditions may be incorporated into a contract by reference, but only if they are attached to the offer or are known to the parties, and the other party actively accepts the offer (not by silence):

| § 1751 the Civil Code | (1) A part of the contents of a contract may be determined by reference to standard commercial terms which are attached to the offer by the offeror or of which the parties are aware. Any stipulations in the contract which derogate from the standard commercial terms shall prevail over the text of the standard commercial terms. |
|---|---|

The contract is concluded on the basis of an offer and its acceptance, where acceptance occurs through the timely expression of consent to the proposer. The established legal view also confirms that an offer may be accepted electronically by simply clicking a button expressing consent, i.e., precisely in the form of a clickwrap contract.[10]

---

[10] *(HULMÁK, Milan. § 1751 [Odkaz na obchodní podmínky]. In: HULMÁK, Milan a kol. Občanský zákoník V. Závazkové právo. Obecná část (§ 1721–2054). 1. vydání. Praha: C. H. Beck, 2014, s. 108-121.)*

As regards to the requirement that the general terms and conditions be known to the parties, in the case of contracting through electronic communication it is required that the link to the general terms and conditions be placed in the section where the order is made. It must not appear only after the order is placed, nor be placed outside the context of the order form.[11]

In online practice this means that the general terms and conditions **must be genuinely made available at the time of contracting** – typically by a link enabling opening or saving them.

**Arbitration Clause as Part of General Terms and Conditions.** As stated above, Section 3(2) of the Arbitration Act allows general terms and conditions containing an arbitration clause to become part of the contractual arrangements.

This is also confirmed by Czech case law, in particular the Judgment of the Supreme Court of the Czech Republic file **no. 23 Cdo 2563/2019 of 24 February 2021**, where the court held:

> *If the arbitration clause forms part of the terms governing the main contract to which the arbitration clause relates, the arbitration clause is validly agreed even if the written proposal for the main contract with the arbitration clause was accepted by the other party in a manner from which its consent to the content of the arbitration agreement is apparent.*

Moreover, legal literature states that any "*objections that the arbitration clause may be contained only in contractual terms that are accepted merely by the offeree marking consent to these terms (so-called 'click-through' on a box indicating consent), even though they often do not read them, are unfounded.*"[12]

---

[11] *(HULMÁK, Milan. § 1751 [Odkaz na obchodní podmínky]. In: HULMÁK, Milan a kol. Občanský zákoník V. Závazkové právo. Obecná část (§ 1721–2054). 1. vydání. Praha: C. H. Beck, 2014, s. 150.)*
[12] *(BĚLOHLÁVEK, Alexander J.. § 3 [Forma, obsah a uzavření rozhodčí smlouvy]. In: BĚLOHLÁVEK, Alexander J.. Zákon o rozhodčím řízení a o výkonu rozhodčích nálezů. Zákon o mezinárodním právu soukromém (vybraná ustanovení). 3. vydání. Praha: C. H. Beck, 2023, s. 191-273, marg. č. 03.1.)*

17

In other words, the mere fact that the terms and conditions are accepted by "checking the box" and that the addressee has not actually read them is not in itself a ground for invalidity. What is decisive is whether the addressee objectively had the possibility to become familiar with them and whether the addressee manifested consent in a manner recognized by the legal order.

As support for the requirement that the other party be given a genuine opportunity to become familiar with the clause before the contract is concluded, European case law on online contracting may also be used. In Case **C-322/14 Jaouad El Majdoub v CarsOnTheWeb. Deutschland GmbH,** the Court of Justice of the EU (CJEU) addressed a jurisdiction agreement concluded in the same manner as in the present matter. The CJEU focused in particular on whether the possibility of making a durable record of the jurisdiction agreement is sufficient, regardless of whether the addressee actually did so after or before ticking the box indicating acceptance of the relevant general terms and conditions.

The CJEU held that

> *the technique of expressing consent 'by clicking' on the general terms and conditions of such a contract of sale as that at issue in the main proceedings, concluded electronically, where those terms include a jurisdiction clause, constitutes communication by electronic means which provides a durable record of the agreement within the meaning of that provision, provided that the technique makes it possible to print and save the text of those terms and conditions before the contract is concluded.*

### Application to the Present Case

In the case at hand, clickwrap conclusion of the arbitration clause is valid under Czech law, provided the following requirements are met:

- the clear wording of the arbitration clause formed part of the general terms and conditions,
- the general terms and conditions were available and capable of being retained before acceptance (open / print / download),
- consent was given by an active act (checkbox).

18

These requirements were verified in the preparation of this analysis. It was found that, when concluding the Agreement, it is necessary to fill in identification details and actively express consent by a checkbox, which is hyperlinked and marked as "Terms of Service." Without active ticking of the checkbox indicating consent, it is not possible to complete the registration. By clicking the link, the full text of the Agreement opens in a new window, and it includes the arbitration clause (Clause 39).

Under these circumstances, the conclusion of the arbitration clause may therefore be considered compliant with the requirements of the relevant legal regulations.

3. **THE EFFECT OF AGREEING TO AN ARBITRATION CLAUSE IN THE CONTRACT: BINDING EFFECT ON COURTS AND THE ARBITRATORS' POWER TO RULE ON THEIR OWN JURISDICTION**

3.1. **EXCLUSION OF COURT JURISDICTION**

Under Czech law, an agreed arbitration clause primarily has procedural effect in relation to general courts in that a dispute falling within the scope of the arbitration clause is to be heard in arbitration proceedings rather than before a court.

This effect is enforced in court proceedings by an objection under Section 106 the Code of Civil Procedure. Section 106(1) the Code of Civil Procedure provides:

| § 106 the Code of Civil Procedure | (1) As soon as the court finds, upon the defendant's objection raised at the latest during his first action in the case, that the case is to be heard in accordance with the parties' agreement in proceedings before arbitrators or the association's arbitration commission, it may not continue to hear the case and shall discontinue the proceedings; However, it shall hear the case if the parties declare that they do not insist on the agreement or that they do not insist on the case being heard before the association's arbitration commission. The court shall also hear the case if it finds that the case cannot be subject to an arbitration agreement under Czech law, or that the arbitration agreement is invalid, or that it does not exist at all, or that its hearing before arbitrators exceeds the scope of the powers granted to them by the agreement, or that the arbitral tribunal has refused to hear the case. |
|---|---|

The legislation thus proceeds from conditions under which, to apply Section 106 the Code of Civil Procedure, the existence of a valid arbitration agreement or arbitration clause is necessary, and the additional condition is the timely raising of the objection by the defendant. The discontinuance of proceedings is, however, not automatic. The cited provision admits specific circumstances in which the court may nevertheless continue the proceeding – especially in the case of lack of arbitrability or invalidity of the arbitration agreement.

### 3.2.    ARBITRATORS' POWER TO RULE ON THEIR OWN JURISDICTION

| § 15 The Arbitration Act | (1) The arbitrators shall be entitled to examine their jurisdiction. If they conclude that, according to the arbitration agreement submitted to them, they do not have jurisdiction to decide, they shall decide on this by a ruling. |
|---|---|
| | (2) An objection to lack of jurisdiction based on the non-existence, invalidity, or termination of the arbitration agreement, unless the invalidity is due to the fact that it was not possible to conclude an arbitration agreement in the matter, may be raised by a party no later than at the first act in the proceedings concerning the merits of the case. |

In arbitration, the key procedural rule is the competence principle (jurisdiction) reflected in the cited provision. This jurisdiction is typically engaged upon by an objection of lack of jurisdiction (e.g., an assertion that the arbitration clause is invalid, has terminated, or does not apply to the dispute). The rule that an objection to lack of jurisdiction must be raised at the latest during the first procedural step also applies here.

However, at the same time, **arbitrators are entitled to assess their jurisdiction, even without an objection from a party**. This is not merely a right but also a duty. Arbitrators must therefore address their jurisdiction throughout the proceedings and at every phase, as it constitutes one of the procedural prerequisites.

In doing so, arbitrators will assess in particular:

(iii)    whether a valid arbitration agreement was concluded between the parties, and

(iv)    whether the arbitration agreement applies to the dispute in question.

According to legal literature, it cannot be excluded that arbitrators will decline their jurisdiction (competence) only as to part of the statement of claim, specifically:

> *If such a statement of claim can, in the items in which the arbitrators did not find their jurisdiction (competence), be separated from the remaining items of the claim,* ***the arbitrators will decide on the lack of their jurisdiction (competence) only in this part of the statement of claim*** *(or counterclaim) and will terminate the proceedings in this part by a resolution under § 23(b) of the Arbitration Act. In the remaining items they will hear the matter on the merits and decide on them.[13]*

It also follows from the legal literature that, when assessing jurisdiction, it is possible to conclude that it does not apply to only one of the parties if more than one person acts on behalf of one of the parties, or if it is a procedural joint action.

Under these conclusions, it therefore applies that in such a case arbitrators may decide to terminate the proceedings due to lack of jurisdiction (competence) **only in relation to certain parties** and/or **only in relation to a certain part of the of the claim**, if such part can be separated from the other parts and decided independently.

### 3.3.    APPLICABLE LAW

When determining the applicable law, it is necessary to distinguish between:

(v)    lex arbitri (the procedural framework of the arbitration) and

(vi)    lex causae (the substantive law for the merits of the claims).

The issue of arbitrability and other procedural aspects (e.g., the procedural effect under Section 106 the Code of Civil Procedure) will be governed by the place of arbitration, as follows from Section 17 of the Arbitration Act:

| § 17 | The arbitration proceedings shall take place at a location agreed upon by the parties. If no such location is specified, the proceedings shall take place at a |
|------|--------------------------------------------------------------------------------|

---

[13] *(BĚLOHLÁVEK, Alexander J.. § 15 [Rozhodování o pravomoci, námitka nedostatku pravomoci]. In: BĚLOHLÁVEK, Alexander J.. Zákon o rozhodčím řízení a o výkonu rozhodčích nálezů. Zákon o mezinárodním právu soukromém (vybraná ustanovení). 3. vydání. Praha: C. H. Beck, 2023, s. 522-575)*

21

| The Arbitration Act | location determined by the arbitrator, taking into account the legitimate interests of the parties. |
|---|---|

This is also consistent with legal doctrine, which expressly states that arbitrability is fundamentally influenced by the place of arbitration.

Moreover, the Act No. 91/2012 Coll., on Private International Law also states:

| § 117 The Act on Private International Law | (1) An admissibility of an arbitration agreement shall be judged according to the Czech law. Other constituents of the arbitration agreement shall be judged according to the law of the state in which an arbitral award is to be issued. |
|---|---|
| | (2) A form of the arbitration agreement shall be governed by the law applicable to other constituents of the arbitration agreement; nevertheless it shall be sufficient if a law of the place or places where the intent was manifested is to apply. |

At the same time, legal literature states that, although arbitrability is a procedural category, the settlement admissibility test (as a condition of arbitrability under Section 2(2) of the Arbitration Act) relates to substantive law. This means that the question whether a settlement may be concluded in the matter will be assessed under the substantive law applicable to the merits.

For the merits in international cases, Act No. 91/2012 Coll., on Private International Law, is relevant:

| § 119 The Act on Private International Law | A law applicable to a dispute shall be the law chosen by the parties. If the parties have not chosen such law, it shall be determined by the arbitrators in accordance with the provisions of this Act. The conflict-of-law provisions of the applicable law shall be taken into consideration only provided it follows from the choice of law made by the parties. Should the parties expressly mandate the arbitrators thereto, the arbitrators may decide the dispute in accordance with the principles of justice; should disputes arising from consumer contracts be concerned, consumer protection provisions of the otherwise applicable law shall be applied. The provisions of § 87 paragraph 2 shall also apply to the decision making in the arbitration proceedings. |
|---|---|

Under the cited provision, the law applicable to the merits is the law chosen by the parties. The wording of the arbitration clause and the definition of the scope of disputes to which it applies are therefore crucial. The nature of the claims will also be essential (see Question No. 1).

### Application to the Present Case

From the wording of the arbitration clause in the Agreement, the parties' intention to exclude court jurisdiction and, at the same time, to submit to arbitral jurisdiction is apparent, not only for disputes arising directly from the Agreement, but also for disputes in connection with it or related to it.

Based on the assessment under Question No. 1, it was found that the claims asserted by the action may have a mixed character: part of them has a property character (damages), others are not sufficiently determinable in nature (punitive damages), and others rather evoke personality rights (cease to disclose, removal of data). Legal literature does not exclude the possibility of splitting such a dispute, so that jurisdiction could be found only in relation to certain parties and/or only in relation to a certain part of the statement of claim, if such part can be separated from the other parts and decided independently.

The foregoing supports the idea that Czech substantive law should apply at least to contractual (and contract-conditioned) claims. Under Question No. 1, however, it was found that decision-making practice applies the criterion of property character even where a claim is derived from breach of a statutory duty. Such claims are also not excluded from the possibility to conclude a settlement.

Whether and to what extent this choice of law will apply also to claims asserted primarily under Daniel's Law in relation to punitive damages is a matter of interpreting the scope of the choice of law and potential limits of mandatory rules and public policy under Czech law.

23

However, it may be noted that this claim may be interpreted as being similar in nature to the right to damages, which is considered a property right under Czech law.

4.    **SUMMARY**

- Based on the Agreement, the arbitration clause designating the Arbitration Court attached to the Czech Chamber of Commerce and the Agrarian Chamber of the Czech Republic is capable of producing the intended procedural effect under Czech law, provided that the clickwrap process validly captured consent and the dispute falls within the scope of objective arbitrability.

- The arbitration clause is formulated in a standard manner – it designates a permanent arbitration court and specifies the seat and language.

- In terms of form, Czech arbitration law allows arbitration clauses to be concluded in writing or by electronic means, provided that the content is recorded and the parties involved can be identified.

- Czech law also expressly allows for the inclusion of arbitration clauses in contractual terms and conditions. On this basis, a click-through mechanism (ticking a box to accept accessible terms and conditions that can be saved/printed) may, under Czech law, satisfy the requirement for the written form of an arbitration clause.

- With regard to arbitrability, Czech law generally limits arbitration to property disputes, provided that the parties can settle the matter amicably and no statutory exceptions apply – e.g., if the Agreement was concluded with a "consumer."

- Claims for damages usually qualify as property disputes and are, in principle, arbitrable, even if they are formulated as arising from a breach of a statutory obligation and not merely from a contract – as held by the Czech Supreme Court.

- In contrast, claims for injunctions (to cease the disclosure) and data removal may require separate consideration: if they primarily protect non-property personality rights without a direct property character, they may fall outside objective arbitrability.

- Although punitive damages are monetary in nature, under Czech law they are likely to raise specific questions of legal qualification and enforceability, as Czech substantive law does not recognize punitive damages as such.

- Partial jurisdiction: the arbitrator may assess jurisdiction over separable arbitrable claims, while jurisdiction over non-arbitrable parts will be refused, provided that the claims sought are divisible in this way.

Prague, 24 February 2026

**Mgr. Alžběta Kokešová, attorney at law**

*Notice: This opinion expresses a legal view and was prepared with due and professional care. Nevertheless, it may occur that a court or administrative authority reaches different conclusions.*

25