**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, and PETER ANDREYEV,**

               **Plaintiffs,**

               **-against-**

**KLEISSNER INVESTMENTS S.R.O., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,**

               **Defendants.**

**25 Civ. 17065 (HB)**

**ECF CASE**


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**OF DEFENDANT KLEISSNER INVESTMENTS S.R.O.**


Andrew Gerber

Gerber Law PLLC

27 Union Square West, Suite 301

New York, NY 10003

(212) 658-1810

andrew@gerberlaw.com

Of Counsel:

Victor Suthammanont

Kostelanetz LLP

7 World Trade Center, 34th Floor

New York, NY 10007

## <u>TABLE OF CONTENTS</u>

Table of Authorities................................................................................................................ ii

Introduction ............................................................................................................................ 1

Background .............................................................................................................................. 2

   I.   Kleissner Investments S.R.O. and Intelligence X ........................................................ 2

   II.   Daniel's Law and Atlas Data Privacy's lawsuits.......................................................... 4

   III.   Procedural History ....................................................................................................... 5

Standard of Review ................................................................................................................. 7

Argument ................................................................................................................................. 7

   I.   The Court Lacks Personal Juridiction........................................................................... 7

     A.   The Burden of Establishing Personal Jurisdiction Rests with Plaintiff .......................... 8

     B.   The Court Lacks General Personal Jurisdiction over Defendant................................... 8

     C.   The Court Lacks Specific Personal Jurisdiction over Defendant ................................. 9

   II.   Daniel's Law is Unconstitutional................................................................................ 16

     A.   Daniel's Law Violates the Foreign Commerce Clause Because New Jersey May Not Regulate Conduct in the Czech Republic ........................................................... 16

     B.   Daniel's Law Violates the First Amendment ............................................................ 20

   III.   Plaintiff's Complaint Fails to State a Claim .............................................................. 20

     A.   Plaintiffs' Claims Are Barred by the Communications Decency Act .......................... 20

     B.   Plaintiffs Failed to Plausibly Allege Scienter ......................................................... 23

Conclusion ............................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7, 22, 23, 24

*Atlas Data Privacy Corp. v. DM Group, Inc.*, No. 24-cv-4075, DE 59 ........................................ 20

*Atlas Data Privacy Corp. v. Lightbox Parent, L.P.*, No. 24-cv-4105, DE 27 ............................. 20

*Atlas Data Privacy Corp. v. We Inform LLC*, No. 25-1555 (3d Cir.) ........................................... 20

*Atlas Data Privacy Corp. v. We Inform, LLC*, 2025 WL 1787566 (D.N.J. June 27, 2025) ... passim

*Atlas Data Privacy Corp. v. We Inform, LLC*, 2025 WL 2444153 (Aug. 25, 2025) .............. 20, 22

*Atlas Data Privacy Corp. v. We Inform, LLC*, No. 24-cv-4037, DE 55 ........................................ 23

*Atlas Data Privacy Corp. v. We Inform, LLC*, No. 24-cv-4037, DE 77 ........................................ 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 7

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ....................................................... 17

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ........................................... 12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................... 8, 10, 12

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................ 15

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ................................................... 17

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .......................................................................... 8, 9

*Danziger & De Llano v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir. 2020) .............................. 8

*Dimeo v. Max*, 433 F. Supp. 2d 523 (E.D. Pa. 2006) ................................................................. 21

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) .................................... 9, 14

*FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016) ..................................................... 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ............................. 7, 12

*Green v. America Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) ............................................. 21, 23

*Griggs v. Swift Transp. Co.*, No. 17-cv-13480, 2018 WL 3966304 (D.N.J. Aug. 17, 2018) ......... 9

*Hanson v. Denckla*, 357 U.S. 235 (1958) ................................................................................... 12

*Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024) ............................................... 13, 14, 15, 25

*Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989) ............................................................... 17, 18

*Hurley v. Cancun Playa Oasis Int'l*, No. 99-cv-574, 1999 WL 718556 (E.D. Pa. Aug. 31, 1999)

.................................................................................................................................................. 10

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) ...................................................... 7

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................................... 9

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ............................................ 9

*Jackson v. Whitepages, Inc.*, 2025 WL 2407201 (N.D.W.V. Aug. 19, 2025) ............................ 19

*Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434 (1979) ........................................ 16, 18, 20

*Kuan Chen v. U.S. Sports Academy, Inc.* .............................................................. 11, 12

*Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, (1989) ............................................. 9, 10

*Lohr v. Kimmel & Silverman, P.C.*, No. 10-cv-5857, 2011 WL 1603567 (E.D. Pa. Apr. 28, 2011) 8

*M.H. & J.H. v. Omegle.com, LLC*, No. 20-cv-11294, 2021 WL 1050234 (D.N.J. Mar. 19, 2021)

.............................................................................................. 10, 11

*Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561(3d Cir. 2017) ..................................... 7

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) ...................................................... 8

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) ...................................... 8, 15

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ..................................... 19

*Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38 (1st Cir. 1999) ............................... 17, 18

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312  (3d Cir. 2007) ............................... 13, 14

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ................................................... 10

*Rivera v. Loto Grp., LLC*, No. 20-cv-4062, 2020 WL 7384720 (D.N.J. Dec. 16, 2020) .................. 9

*Schmidt v. Skolas*, 770 F.3d 241(3d Cir. 2014) ..................................................... 7

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ........................................................... 9

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) .................................. 10, 11, 25

*Treasurer of New Jersey v. U.S. Dept. of Treas.*, 684 F.3d 382 (3d Cir. 2012) ...................... 20, 21

*U.S. v. Pink*, 315 U.S. 203 (1942) ................................................................. 16, 19

*Walden v. Fiore*, 571 U.S. 277 (2014) .............................................................. 12

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ....................................... 10

*Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ....................................... 23

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) .......................... 11

## Rules

Fed. R. Civ. P. 11 ................................................................................. 3

Fed. R. Civ. P. 12(b)(2) ........................................................................... 8

Fed. R. Civ. P. 12(b)(4) ........................................................................... 6

**Statutes**

47 U.S.C. § 230 .................................................................................. 1, 20, 21, 22

47 U.S.C. § 230(c)(1) ................................................................................. 22

47 U.S.C. § 230(f)(2) ................................................................................. 21

Md. Code Ann. Cts & Jud. Proc. §§ 3-2301(e) ................................................ 18

Md. Code Ann. Cts & Jud. Proc. §§ 3-2303(b) ............................................... 18

Md. Code. Ann. Cts. & Jud. Proc. § 3-2303 ................................................... 18

N.J. Rev. Stat. § 56:8-166.1 (2024) ............................................................. 13

N.J. Stat. § 56:8-166.1(a) ........................................................................... 18

N.J. Stat. § 56:8-166.1(d) ........................................................................... 18

Pub. Law 117-263, § 5931 ........................................................................... 19

W. Va. Code § 5A-8-24 .............................................................................. 18

## <u>INTRODUCTION</u>

Following the tragic murder of Daniel Anderl in 2020, New Jersey passed Daniel's Law to prevent the disclosure of certain public servants' home addresses and unlisted home telephone numbers. Plaintiff Atlas Data Privacy Corp. ("Atlas"), seeking to monetize this tragedy, filed hundreds of lawsuits alleging Daniel's Law violations after sending thousands of notices simultaneously in a manner designed not to protect public servants, but rather to trigger noncompliance on the part of the defendants Atlas has targeted. Defendant Kleissner Investments S.R.O. ("Kleissner Investments"), which is based in and operates entirely from the Czech Republic and provides a search engine that allows users to assess security threats on the internet, is one of those defendants.

Atlas is joined in this action by Plaintiffs Jane Doe-1 and Peter Andreyev. Plaintiffs' Complaint (the "Complaint") is a heavily copied-and-pasted, generalized pleading that contains few specific facts concerning Kleissner Investments and may be incorrect in some respects. It should be dismissed for the following reasons.

*First*, the Court lacks personal jurisdiction over Defendant. Kleissner Investments is wholly based overseas and maintains a website that does not target New Jersey or its residents. Accordingly, it does not have the minimum contacts with New Jersey necessary for a court to assert personal jurisdiction in a manner that comports with the Due Process Clause.

*Second*, Daniel's Law, facially and as-applied, violates the First Amendment and the Foreign Commerce Clause of the Constitution. Power over foreign relations is vested solely in the federal government, yet Plaintiffs stretch Daniel's Law to attempt to outlaw conduct beyond the shores of the United States in violation of the Foreign Commerce Clause.

*Third*, the Communications Decency Act of 1996 ("CDA") [47 U.S.C. § 230] bars Plaintiffs' claims. While the Court has previously ruled on CDA challenges as to other

defendants, Kleissner Investments is differently situated such that CDA immunity is readily apparent from the Complaint and websites it references. Further, Plaintiffs failed to plausibly allege the scienter this Court previously found necessary to state its claims under Daniel's Law.

For these reasons, Defendant respectfully submits that Plaintiffs' Complaint be dismissed.

## **BACKGROUND**

## I.    **KLEISSNER INVESTMENTS S.R.O. AND INTELLIGENCE X**

Kleissner Investments is a foreign S.R.O. or společnost s ručením omezeným (a Central European legal structure equivalent to a limited liability company) founded in the Czech Republic and maintaining its principal place of business in Prague. *See* Declaration of Peter Kleissner ¶¶ 4-5 ("Kleissner Decl."). The company only maintains offices in Prague, and its employees are based in the Czech Republic. *Id*. ¶ 5. It has no U.S. based employees, offices, servers, or other infrastructure. *Id*. ¶ 6.

Kleissner Investments operates the "Intelligence X" service via the website intelx.io (the "Website"), which Kleissner Investments hosts from its datacenter in Prague. *Id*. ¶ 7. The purpose of Intelligence X is to provide open-source intelligence for entities and governments, including to identify security threats such as the posting of confidential material on the internet, including the "darkweb." *Id.* ¶ 8. Intelligence X, like other search engines such as Google, uses web crawling techniques to index the content of other publicly available data and does not publish any information as the initial publisher of such data. *Id.* ¶¶ 9-12. Kleissner Investments does not advertise in, direct marketing or engagement efforts towards, or otherwise target any U.S. user or customer. *Id.* ¶ 6. It does not engage in the purchase or collection of personal data of third parties other than by indexing information that is otherwise publicly available on the internet. *Id.* ¶ 13. Nor does it package or otherwise assemble collections of such data other than what is returned automatically by a user's search. *Id*. It does not offer or provide "data and

2

information" via "mailing lists" or the U.S. mail. *Id.* ¶ 14.

The Website allows a user to conduct a search by specific criteria that include email addresses, domains, URLs, Bitcoin addresses, and certain internet and electronic identifiers. *Id.* ¶ 15. A user *cannot* search by an individual or entity's name or address. *Id*. Full results of user searches are only available to registered customers. *Id.* ¶ 16. Anonymous users are presented only with previews of results, with most information redacted. *Id.* Simply stated, there is no way to access full information from the Website, such as a full name, address, and telephone number, unless a user is registered with Kleissner Investments and affirmatively assents to the Website's Terms of Service. *Id.* ¶¶ 16-18, 24. In other words, Kleissner Investments provides a service that allows individuals, like those protected by Daniel's Law, to ascertain whether their protected information is publicly available elsewhere on the Internet, including the Dark Web.

Visitors to the Website are presented with a home screen prominently displaying a "Terms of Service" link in English. *Id.* ¶ 19. The Terms of Service, also presented in English, govern all users of the Website, "including free users (whether using the services with a registered account or not) and paid users." *See* Kleissner Decl. Exhibit A. The Terms of Service dictate that it "and all rights and obligations of the Parties [i.e., Kleissner Investments and any user of the website] arising from or related to this Agreement shall be governed by Czech law." *Id.* ¶ 39. The Terms of Service further provide: "All disputes arising from this Agreement and in connection therewith shall be finally decided" by arbitration in the Czech Republic in accordance with the Terms of Service. *Id*. Presumably, to comply with Fed. R. Civ. P. 11, Plaintiffs or their agents agreed to the Terms of Service when conducting the "inquiry reasonable under the circumstances" to represent that the "factual contentions [in the complaint] have evidentiary support[;]" otherwise, there would be no means of ascertaining whether and to what extent

protected information was available via Intelligence X.

The Website also prominently displays a link to the "Privacy Policy" that sets forth the company's privacy practices. Kleissner Decl. ¶ 21. Registered users affirmatively assent to the Privacy Policy upon registration. *Id.* ¶ 24. It is fully incorporated in the Terms of Service. *Id.* ¶ 23. These include a method for submitting content-removal requests (including for personal data) via a web form. *Id.* ¶ 25. The web form informs users that sending removal requests "via email may result in a substantial delay, or [the request] may get rejected by spam filters." *Id.* It also advises submitters to provide the "unique identifiers . . . of the search results in question" to facilitate the company's removal of personal information from search results. *Id.* ¶ 27. This is necessary because users of the Website *cannot search* by name or address. *See id.* ¶ 15.

The Complaint alleges that Kleissner Investments "transacts business within the State of New Jersey." Compl. ¶ 35. But in 2025, New Jersey end-user customers only represented 0.22% of Kleissner Investments' total customer base and only generated 0.42% of its revenue. Kleissner Decl. ¶¶ 30-31. The company undertook no efforts to solicit those New Jersey customers other than having a generally accessible website based in the Czech Republic. *Id.* ¶ 29. And, as the above demonstrates, users of the company's services must visit the Website (located in the Czech Republic) and agree to its Terms of Service (including the application of Czech law and forum in arbitration in the Czech Republic).

## II.    DANIEL'S LAW AND ATLAS DATA PRIVACY'S LAWSUITS

Notwithstanding the above, Plaintiffs filed the Complaint against Kleissner Investments and unknown individuals and entities in New Jersey state court on April 30, 2025. *See* Compl. The Complaint alleges that Kleissner Investments violated Daniel's Law by disclosing or re-disclosing on the Internet or otherwise making available the home addresses and/or unpublished home telephone numbers of "Covered Persons" under Daniel's Law. *See* Compl. ¶¶ 25, 35, 51-

52. This case is one of hundreds of lawsuits brought by Atlas (in this case, as the assignee of 19,658 Covered Persons, *see* Compl. ¶ 21, and certain individual plaintiffs.

The Complaint's allegations concerning the conduct of Kleissner Investments (as opposed to background on Daniel's Law and Plaintiffs' conduct) are threadbare. Plaintiffs allege that "visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number" including those of Covered Persons. Compl. ¶ 38. In addition to the Individual Plaintiffs, *id.*,[1] Plaintiffs apparently allege that "each" of the 19,658 Covered Persons' information was disclosed or made available on Defendant's Website. *Id*. ¶ 25. The Complaint alleges that, on or about January 6, 2024, the Individual Plaintiffs and Atlas (on behalf of its assignors) began sending "written nondisclosure requests (via) email" to Kleissner Investments using Atlas's email system. Compl. ¶ 49. The Complaint included a blurred image of the email from Plaintiff Andreyev in which he allegedly requested removal of his home address. Compl. ¶ 50. Plaintiffs allege that Kleissner then "failed to cease the disclosure or re-disclosure . . . of the protected information of the Individual Plaintiffs and Covered Persons within the time period required by Daniel's Law."[2] Compl. ¶ 51.

## III.    PROCEDURAL HISTORY

Following filing of the Complaint, Plaintiffs engaged a vendor (ABC Legal) to serve Kleissner Investments via the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"). *See*

---

[1]    This allegation may be incorrect, at least in part, as is the allegation in Compl. ¶ 51. No search on the Website using available information for Andreyev revealed his protected information. Kleissner Decl. ¶¶ 32-37. The only address available for Andreyev was his business address. *Id.* ¶ 37. It does not appear that Atlas or its counsel in this action are registered users on the Website, *id.* ¶ 38. Registration is necessary to reveal full search results for the 19,658 Covered Persons addressed in the Complaint's allegations. *Id.* ¶ 16.

[2]    *See* n. 1 above.

Aug. 12, 2025 Letter of Rahul Agarwal, DE 1-1 ¶ 4. The Complaint and service documents were provided to defendant on or about October 2, 2025. DE 1 (Notice of Removal) ¶ 2. Kleissner Investments contested service in the Czech Republic whether the Complaint was properly delivered under Czech Law. DE 1 ¶ 3.

On October 30, 2025, Kleissner Investments removed the case to this Court. *See* DE 1. The Court entered an order staying the action until the resolution of legal proceedings challenging service in the Czech Republic. DE 16. On January 14, 2026, the District Court for Prague 4 issued its ruling and returned the Hague Service Convention request without a completed certificate of delivery. Kleissner Decl. Exhibit C. Subsequently, the Court entered an order allowing Defendant to respond to the Complaint by February 25, 2026. DE 25 (Feb. 5, 2026 Order). As of the date of this motion, Plaintiffs have not filed proof of service.[3]

Contemporaneously with this motion, Defendant is filing a motion to compel arbitration. Defendant respectfully submits that the Court should rule on this motion first because (1) the Court requires jurisdiction over the parties to make a ruling (and there is no personal jurisdiction over the Defendant) and (2) it presents several complete defenses to the action, a decision on which obviates the need to determine which Plaintiffs, claims, and remedies are subject to arbitration, which may require discovery.[4] *See* Mot. to Compel Arb. Br. 8.

---

[3]     To be clear, Defendant is not waiving proper service of the summons and complaint. It maintains that service was not properly completed under Czech law, and that the ruling of the Czech court, including that this Court should determine matters of Czech law, was in error. Preserving all of its rights and remedies with respect to any Czech proceedings, however, Defendant is not seeking dismissal of the action pursuant to Fed. R. Civ. P. 12(b)(4).

[4]     If the Court were to order jurisdictional discovery in this case, which Defendant contends is unwarranted and futile, then it respectfully requests for the sake of efficiency, that it obtain discovery in connection with its motion to compel arbitration. *See* Mot. to Compel Arb. Br. 8.

## STANDARD OF REVIEW

A complaint should be dismissed if, accepting the facts pleaded as true, it fails to allege "sufficient factual matter" to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). There must be more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Nor must a court accept legal conclusions as true. *Id.* The "doors of discovery" should not be unlocked for plaintiffs "armed with nothing more than conclusions." *Id.* This, in part, is to avoid "largely groundless claim[s]" draining the resources of the courts and defendants. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007) (cleaned up). In considering a motion to dismiss, a court may consider the complaint, matters of public record, and documents "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). This includes information from websites referenced in the complaint. *See Atlas Data Privacy Corp. v. We Inform, LLC*, 2025 WL 1787566, *3 (D.N.J. June 27, 2025).

## ARGUMENT

### I.    THE COURT LACKS PERSONAL JURIDICTION

There is no basis for jurisdiction over Kleissner Investments. A federal court borrows the personal-jurisdiction rules of the forum state in which it sits. As New Jersey's long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent allowed under the Due Process Clause, the Court must "look to federal law for the interpretation of the limits on in personam jurisdiction." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

Under federal law, personal jurisdiction may be established through general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction may be exercised over a corporate defendant wherever it is "fairly regarded

as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction requires a defendant to have sufficient "minimum contacts" with the forum state, which the underlying controversy relates to or arises out of. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Given Defendant's lack of corporate presence in New Jersey and nearly non-existent contacts with the state, there is neither general or specific jurisdiction over the Defendant, and this Complaint should be dismissed pursuant to Rule 12(b)(2).

### A.    The Burden of Establishing Personal Jurisdiction Rests with Plaintiff

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of proving that personal jurisdiction exists. *Lohr v. Kimmel & Silverman, P.C.*, No. 10-cv-5857, 2011 WL 1603567, at *1 (E.D. Pa. Apr. 28, 2011) (Bartle, J.) (citing *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007)). "[B]are pleadings alone" are not a basis to withstand a motion to dismiss for lack of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004). Rather, the plaintiff must "establish with reasonably particularity" the elements establishing general or specific jurisdiction and that exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *See Danziger & De Llano v. Morgan Verkamp LLC*, 948 F.3d 124, 129-130 (3d Cir. 2020).

### B.    The Court Lacks General Personal Jurisdiction over Defendant

General jurisdiction authorizes a court to assert jurisdiction based not on the facts of an underlying controversy, but on the strength and consistency of a defendant's connection to the forum state alone. General jurisdiction arises over a corporate defendant only where it is "at home," which courts have interpreted narrowly to include its place of incorporation, its principal place of business, and in "exceptional" cases, in jurisdictions where its activities are "so continuous and systematic as to render it essentially at home in the forum state." *Daimler AG*, 571 U.S. at 119; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359

(2021). These rules apply with "equal force" to limited liability companies, which typically assume citizenship for purposes of general jurisdiction in (1) their state of formation and (2) wherever their principal place of business is located. *Griggs v. Swift Transp. Co.*, No. 17-cv-13480, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018); *Rivera v. Loto Grp., LLC*, No. 20-cv-4062, 2020 WL 7384720, at *1 (D.N.J. Dec. 16, 2020).

Defendant is a foreign S.R.O. or společnost s ručením omezeným (a Central European legal structure equivalent to a limited liability company) organized in the Czech Republic. *See* Kleissner Decl. ¶ 4. Defendant maintains its principal place of business in Prague, Czech Republic. *Id*. ¶ 5. Because Defendant is neither organized nor headquartered in New Jersey, the traditional bases for general jurisdiction do not exist. *See Ford Motor Co.*, 592 U.S. at 359. Further, there is no basis for an exception in this matter, as Defendant maintains no offices, has no infrastructure or employees, and conducts no business in New Jersey. *Id*. ¶ 6. In no way can Defendant be plausibly regarded as "essentially at home" in New Jersey; therefore, general jurisdiction does not exist. *See Daimler AG*, 571 U.S. at 119.

**C.     The Court Lacks Specific Personal Jurisdiction over Defendant**

*i.   Defendant Did Not Purposefully Avail Itself of New Jersey's Laws*

Specific jurisdiction authorizes a court to assert jurisdiction based on the relationship between a defendant, the forum state, and the underlying controversy. *See Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 323 (1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186 (1977)). Specific jurisdiction requires that a defendant have sufficient "minimum contacts" with the state such that it would not be unfair to subject them to litigation there. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945). For minimum contacts to exist, a defendant must have purposefully availed itself of the benefits and protections of the forum state's laws and/or targeted its consumers. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) ("the

9

exercise of judicial power is not lawful unless the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws") (internal quotations omitted); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-98 (1980) (deliberate action by defendant is needed to assert jurisdiction in accordance with due process). "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Lebel*, 115 N.J. at 323-24 (quoting *Burger King*, 471 U.S. at 475).

The mere fact that Defendant operates a website which is accessible from New Jersey (as it is elsewhere throughout the world) does not establish that Defendant "purposefully availed" itself of New Jersey's benefits and protections. *See Burger King*, 471 U.S. at 472-73. The Third Circuit has held that operation of a website does not automatically subject a defendant to jurisdictional reach wherever that website is live; as with other business types, specific evidence that defendant targeted its activities at the forum state is needed. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 (3d Cir. 2003) (denying jurisdiction based on a Spanish corporation's maintenance of an interactive commercial website that resulted in two sales to New Jersey residents); *see also Hurley v. Cancun Playa Oasis Int'l*, No. 99-cv-574, 1999 WL 718556, at *3 (E.D. Pa. Aug. 31, 1999) (Bartle, J.) (denying jurisdiction over a reservation-making platform accessible, but not explicitly targeted at or doing business in, Pennsylvania). Direct targeting is key, as "the mere posting of information or advertisements [online] does not confer nationwide personal jurisdiction," *Remick v. Manfredy*, 238 F.3d 248, 259 n.3 (3d Cir. 2001), and even actual knowledge that forum residents use a website is "insufficient" without proof that a defendant targeted those users. *M.H. & J.H. v. Omegle.com, LLC*, No. 20-cv-11294, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) (internal citations omitted).

10

In the instant case, Defendant lacks the minimum contacts needed to assert specific jurisdiction. Defendant operates, from the Czech Republic, an open-source search engine called Intelligence X, accessible at intelx.io. Kleissner Decl. ¶¶ 7-8. It hosts its Website from the Czech Republic. *Id.* ¶¶ 5, 7. Customers subscribe to use Intelligence X, agreeing to arbitration in the Czech Republic and the application of Czech law, and Defendant has historically offered both free and paid subscription models for this purpose. *See* Kleissner Decl. Ex. A. Defendant does not advertise in New Jersey or target its marketing efforts to New Jersey consumers in any way. Kleissner Decl. ¶¶ 6, 29. Defendant never intentionally conducted or solicited business in New Jersey, and less than 0.25% of its customer base is located in the state. ¶¶ 29-30.

The mere fact that Intelligence X is interactive or has end-user customers from New Jersey does not mean the minimum-contacts test is satisfied. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) (employing a "sliding scale" of commercial interactivity to determine whether personal jurisdiction exists). Even while referencing *Zippo*, the Third Circuit stated that "the mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us*, 318 F.3d at 454. Since *Toys "R" Us*, courts generally have held that even "highly interactive" websites did not evince "purposeful" targeting if the website was "not tailored to any forum." *Omegle.com*, 2021 WL 1050234 at *4 (collecting cases). In *Omegle*, the court found no personal jurisdiction over a website that "receives millions of page views per day from across the world," *id*. at *1, and, like the Website here, "looks and operates the same for users across the world." *Id.* at *3. The court in *Omegle.com* cited the First Circuit in *Kuan Chen v. U.S. Sports Academy, Inc.*, where the First Circuit found no specific jurisdiction over defendant in Massachusetts despite (i) a highly interactive website repeatedly accessed in Massachusetts, (ii) tuition paid to defendant *by*

*plaintiff* from Massachusetts, and (iii) "continuous email communications" *between the parties* while plaintiff was in Massachusetts. 956 F.3d 45, 59 (1st Cir. 2020). The facts here are even more attenuated than those in *Kuan Chen*. There were no "continuous" email or other communications to New Jersey with *any* party, and the Plaintiffs were *strangers* to Defendant.

Because Kleissner Investments never directly targeted New Jersey consumers, much less engaged in any way with Plaintiffs in New Jersey, it did not avail itself of the jurisdiction. *See id*. at 61-62 ("defendant cannot be said to have purposefully availed itself of the benefits of a forum with respect to a given plaintiff when it has neither initiated any in-forum activity involving that plaintiff nor dealt with him knowing that he was located in the forum").

ii.  *Even if Minimum Contacts Exist, the Legal Claims Are Unconnected to Them*

Even if Defendant was found to have targeted New Jersey (despite its attenuated contacts with non-parties to this action), a court has jurisdiction over a nonresident defendant with minimum contacts only if those contacts are connected to the specific legal claims at issue. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017). The "defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id*. (citing *Goodyear*, 564 U.S. at 931, n. 6). Further, this nexus between forum state and controversy must come from defendant's actions, not the actions of a plaintiff. *See*, *e.g.*, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.").

Thus, a plaintiff bears the burden of proving that the "litigation results from alleged injuries that arise out of or relate to" the purposeful targeting that must be found (but which is neither pleaded nor present here) to even trigger this inquiry. *Burger King*, 471 U.S. at 472. An

"arising out of" connection requires some causal link between the defendant's forum-based contacts and the claim, while a "relating to" connection may be shown where jurisdiction is supported "without a causal showing." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 193 (3d Cir. 2024) (cleaned up). A causal "arising out of" connection must be "closer and more direct" than "but-for" causation. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 323 (3d Cir. 2007). A "relating to" connection mandates that the "degree of relatedness required in a given case" be "inversely proportional to the overall intensity of the defendant's forum contacts." *Hasson*, 114 F.4th at 193 (quoting *O'Connor*, 496 F.3d at 320). Under either test, the legal claims asserted by Plaintiffs are unconnected to Defendant's nearly non-existent contacts with New Jersey.

The gravamen of Plaintiffs' Complaint is that Kleissner Investments violated Daniel's Law by "failing to cease the disclosure or re-disclosure . . . or otherwise making available of the protected information" of Covered Persons under Daniel's Law. Compl. ¶ 51. Nothing in the Complaint or Daniel's Law connects either the alleged "disclosure" or failure to cease disclosure to (a) the state of New Jersey, *see Atlas Data Privacy Corp. v. We Inform, LLC*, 2025 WL 1787566, *7-8 (D.N.J. June 27, 2025) (holding Daniel's Law applies extraterritorially), or (b) to Defendant's contacts with its few customers in New Jersey. This lack of connection between the claim and Defendant's gossamer contacts with New Jersey is reinforced by the fact that actual disclosure is not even necessary for Daniel's Law to apply. The statute defines "disclosure" to "include making available or viewable within a searchable list or database, *regardless of whether a search of such list or database is actually performed*." N.J. Rev. Stat. § 56:8-166.1 (2024) (emphasis added). In other words, as alleged in the Complaint, Defendant violates Daniel's Law *regardless of whether it had any New Jersey customers or users* so long as the protected information was available or viewable via the company's servers *in the Czech Republic*. Thus,

the alleged "disclosure" occurs regardless of, not "but-for," Defendant's purported contacts with New Jersey. For that reason, they do not satisfy the heightened "arising out of" test necessary for specific jurisdiction. *See O'Connor* 496 F.3d at 323 ("specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test").

Plaintiffs fare no better under the non-causal "relating to" test. As articulated in *O'Connor*, with each "purposeful contact . . . the forum state's law will extend certain benefits and impose certain obligations." 496 F.3d at 323. To maintain the balance "in this reciprocal exchange[,]" the relatedness requirement "must keep the jurisdictional exposure that results from a contact *closely tailored* to that contact's accompanying substantive obligations." *Id.* (emphasis added). Applying this analysis, the Third Circuit in *Hasson* found no specific jurisdiction over a defendant for deploying certain computer code via its website to a forum resident's computer despite defendant's "considerable contacts" with the forum, including 85 physical locations, regular marketing and advertisements, and regular sale of pizza to residents through its website. *See* 114 F.4th at 193. Importantly, as with the Complaint here, the plaintiff in *Hasson* did not allege "any facts concerning the company's promotion of its website" in the forum. *Id.* at 194. Critically, and dispositive of the facts here, although the defendant's website in *Hasson* allowed users to *order physical goods from physical locations in the forum for delivery in the forum*, the Third Circuit was "not persuaded that the website's accessibility in [the forum] establish[ed] the strong connection between the forum and the litigation that Due Process requires, especially given the unique doctrinal questions that internet transactions raise." *Id.* (citing *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 365 (2021)). Nothing approaching the

facts in *Hasson* are present here or alleged in the Complaint.[5]

*Hepp v. Facebook* is also dispositive of the matter. 14 F.4th 204, 208 (3d Cir. 2021). The plaintiff in *Hepp* brought intellectual-property misappropriation claims against defendants, including internet companies Reddit and Imgur. *Id.* at 207. Reddit and Imgur contested personal jurisdiction. *Id.* at 207-208. Despite allegations that those companies "purposefully availed themselves" of the forum market (in more detailed and direct ways than alleged or present here), none of the jurisdictional allegations formed a "strong connection" to the underlying claim (i.e., a misappropriation of plaintiff's likeness) despite the fact that the allegedly misappropriated likeness could be viewed from Pennsylvania via defendants' websites. *Id.* at 208. Importantly, plaintiff did not claim that Reddit or Imgur used her photo in connection with Pennsylvania specifically or that "the photo was taken, uploaded, or hosted in Pennsylvania." *Id.* Thus, the Third Circuit found that there was no specific personal jurisdiction over Reddit or Imgur. *Id.*

Here, Plaintiff does not plead *any connection* between Defendant's less-than-minimal New Jersey contacts and the alleged failure to cease disclosure of protected information, much less that Defendant specifically targeted New Jersey with respect to such conduct. This is not the "strong relationship" between the defendant, forum, and litigation that personal jurisdiction requires. *See Hepp*, 14 F.4th at 208.

Given Kleissner Investments' less-than-minimal contacts with New Jersey, and the fact

---

[5]       For this reason, if analyzed under the "effects" test in *Calder v. Jones*, 465 U.S. 783 (1984), there is still no personal jurisdiction. The effects test requires that defendant's actions "have a forum-directed purpose[.]" *Hasson*, 114 F.4th at 189 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir. 2004)). There is no allegation that Defendant "aimed" its provision of data into New Jersey, much less that there were any actual "effects" within the state. *Id.* at 192 (wiretapping would have happened regardless of locus of plaintiff, thus there was no "aiming" at the forum). Importantly, like in *Hasson*, Defendant was not alleged to disclose information *because* it knew any user was in New Jersey nor target New Jersey in particular for disclosure. *Id.* at 191-92. Nor have Plaintiffs alleged any actual effects within New Jersey.

that Plaintiffs' claims do not relate to those contacts, Defendant respectfully submits that the

Court lacks personal jurisdiction and the Complaint should be dismissed with prejudice.

## II.    DANIEL'S LAW IS UNCONSTITUTIONAL

### A.    Daniel's Law Violates the Foreign Commerce Clause Because New Jersey May Not Regulate Conduct in the Czech Republic

As noted above, and as this Court has found, New Jersey is attempting to regulate

conduct outside of its borders with respect to Daniel's Law. *Atlas Data Privacy Corp. v. We

Inform, LLC*, 2025 WL 1787566, *7-8 (D.N.J. June 27, 2025) (holding Daniel's Law applies

extraterritorially). In fact, this Court found that in order to be effective, Daniel's Law seeks the

removal of protected information from "the internet[,]" *id.*, apparently regardless of where such

information is collected, stored, hosted, or displayed. Regardless of whether New Jersey is

permitted to target information hosted outside its borders with respect to interstate commerce, it

cannot do so under the U.S. Constitution with respect to foreign countries and commerce.

The Constitution vests Congress with the power to "regulate Commerce with foreign

Nations[.]" U.S. Const. Art. I, § 8, Cl. 3. "Power over external affairs is . . . vested in the national

government *exclusively*." *See U.S. v. Pink*, 315 U.S. 203, 233 (1942) (emphasis added). Given

these principles, the constitutional inquiry regarding the Foreign Commerce Clause is not

"coextensive" with the Interstate Commerce Clause. *See Japan Line, Ltd. v. Los Angeles County*,

441 U.S. 434, 446 (1979). Indeed, state statutes that implicate foreign commerce must be

scrutinized with a "more extensive" inquiry than those targeting interstate commerce. *Id.* Part of

the reason for this extensive inquiry is that a multiplicity of regulation "would plainly prevent

this Nation from 'speaking with one voice' in regulating foreign commerce." *Id.* at 451. If the

state law in question "prevents" the federal government from "speaking with one voice" in

relation to a foreign government, the law is unconstitutional. *Id.*

16

Further, it is well-established that "a state law that has the 'practical effect' of regulating commerce occurring wholly outside the State's borders is invalid under the Commerce Clause." *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 332 (1989). The Supreme Court has struck down state laws that "regulate conduct . . . beyond the borders of this country." *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 69 (1st Cir. 1999), *aff'd Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (on Supremacy Clause grounds). This principle applies regardless of whether the regulation sounds in tort. Indeed, the Supreme Court has held that "a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 571-72 (1996).

With these constitutional limitations in mind, even if Daniel's Law is intended to apply exterritorialy, *see Atlas Data Privacy Corp. v. We Inform, LLC*, 2025 WL 1787566, at *7-8 (D.N.J. June 27, 2025), it cannot be applied internationally to regulate Kleissner Investments' lawful conduct in the Czech Republic. Yet that is exactly what the law purports to do. *See id.* ("The Legislature was undoubtedly cognizant of the reality that entities holding the information in question may disclose the information in New Jersey *or by other means from a location originating outside of New Jersey.*") (emphasis added). And here, Plaintiffs attempt to hold Defendant liable in New Jersey regardless of the legality of any alleged disclosures in its home jurisdiction of the Czech Republic.

Importantly, regardless of from where *users* of Intelligence X access the Website, the *Defendant's* alleged conduct (i.e., failing to remove protected information) occurred entirely within the Czech Republic. Kleissner Decl. ¶ 5. Nothing in Daniel's Law or the Complaint ties that purportedly liable conduct to New Jersey or limits Plaintiffs' claims to that forum. *E.g.* Compl. ¶ 51 ("Defendants failed to cease the disclosure or re-disclosure *on the Internet*. . .")

17

(emphasis added). As such, Kleissner Investments' "disclosure" (which includes merely having the protected information available regardless of whether it is searched) from its Website in the Czech Republic, Compl. ¶ 35, to a user in the Czech Republic following the alleged notices from Plaintiffs purportedly results in a violation of Daniel's Law despite that the conduct is legal in the Czech Republic. Accordingly, Daniel's Law purports to reach beyond the boundaries of not only New Jersey, but the United States, to hold Defendant liable for an entirely legal transaction in its jurisdiction. Because the purported intent and effect of New Jersey's law is to "control conduct beyond the boundaries of the State," it is unconstitutional under the Foreign Commerce Clause. *Healy*, 491 U.S. at 336; *see also Natsios*, 181 F.3d at 69.

Moreover, Daniel's Law violates the Foreign Commerce Clause insofar as it prevents the federal government from advancing a uniform national approach concerning the privacy of government officials with respect to foreign nations. *Japan Line, Ltd.*, 441 U.S. at 452-53 (finding a California law unconstitutional because the *possibility* of varying state tax laws may frustrate Congress's power to regulate). In addition to New Jersey, at least ten states have passed statutes similar to Daniel's Law limiting the disclosure of public servants' information. *See*, *e.g.*, Md. Code. Ann. Cts. & Jud. Proc. § 3-2303 (Maryland); W. Va. Code § 5A-8-24. Each of these statutes differs in scope, *compare*, *e.g.*, Md. Code Ann. Cts & Jud. Proc. §§ 3-2301(e) ("protected individual[s]" are judges and associated persons) *with* N.J. Stat. § 56:8-166.1(d) ("covered person[s]" include law enforcement officers), and application. *Compare*, *e.g.*, Md. Code Ann. Cts & Jud. Proc. §§ 3-2303(b) (requiring requestor of a removal notice provide "sufficient information" that requestor is a protected individual as well as "adequately identify" the location of the personal information) *with* N.J. Stat. § 56:8-166.1(a) (providing merely for "written

18

notice"). West Virginia's statute was struck down on First Amendment grounds. *See Jackson v. Whitepages, Inc.*, 2025 WL 2407201 (N.D.W.V. Aug. 19, 2025).

Nor has the federal government been silent on the issue. Congress passed a similar judicial privacy act protecting federal judges and their immediate families. *See* James M. Inhofe Nat. Def. Authorization Act for the Fiscal Year 2023, Pub. Law 117-263, § 5931 *et seq.* ("Daniel Anderl Judicial Security and Privacy Act" or "JSPA"). The JSPA narrowly tailored its definition of "data brokers" covered by the law, *id.* § 5931(3), and types of "transfers" of data covered. *Id.* § 5931(8). Importantly, nothing in the JSPA indicates that it has extraterritorial effect. *See Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").

The Executive Branch has also spoken on the subject. On February 28, 2024, President Biden issued Executive Order 14117, 89 Fed. Reg. 15421, governing the access of "Americans' Bulk Sensitive Personal Data." The Executive Order was issued to address the use of Americans' sensitive personal data by certain "countries of concern." Pursuant to the Executive Order, the Department of Justice issued regulations governing access to U.S. sensitive personal data. *See* 28 C.F.R. § 202.101 *et seq.* Even this regulation, designed to address "an unacceptable risk to the national security of the United States" only "prohibit[s] or otherwise restrict[s] *United States persons*[.]" 28 C.F.R. §§ 101, 303(a).

Thus, with respect to the "disclosure" of names and home addresses or telephone numbers by foreign companies in foreign countries, whether of Covered Individuals or otherwise, Congress and the Executive Branch spoke in one voice—silence. That is "exclusively" their purview. *See Pink*, 315 U.S. at 233. They may speak—or not—in their discretion in the future. But New Jersey (and Plaintiffs) have inserted themselves where they

may not. Given the varying state and federal statutes, Daniel's Law "prevents the Government from 'speaking in one voice' when regulating foreign commercial relations with foreign governments." *Japan Line*, 441 U.S. at 451. It is accordingly unconstitutional.

### B.    Daniel's Law Violates the First Amendment

Pursuant to the Court's February 5, 2026 Order, DE 25, Defendant incorporates the arguments that Daniel's Law is unconstitutional under the First Amendment as briefed in *Atlas Data Privacy Corp. v. Lightbox Parent, L.P.*, No. 24-cv-4105, DE 27, and subsequent appeals. *See Atlas Data Privacy Corp. v. We Inform LLC*, No. 25-1555 (3d Cir.). For the reasons set forth in that brief and on appeal, Defendant respectfully submits that the statute is unconstitutional.

## III.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM

Pursuant to the Court's February 5, 2026 Order, DE 25, Defendant incorporates the arguments made in Defendants' Consolidated Motion to Dismiss filed in *Atlas Data Privacy Corp. v. DM Group, Inc.*, No. 24-cv-4075, DE 59, subject to the supplemental arguments relevant to the Complaint in this action as set forth below.

### A.    Plaintiffs' Claims Are Barred by the Communications Decency Act

This Court has recognized that the Communications Decency Act of 1996 ("CDA") § 230 [47 U.S.C. § 230] immunizes "interactive computer service" providers from liability "as the publisher or speaker of any information provided by another information content provider." *Atlas Data Privacy Corp. v. We Inform, LLC*, 2025 WL 2444153, *3 (Aug. 25, 2025). Congress expressly preempted state laws to the contrary.[6] *Id.* (citing 47 U.S.C. § 230(e)(3)). To state a

---

[6]    The Supremacy Clause of the Constitution provides that federal law preempts state law in three circumstances: express preemption, as well as the implied conflict and field preemptions. *See Treasurer of New Jersey v. U.S. Dept. of Treas.*, 684 F.3d 382, 406 (3d Cir. 2012). Express preemption applies where Congress explicitly provided for a preemptive effect. *Id.* Conflict preemption applies where a party cannot comply with both federal and state law, or where state

defense under the CDA, a defendant must establish: (1) that it is the provider (or user) of an "interactive computer service[;]" (2) that the claim seeks to treat defendant as the publisher or speaker of the information; and (3) that the "challenged information" was provided by another "information content provider." *Id*. The defense may be established in a motion to dismiss. *See*, *e.g.*, *Green v. America Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) (affirming dismissal of tort claim based on the CDA); *Dimeo v. Max*, 433 F. Supp. 2d 523, 531 (E.D. Pa. 2006) (dismissing claim because of CDA immunity).

The first and second elements of CDA immunity are satisfied here because they are also elements of the purported Daniel's Law violations. On its face, the Complaint alleges that Defendant is liable under Daniel's Law because it "engage[d] in the disclosure of data and information through one or more websites[,]" specifically referencing Defendant's Website intelx.io, a search engine. Compl. ¶ 37; *see also* Compl. ¶ 60 ("Defendants did not cease the disclosure or re-disclosure on the Internet"); Kleissner Decl. ¶ 9. Under the CDA, an "interactive computer service" is an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Thus, Defendant is (1) the provider of an "interactive computer service"[7] and (2) being treated as the "publisher" of information protected by Daniel's Law.

---

law "erects an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

[7]    "Courts typically have held that internet service providers, website exchange systems, online message boards, *and search engines* fall within" the definition of "interactive computer service." *See* Intervenor Attorney General of New Jersey's Consolidated Brief in Opposition to Defendants' Motions to Dismiss Based on Preemption, *Atlas Data Privacy Corp. v. We Inform, LLC*, No. 24-cv-4037, DE 77 at 17 (quoting *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (emphasis added)).

This Court focused on the third element—whether the information was provided by another "information content provider"—in analyzing the CDA defenses of other Atlas defendants. *We Inform, LLC*, 2025 WL2444153 at *3-4. An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* at *3 (citing 47 U.S.C. § 230(f)(3)). Notwithstanding the Court's ruling as to other defendants, which rested on facts conceded by those defendants that were not alleged in the Complaint here, *id.* at *3-4, Kleissner Investments is not an "internet content provider" for the following reasons.

First, Plaintiffs do not allege that Defendant created or developed the information it allegedly "disclosed" or "re-disclosed." *E.g.*, Compl. ¶ 52. The Complaint is bare of facts allowing the reasonable inference that Kleissner Investments created or developed any information it allegedly "disclosed" or "re-disclosed." *See Iqbal*, 556 U.S. at 678.

Second, unlike other Atlas defendants who this court noted "seek out and compensate others for providing the home addresses appearing on their websites[,]" *We Inform, LLC*, 2025 WL2444153 at *4, Kleissner Investments merely reveals, at most, what is already available on the Internet *in its original form*. Kleissner Decl. ¶¶ 9-13. Defendant's product, Intelligence X, is a search engine (like Google) that indexes portions of the Internet and allows users to search specific selectors—but not by name.[8] Kleissner Decl. ¶¶ 9, 15. A user searches, and what is available on the Internet from "another information content provider," 47 U.S.C. § 230(c)(1), is shown. *See* Kleissner Decl. ¶¶ 10-12. It does not "develop" such information by "providing comprehensive reports" or "meticulously craft[ing] personalized solutions" or "[f]ill[ing] in missing data" based upon user searches. *See We Inform, LLC*, 2025 WL2444153 at *4. Plaintiffs

---

[8]    *See also* https://intelx.io/about.

do not plead otherwise. Nor could they consistent with Fed. R. Civ. P. 11, as the Website, specifically referenced in ¶ 37 of the Complaint, demonstrates that it operates as a search engine. Kleissner Decl. ¶ 9.

To the extent Plaintiffs argue that the second element (that Defendant is being treated as a publisher) is not satisfied because liability arises only from noncompliance with a nondisclosure request and not from "publishing" it,[9] those contentions fail. First, despite Plaintiffs' careful eliding in their Consolidated Opposition Brief, disclosure includes "*making available or viewable* within a searchable list or database," Compl. ¶ 9 (emphasis added), literally an act of publication. The fact that "disclosure" occurs "regardless of whether a search of such list or database is actually performed," *see id.*, is of no moment. A book, for example, may be "published" regardless of whether anyone reads it. Second, the basis of Plaintiffs' claim assumes that Defendant could have "cease[d] the disclosure or re-disclosure" of the relevant information. Compl. ¶ 60. The decision to "publish, withdraw, postpone, or alter content" is an "exercise of a publisher's traditional editorial functions" protected by the CDA. *Green*, 318 F.3d at 471 (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Plaintiffs' allegation that Defendant had authority to remove protected information from the Website's search results is a dispositive concession that Defendant is a "publisher" for CDA purposes.

Accordingly, Plaintiffs' claims are expressly barred by the CDA and should be dismissed.

### B.    Plaintiffs Failed to Plausibly Allege Scienter

A plaintiff's assertion of a legal conclusion is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. For that reason, a complaint that merely "offers labels and conclusions or

---

[9]    *See* Plaintiffs' Br. In Opposition to Defs. Consolidated Motion to Dismiss Pursuant to Rule 12(b)(6) ("Consolidated Opposition Brief"), *Atlas Data Privacy Corp. v. We Inform, LLC*, No. 24-cv-4037, DE 55 at 48.

a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (cleaned up). The Complaint here alleges that Defendant acted "negligently," Compl. ¶ 25, and willfully or recklessly. Compl. ¶ 61. This Court previously found that the allegations concerning the mens rea of other defendants in prior Atlas complaints were sufficient. *See Atlas Data Privacy Corp. v. We Inform, LLC*, 2025 WL 1787566, *5, 7 (June 27, 2025). In part, this Court based its ruling that negligence was sufficiently pleaded, *id.* at *5, on Plaintiffs' bare allegation that unnamed "data brokers wantonly and repeatedly disregarded the law[,]" an allegation pleaded in this Complaint against "data brokers" generally, but not Kleissner Investments specifically. *See* Compl. ¶ 3. Similarly, this Court found that the "lapse in time" between the alleged removal notice(s) and failure to take down protected information was sufficient to allege recklessness. 2025 WL 1787566 at *7. Whatever the merits of these holdings as to the other Atlas defendants, the allegations in the Complaint against Kleissner Investments undermines the basis for their application in this case.

First, the Complaint itself alleges that Kleissner Investments is a Czech company with offices in Prague. Compl. ¶ 35. While the Complaint contains the barebones allegation that Kleissner Investments "transacts business within" New Jersey and "offer[s] and engage[s] in the disclosure of data and information" there, *id.* at ¶¶ 35, 37, it does not allege that Defendant's business was so extensive that it might expect to be subject to the laws of New Jersey as a Czech company operating from Prague. Even accepting as true the allegation that Defendant "received" the notices sent by Plaintiffs, nothing in those emails provides adequate notice that New Jersey law might apply to a Czech company solely operating from the Czech Republic. *See* Compl. ¶ 50. There are no allegations in the Complaint that Kleissner Investments could not rely on the well-established law that "mere operation of a commercially interactive web site should not

24

subject the operator to jurisdiction anywhere in the world," *see, e.g., Hasson*, 114 F.4th at 190-191; *Toys "R" Us, Inc.*, 318 F.3d at 454, or that New Jersey could not speak for the United States with respect to foreign relations or otherwise regulate Defendant's conduct in the Czech Republic. *See supra* Section III.A. Even if, somehow, the Complaint adequately alleges negligence in light of these circumstances, the allegations certainly do not rise to the level of knowing or reckless disregard given the facts pleaded. Accordingly, the Complaint fails to allege the negligence necessary to state a claim under Daniel's Law or the willfulness or recklessness required to state a claim for punitive damages.

## **CONCLUSION**

However laudable the goals of New Jersey were in passing Daniel's Law, Plaintiffs' efforts to monetize it against Kleissner Investments fail because there is no personal jurisdiction, the law violates the Constitution, the CDA immunizes Defendant, and Plaintiffs' skeletal Complaint did not plausibly allege scienter. Kleissner Investments respectfully requests that the Complaint be dismissed.

February 25, 2026

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
   Victor Suthammanont
   Kostelanetz LLP
   7 World Trade Center, 34th Floor
   New York, NY 10007
   (212) 719-2649
   vsuthammanont@kostelanetz.com