UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------x

ATLAS DATA PRIVACY CORPORATION, et al.,          :
                                                 :
                    Plaintiffs,                  :
                                                 :
           v.                                    :     Civ. Action No. 1:25-cv-17065 (HB)
                                                 :
KLEISSNER INVESTMENTS S.R.O., et al.,            :
                                                 :
                    Defendants.                  :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :

-------------------------------------------------------------------x

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE
MOTION OF KLEISSNER INVESTMENTS S.R.O.
TO COMPEL ARBITRATION**

**PEM LAW LLP**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
Jessica A. Merejo (288592020)
1 Boland Drive, Suite 101
West Orange, New Jersey 07502
Telephone: (973) 577-550
Facsimile: (973) 860-4433
Emails: rparikh@pemlawfirm.com
         keinhorn@pemlawfirm.com
         jmerejo@pemlawfirm.com

**FRIEDMAN KAPLAN SEILER
  ADELMAN & ROBBINS LLP**
Rahul Agarwal, Esq. (365832024)
Diana A. Arsanjani Reisman (*pro hac vice*
pending)
1 Gateway Center, 25th Floor
Newark, New Jersey 07012
Telephone: (973) 877-6400
Email(s): ragarwal@fklaw.com
          dreisman@fklaw.com

*Attorneys for Plaintiffs*

***Of Counsel and on the Brief:***
Rahul Agarwal, Esq. (365832024)
Diana A. Arsanjani Reisman (*pro hac vice* pending)

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................3

ARGUMENT ..............................................................................................................5

I. THE ARBITRATION PROVISION IS UNENFORCEABLE AS APPLIED HERE .................6

    A.    Conditioning Access to Evidence of Noncompliance on Waiver of Judicial Review is Coercive ....................................................................6

    B.    Application of Czech Law Would Effectively Extinguish Plaintiffs' Rights ..........8

II. ASSUMING *ARGUENDO* THE EXISTENCE OF A VALID ARBITRATION AGREEMENT, THIS DISPUTE WOULD NOT FALL WITHIN ITS SCOPE ..............10

    A.    The Arbitration Provision Does Not Encompass Pre-existing Statutory Claims ......................................................................10

    B.    Plaintiffs' Claims Do Not Arise From or Require Interpretation of the Terms of Service ....................................................................12

III. NO DELEGATION; FEDERAL LAW GOVERNS THE SCOPE ANALYSIS ...................15

CONCLUSION..........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Atalese v. U.S. Legal Servs. Grp., L.P.,
  219 N.J. 430 (2014) ........................................................................................................11

Atlas Data Privacy Corp. v. We Inform, LLC,
  758 F. Supp. 3d 322 (D.N.J. 2024) ..................................................................................1

Bernetich, Hatzell & Pascu, LLC v. Med. Records Online, Inc.,
  445 N.J. Super. 173 (App. Div. 2016). ........................................................................7, 8

CardioNet, Inc. v. Cigna Health Corp.,
  751 F.3d 165 (3d Cir. 2014)..........................................................................5, 10, 13, 14

Doctor's Assocs., Inc. v. Casarotto,
  517 U.S. 681 (1996).......................................................................................................16

EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.,
  410 N.J.Super. 453 (App.Div.2009) ..............................................................................14

First Options of Chicago, Inc. v. Kaplan,
  514 U.S. 938 (1995).................................................................................................5, 6, 16

Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.,
  168 N.J. 124 (2001) .......................................................................................................12

Gay v. CreditInform,
  511 F.3d 369 (3d Cir. 2007)...........................................................................................16

Gen. Elec. Co. v. Deutz AG,
  270 F.3d 144 (3d Cir. 2001)...........................................................................................16

Granite Rock Co. v. Int'l Bhd. of Teamsters,
  561 U.S. 287 (2010).........................................................................................................5

Griffin v. Burlington Volkswagen, Inc.
  411 N.J. Super. 515 (App. Div. 2010). .....................................................................13, 14

Instructional Sys., Inc. v. Computer Curriculum Corp.,
  130 N.J. 324 (1992) .......................................................................................................17

Martindale v. Sandvik, Inc.,
  173 N.J. 76 (2002) ...........................................................................................................8

McCarrell v. Hoffmann-La Roche, Inc.,
    227 N.J. 569 (2017) ...................................................................................................17

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985)................................................................................................8, 9

Moon v. Breathless Inc,
    868 F.3d 209 (3d Cir. 2017)......................................................................................11

RCM Techs., Inc. v. Brignik Tech., Inc.,
    137 F.Supp.2d 550 (D.N.J. 2001) ..............................................................................14

Russell v. Citigroup, Inc.,
    748 F.3d 677 (6th Cir. 2014) .....................................................................................12

Steigerwalt v. Terminix Int'l Co., LP,
    246 F. App'x 798 (3d Cir. 2007) ................................................................................10

**Statutes**

9 U.S.C. §1 et seq............................................................................................................2, 16

N.J.S.A. 56:8-166.1, -166.3 ................................................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiffs[1] bring this action against Defendant Kleissner Investments S.R.O. ("Kleissner" or "Defendant") for its violations of N.J.S.A. 56:8-166.1 ("Daniel's Law").

Daniel's Law prohibits the disclosing, re-disclosing, or otherwise making available the home addresses and unpublished home telephone numbers ("Protected Information") of "covered persons," *e.g.*, active or retired judges, law enforcement officers, prosecutors, child protective investigators in the Division of Child Protection and Permanency, and any qualifying family members who submit a written notice demanding that such protected information not be disclosed. N.J.S.A. 56:8-166.1. In recognition of the unique dangers faced by such individuals, Daniel's Law was enacted to protect "covered persons" from potential harm. See Atlas Data Privacy Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 337 (D.N.J. 2024).

Defendant's attempt to compel arbitration, in the Czech Republic, of Daniel's Law claims, is both coercive and untethered from the scope of any actual agreement. Defendant cannot show that this dispute falls within the scope of its purported arbitration agreement and concedes it does not know who created accounts on IntelX—whether it was Plaintiffs or anyone acting on their behalf—or what conduct was undertaken through them. See Defendant's Brief in Support of its Motion to Compel Arbitration (ECF No. 26-1) ("Mot.") at 2. The Daniel's Law violations alleged in the Complaint did not "arise from" or depend upon any interaction with Defendant's website but instead stem from conduct wholly independent of it. Plaintiffs' claims are not grounded in any account activity, but in Defendant's *prior* statutory violations.

---

[1] Plaintiffs comprise Atlas Data Privacy Corporation ("Atlas"), as assignee of individuals who are Covered Persons, along with the Individual Plaintiffs—law enforcement officers Jane Doe-1 and Peter Andreyev.

Plaintiffs could not have brought this action without an evidentiary basis to believe Defendant was not complying with the law. Yet Defendant now seeks to turn that reality on its head—by using evidence of the very misconduct giving rise to Plaintiffs' claims as the hook to expand the reach of its arbitration clause. That inversion is neither logical nor permissible. Arbitration provisions, even when broadly construed, do not extend to disputes that are independent of the contractual relationship and do not "arise out of" or have a "connection" with the agreement at issue.

Plaintiffs do not contend that Daniel's Law claims can never be resolved in arbitration. That is a question for another day. The defect here is structural: under Defendant's approach—and the similar schemes increasingly being adopted by data brokers—plaintiffs are not afforded a meaningful opportunity to choose whether to arbitrate. Instead, arbitration is imposed only *after* a violation is committed, transforming what should be a matter of consent into a compelled consequence of seeking to vindicate statutory rights. That is not arbitration as contemplated under the Federal Arbitration Act; it is coercion. Indeed, it is worse, through its choice-of-law provision, the scheme operates to extinguish the right altogether. Defendant's arbitration provision also requires that disputes are to be resolved under Czech law, and Defendant concedes that no corollary to Daniel's Law exists under Czech law, and as such, Plaintiffs would have no claims. See Defendant's Brief in Support of its Motion to Dismiss (ECF No. 27-1), at 17. Defendant thus seeks to avail itself of the benefits of doing business in this forum—by collecting and exploiting the personal information of New Jersey residents—while disclaiming the obligations that forum law imposes, namely timely compliance with nondisclosure requests from Covered Persons. As a result, Defendant's motion to compel is entirely dispositive of this case. If granted, it would not

merely shift the dispute to another forum or apply a foreign analogue to the same right—because none exists. Instead, it would foreclose any remedy altogether.

For these reasons and as explained in greater detail below, Plaintiffs respectfully request that the Court deny Defendant's Motion to Compel Arbitration and proceed to the merits of the dispute.

## STATEMENT OF FACTS

Defendant Kleissner offers and engages in the disclosure of data and information of New Jersey residents through one or more websites or applications in New Jersey, including intelx.io, to businesses and individuals who reside in New Jersey. (Compl. ¶ 37.) In accordance with Defendant's business model, users or customers may obtain a name and home address and/or a name and home telephone number (including the name and address and/or home telephone number of the Individual Plaintiffs and Covered Persons). (Id. ¶ 38.)

Atlas's platform provides Covered Persons with the tools and discretion to enforce their privacy rights under Daniel's Law. Upon signing up for Atlas's platform, a Covered Person is asked a series of questions to collect necessary personal information and qualify their eligibility under Daniel's Law. (Compl. ¶ 28.) If eligible, each Covered Person receives their own email account through AtlasMail, an email service operated by Atlas, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for their personal use. (Id. ¶¶ 28-29.) Each Covered Person is then presented with a page on which they can review their home addresses and home telephone numbers, a nondisclosure request template, and a list of potential data brokers to which they can send nondisclosure requests. (Id. ¶ 30.) Thus, Atlas maintains a precompiled list of known data brokers to whom Covered Persons can send nondisclosure requests. The Covered Person is then responsible for selecting which, if any, data brokers to send nondisclosure requests. (Id.) Any

3

response or reply from a data broker to the Covered Person is received in the Covered Person's

AtlasMail inbox—AtlasMail functions as a fully-featured email service provider. (Id. ¶ 31.)

Starting on or around January 6, 2024, the Covered Persons and Individual Plaintiffs used

the Atlas platform to send written nondisclosure requests to Defendant. (Compl. ¶ 49.) Defendant

failed to comply with the nondisclosure requests within the time period required by Daniel's Law

and remained noncompliant as of the filing of the Complaint—and potentially to this day. (Id. ¶¶

51-52.)

The IntelX Terms of Service

Defendant claims that when registering an account with IntelX, users must check the box

indicating "I agree to the Terms of Service," with the Terms accessible via hyperlink. (See Mot.

at 5.)

The Terms of Service, in turn, provide that IntelX offers its search engine services under

both free and paid tiers, with differing levels of access and functionality. See Agreement on

Provision of Search Engine Services (ECF No. 26-5) ("Terms of Service"), ¶¶ 1-13. The remaining

provisions address the user's and platform's respective rights and obligations arising from use of

the service, including matters such as subscription fees, warranties, limitations on liability for the

service provided, and termination.  (Id. ¶¶ 14-37.)

The second paragraph under "Final Provisions" is as follows:

> This Agreement and all rights and obligations of the Parties arising from or related to this
> Agreement shall be governed by the Czech law. All disputes arising from this Agreement
> and in connection therewith shall be finally decided by the Arbitration Court attached to
> the Economic Chamber of the Czech Republic and the Agrarian Chamber of the Czech
> Republic in accordance with its Rule and Regulations by one arbitrator chosen by the
> President of the Arbitration Court. The place of arbitration shall be Prague and the language
> shall be English.

(Id. ¶ 39.)

4

## ARGUMENT

[A]rbitration is ... a matter of contract between the parties; it is a way to resolve those disputes—but *only* those disputes-that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (emphasis added). The parties may agree to arbitrate some disputes but not others, and "the fact that the parties have agreed to arbitrate some disputes does not necessarily manifest an intent to arbitrate every dispute that might arise between the parties." CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014) Accordingly, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original).

For the purposes of this Opposition, Plaintiffs assume *arguendo* the existence of a Terms of Service agreement solely to address the threshold defect in Defendant's Motion: its failure to show that the arbitration provision is enforceable in this context (Section I). That failure is dispositive and reflects a broader structural problem with Defendant's theory. And, in any event, even if enforceable in this context, the dispute at issue does not fall within the scope of any such agreement (Section II).[2] Lastly, the Court need not consider Defendant's arguments regarding Czech law as they are irrelevant for the purposes of deciding this Motion (Section III).

---

[2] To avoid unnecessary repetition, the remainder of this Opposition proceeds on the assumption that Plaintiffs (or their agents) assented to the Terms of Service. This assumption is made solely for the purposes of this argument and does not concede any arguments as to contract formation and assent. To the extent the Court is disinclined to accept Plaintiffs' arguments in opposition regarding the enforceability and scope of the purported arbitration agreement, we submit that limited discovery likely would be necessary to develop the factual record regarding contract formation and assent.

### I. THE ARBITRATION PROVISION IS UNENFORCEABLE AS APPLIED HERE

The IntelX arbitration provision is unenforceable as applied here. For purposes of this Opposition, Plaintiffs do not contend that the challenged arbitration provision is facially invalid or incapable of being enforced in any circumstance. For example, in the ordinary course of business between user and platform, the provision may potentially be applied to, say, subscription-renewal or warranty disputes, without raising concerns. Rather, Plaintiffs' argument is narrower: *in this specific context*, the provision is unenforceable.

*First,* Defendant cannot condition Plaintiffs' ability to obtain the evidence necessary to bring their statutory claims on their agreement to arbitrate them, and *second*, the arbitration and choice-of-law provisions cannot operate in 'tandem' to extinguish Plaintiffs' claims altogether.

### A.   Conditioning Access to Evidence of Noncompliance on Waiver of Judicial Review is Coercive

Defendant seeks to condition Plaintiffs' ability to obtain the evidence necessary to bring their claims on their agreement to arbitrate them. Defendant argues that Plaintiffs must have a good-faith factual basis to file suit, while treating any effort to obtain that evidence—namely, interaction with the IntelX platform—as assent to arbitration. That position is untenable. Defendant's website was accessed only to confirm compliance with Daniel's Law *after* the submission of takedown notices. Yet Defendant would transform the very conduct required to satisfy Plaintiffs' good-faith pleading obligations into a waiver of judicial review. Plaintiffs do not contend that assent to the provision is unenforceable in *all* contexts. However, under the circumstances presented here—where assent was required as a prerequisite to vindicating their rights—Plaintiffs would have lacked any meaningful choice in accepting the terms.

This is analogous to <u>Bernetich, Hatzell & Pascu, LLC v. Medical Records Online, Inc.,</u> wherein a law firm requested medical records from a records processor for a prospective client

who authorized the firm to obtain medical records on his behalf. 445 N.J. Super. 173, 177 (App. Div. 2016). The records processor sent the law firm an invoice for copies of the patient's medical records. Id. The invoice stated prepayment was required for the records to be released, that payment "would constitute approval of the charges and the invoice" and if the law firm disputed the invoice, it was required to arbitrate. Id. The law firm subsequently brought a class action against the records processor alleging that it charged fees in excess of those permitted by statute for records it was already obligated to provide at a reasonable cost. Id. at 176. The records processor sought to enforce the arbitration clause embedded in its earlier invoice to the law firm, arguing "the medical records constituted consideration for [the law firm's] alleged promise to arbitrate." Id. at 184. The New Jersey Appellate Division rejected that argument, holding that the law firm "had a pre-existing right to the records for a cost-based fee," and as a result, the law firm did not "'get something' out of the alleged agreement to arbitrate that it did not already have." Id. Stated differently, the defendant could not condition its performance of a pre-existing statutory obligation on the plaintiff's acceptance of additional terms.

The logic of Bernetich applies here as well. Defendant's position effectively treats access to evidence of its own statutory violation as the consideration for Plaintiffs' purported agreement to arbitrate claims based on those violations. That is not valid consideration. As Bernetich makes clear, a party cannot manufacture assent to arbitration by embedding such terms in the very process by which a counterparty enforces "pre-existing rights." Under Daniel's Law, having supplied the requisite notice to Defendant, Plaintiffs were entitled to the safeguarding from disclosure of their Protected Information. Any limited interaction with the platform did not confer any new benefit beyond assessing that Defendant was indeed *out of compliance* with its obligations. Nor does the fact that Defendant may have received a modest subscription fee change the analysis. As in

7

Bernetich, where the plaintiff also paid, Plaintiffs did not 'get something out' of the alleged agreement to arbitrate. Evidence of noncompliance with a pre-existing legal duty cannot serve as consideration for an agreement to arbitrate.

Bernetich is equally instructive on the coercive nature of Defendant's position. There, the Appellate Division also rejected the liability waiver in the same invoice, explaining that the waiver was not voluntary because it forced the plaintiff to choose between paying and relinquishing its rights, or disputing the charges and delaying access to the records to which it was legally entitled within a fixed 30-day statutory deadline. Id. at 185. The same dilemma exists here: Plaintiffs are forced to choose between filing their complaint without evidentiary support or forfeiting their right to litigate, leaving them no meaningful alternative but to assent. Conditioning access to necessary evidence on an agreement to arbitrate renders the provision unenforceable as applied.

**B.    Application of Czech Law Would Effectively Extinguish Plaintiffs' Rights**

"[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial forum." Martindale v. Sandvik, Inc., 173 N.J. 76, 93 (2002) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). But "choice-of-forum and choice-of-law clauses [that] operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies" violate public policy. Mitsubishi, 473 U.S. at 637 n.19.[3]

This case presents precisely that concern. This is not a situation where the arbitration provision simply substitutes one forum for another. Here, the arbitration provision, combined with

---

[3] In Mitsubishi, the Court permitted arbitration of U.S. antitrust claims despite a Swiss choice-of-law clause, relying in part on representations that the arbitral tribunal would nonetheless apply U.S. antitrust law. 473 U.S. at 637 n. 19. Accordingly, the Court "ha[d] no occasion to speculate" whether the choice-of-forum and choice-of-law provisions would operate together to foreclose those claims. Id.

Defendant's choice of law, would eliminate Plaintiffs' claims altogether. Defendant is seeking to compel arbitration under a body of law that does not recognize the right at issue—a point that Defendant concedes. See Defendant's Brief in Support of its Motion to Dismiss (ECF No. 27-1) at 23 ("Kleissner Investments' 'disclosure'… from its Website in the Czech Republic [] to a user in the Czech Republic following the alleged notices from Plaintiffs purportedly results in a violation of Daniel's Law despite that the conduct is legal in the Czech Republic.") Plaintiffs' Daniel's Law claims would not even be considered. Nor is there any basis to expect that they would be: the provision calls for an arbitrator selected by a Czech institution, applying Czech law, in Prague. The Court is therefore confronted with the very scenario Mitsubishi warned against: an agreement that operates as a prospective waiver of statutory rights.

Even the logic of Defendant's position is undermined by the sequence of events. Covered Persons first exercised their Daniel's Law rights by sending takedown notices to known data brokers, including Defendant, and only *later* was the IntelX website searched to verify compliance. Defendant's position would require that the effort to uncover evidence of a violation operate as a waiver of the very rights Plaintiffs are seeking to enforce.

Plaintiffs are not being asked to pursue their claims in another forum. They are being stripped of the ability to pursue them at all. The result is stark and indefensible: Plaintiffs must either refrain from accessing the IntelX platform and risk filing without sufficient factual basis or access the platform and trigger a regime under which their claims cease to exist. In either event, the right is extinguished.

More troubling still, endorsing Defendant's approach would extend far beyond this case. It would sanction a broader regime in which any data broker could immunize itself from liability by conditioning access needed to verify Daniel's Law violations on agreement to arbitration and

choice-of-law provisions that conveniently eliminate the claim. The inevitable result is to drain Daniel's Law of any practical force and leave those it protects without any meaningful ability to enforce their rights.

## II. ASSUMING *ARGUENDO* THE EXISTENCE OF A VALID ARBITRATION AGREEMENT, THIS DISPUTE WOULD NOT FALL WITHIN ITS SCOPE

The Terms of Service arbitration provision does not encompass Plaintiffs' claims. "[W]hether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." CardioNet, 751 F.3d at 172. Here, the provision's text and structure limit its reach to disputes arising *from* the use of Defendant's platform, which these claims do not involve. In any event, even a broad arbitration provision does not extend to statutory claims that can be resolved without *any reference whatsoever* to the parties' contract.

### A.    The Arbitration Provision Does Not Encompass Pre-existing Statutory Claims

"[T]he proper starting point is the plain meaning of the Arbitration Agreement. Not all principles of interpretation are created equal; the plain meaning rule should always come first." Steigerwalt v. Terminix Int'l Co., LP, 246 F. App'x 798, 801 (3d Cir. 2007). So, courts "begin by carefully analyzing the contractual language in the arbitration clause at issue." CardioNet, 751 F.3d at 173 (cleaned up).

By its terms, the arbitration provision is tethered to the Terms of Service: "All disputes arising from *this Agreement* and in connection therewith shall be finally decided by" arbitration. (Terms of Service, ¶ 39 (emphasis added).) The Terms of Service, in turn, govern the provision and use of search engine services, covering matters such as licensing fees, access levels, subscription terms, and account security. Accordingly, the arbitration provision only reaches

10

disputes arising from a user's account and use of the platform—claims that necessarily accrue, if at all, only *after* the user creates an IntelX account or uses the search engine services.

This dispute does not fall into that category. Plaintiffs' claims *predate* the Terms of Service, do not implicate any rights or duties in the Terms of Service, and would continue to exist regardless of any contractual relationship between the parties.

Nothing in the Terms of Service "clearly and unambiguously signal[s] to plaintiff[s] that [they] [are] surrendering [their] right to pursue [their] statutory claims in court." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 437, 488 (2014) (holding that "any claim or dispute... related to this Agreement or related to any performance of any services related to this Agreement" did not extend to statutory claims); see also Moon v. Breathless Inc, 868 F.3d 209, 216-18 (3d Cir. 2017) (where the arbitration clause made no reference to statutory claims and instead was limited to disputes arising "under this Agreement," its limiting language was neither sufficiently clear nor sufficiently broad to encompass statutory claims); Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 128 (2001) (holding that "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof" did not extend to statutory claims).

Even where the text of the arbitration provision appears broad, courts examine contextual and linguistic cues to determine whether the parties intended the arbitration provision to apply retroactively. See, e.g. Russell v. Citigroup, Inc., 748 F.3d 677, 679-81 (6th Cir. 2014) (relying on the present tense "arise," the statement of intent, and the "common expectations of the parties" to conclude that the arbitration provision governs *only* present and future disputes).

Here, neither the verb tense nor the surrounding provisions indicate retroactive application. On the contrary, the Terms of Service articulate rights and responsibilities that can arise only *after*

11

a party registers an IntelX account. Defendant cannot bootstrap an already accrued Daniel's Law claim to an arbitration provision governing a relationship that did not yet exist and that Plaintiffs could not reasonably have understood would or could apply.

Moreover, as alleged in the Complaint, Covered Persons do not create an account on Defendant's website or agree to any of the terms of Defendant's arbitration provision. To the extent there is interaction with Defendant's website, it occurs only after the statutory violation has occurred and, again, exists solely to assess compliance. Assessing compliance with a statutory right does not subject the pre-existing statutory right to mandatory arbitration. Stated different, Plaintiffs' claims are wholly statute-based—they do not "arise from" or in "connection" with some right or obligation in the Terms of Service.

Accordingly, on the plain face of the arbitration provision, Plaintiffs' claims fall outside its scope—both because they do not *arise* from the Terms of Service and because they *predate* them. Defendant has identified no language suggesting otherwise, nor anything in the agreement that would have put Plaintiffs on notice of such an expansive, retroactive scope.

**B.    Plaintiffs' Claims Do Not Arise From or Require Interpretation of the Terms of Service**

Even if the clause were broad, Plaintiffs' Daniel's Law claims are wholly unconnected to the IntelX Terms of Service. "[I]n determining whether these claims at issue relate to the performance and interpretation of the Agreement, we focus on the factual underpinnings of the claim rather than the legal theories asserted in the Complaint." CardioNet, 751 F.3d at 175.

Griffin v. Burlington Volkswagen, Inc. illustrates the boundary and why Plaintiffs' claim falls outside it. 411 N.J. Super. 515 (App. Div. 2010). In Griffin, the New Jersey Appellate Division held that claims regarding an alleged false arrest arose out of a broad arbitration clause in the retail order form the plaintiff signed with the car dealership when he purchased the car. Id.

at 517-21. After failing to repossess the plaintiff's car when financing fell through, Burlington

Volkswagen reported the car to the police as stolen. Id. at 517. The plaintiff was arrested and then

filed suit against the dealership. Id. The arbitration clause provided:

> The parties to this agreement agree to arbitrate any claim, dispute or controversy, including all statutory claims and any state or federal acclaims, that may arise out of or relating to the purchase or lease identified in this [] Order and the financing thereof…There are no limitations on the type of claims that must be arbitrated, except for [the statutory claims expressly listed] which are excluded from arbitration under this agreement.

Id. at 518.

Although the arbitration clause was broad, the court's reasoning turned on the fact that the

claims required interpretation of the parties' contractual rights—namely, whether the dealership

was entitled to repossess the vehicle under the retail order form. The court highlighted this point

through a hypothetical: an assault on Griffin would not be subject to arbitration because it would

not require reference to the retail order form, even if committed by a dealership employee

attempting to repossess the vehicle. Id. at 520. By contrast, the actual claims were arbitrable

because they depended on determining the parties' contractual rights to the vehicle. In both

instances, the contract is relevant in a factual sense. In the assault hypothetical, the contract may

explain the employee's motivation for attempting to regain possession of the vehicle, but liability

does not turn on any interpretation of the contract. Assault is assault, regardless of what the contract

says. By contrast, the defendant's liability for false arrest in Griffin turned, at least in part, on

whether the defendant had a contractual right to the vehicle—an issue that required interpretation

of the retail order form. Id. at 120-21.

Griffin is only one of many illustrations of this principle in federal and state courts in New

Jersey. See, e.g., CardioNet, 751 F.3d at 175 (statutory and common law claims not subject to

arbitration where "it is not even clear to us that the Agreement is a factual predicate to these

13

claims"); RCM Techs., Inc. v. Brignik Tech., Inc., 137 F.Supp.2d 550, 555 (D.N.J. 2001) (fraudulent inducement claims were subject to arbitration where "the claims in this case almost undoubtedly will require interpretation of the parties' agreement."); EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc., 410 N.J.Super. 453, 475 (App. Div. 2009), abrogated on other grounds by Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174 (2013) (statutory and common law claims were subject to arbitration because plaintiff could not "maintain its claim for damages without reference to, and reliance upon, the underlying [insurance] contract").

Here, Plaintiffs' claims fall clearly on one side of that line: the claims do not depend on IntelX's Terms of Service, do not require its interpretation, and do not arise from any contractual right or obligation contained therein. Plaintiffs' claims are based on *independent statutory obligations* governing Defendant's conduct as a data broker collecting and commoditizing the data of New Jersey residents. And these duties exist regardless of any Terms of Service agreement between the parties.

The sequence of events, again, is important: a Covered Person sends a nondisclosure request to Defendant. Then, Defendant, having received that nondisclosure request continues to disclose the Covered Person's Protected Information after the ten (10) day statutory period. Then a lawsuit is filed. Any ascension to the Terms of Service would have occurred after receipt of that nondisclosure request and after the disclosure of Protected Information in violation of Daniel's Law. Thus, the alleged injury both predates and exists independently of any purported agreement between Plaintiffs and Defendant, and any subsequent interaction with the IntelX platform—if it occurs at all—serves only as a mechanism for observing and documenting evidence of conduct that has already occurred. It is neither a *source* of the duty nor the injury; and liability does not turn on *anything* contained in the Terms of Service.

The disconnect is underscored by Defendant's inability to identify who purportedly agreed to its Terms of Service, when any such agreement was formed, or what activity—if any—was undertaken pursuant to it. If this dispute truly "arose out of," was "in connection with" the Terms of Service or required interpretation of its terms, those facts would be both knowable and central: Defendant would be able to identify the relevant assent, tie it to particular conduct, and point to contractual provisions that—in *some* way—bear on the alleged wrongdoing. It can do none of those things because Plaintiffs' claims are wholly independent of the Terms of Service.

## III. NO DELEGATION; FEDERAL LAW GOVERNS THE SCOPE ANALYSIS

Defendant's reliance on Czech law to establish the validity of the arbitration provision and to assign the question of arbitrability to a Czech arbitrator is misplaced.

With respect to the delegation, "if the arbitration agreement does not provide that the question of arbitrability *vel non* is to be decided by the arbitrators, then a court determines the issue." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 154 (3d Cir. 2001) (quoting First Options, 514 U.S. at 944-47). Where the agreement "did not clearly and unmistakably provide for arbitral determination of jurisdiction"—and here it did not—it is for the court to decide. Id. at 152.

Furthermore, Defendants reliance on Czech law is irrelevant for the purposes of this Motion. *First*, Plaintiffs challenge whether this dispute falls within the scope of the IntelX arbitration provision, not, at this point, the validity of the provision or the formation of the Terms of Service agreement. Accordingly, Defendant's arguments regarding validity and formation are not germane to the arguments here.

*Second*, while the Federal Arbitration Act permits courts to consider "generally applicable contract defenses, such as fraud, duress, or unconscionability," Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996), that is not what Defendant proposes. Defendant seeks to import Czech

15

arbitration law to displace federal arbitration law. That is not permitted. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 154 (3d Cir. 2001) ("[W]hether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law.") (internal citation omitted). *Third*, to the extent that "ordinary state law principles" inform the Court's analysis, Gay v. CreditInform, 511 F.3d 369, 388 (3d Cir. 2007), those principles should be derived from New Jersey law—not Czech law—pursuant to New Jersey's conflicts of law doctrine. See, e.g. Gen. Elec., 270 F.3d at 153 (noting that the district court applied the forum's conflicts of law doctrine because "[a]lthough the arbitration clause called for the application of Swiss law, that provision applied to the arbitration proceeding, not to the initial determination of whether there had been an agreement on who would decide arbitrability"). Under the New Jersey's conflicts of law doctrine, New Jersey law applies as it unquestionably has "the most significant relationship" to the dispute. McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 590 (2017). This dispute involves injury to New Jersey residents involving New Jersey-specific data under a New Jersey statute. And, in any event, New Jersey does not enforce choice-of-law provisions if application of the chosen law would violate a fundamental policy of a jurisdiction with a "materially greater interest" and whose law would otherwise govern. Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341-42 (1992). Finally, stepping back, it makes little sense for Defendant to rely on Czech law to assert arbitrability over a claim that Czech law does not even recognize.

16

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Compel Arbitration.

Dated:   March 27, 2026

Respectfully Submitted,

**FRIEDMAN KAPLAN SEILER
  ADELMAN & ROBBINS LLP**

*Attorneys for Plaintiffs*

_____/s/ Rahul Agarwal_____
RAHUL AGARWAL
