UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------x

ATLAS DATA PRIVACY CORPORATION, et al.,     :

            :

          Plaintiffs,       :

            :

          v.           :      Civ. Action No. 1:25-cv-17065 (HB)

            :

KLEISSNER INVESTMENTS S.R.O., et al.,     :

            :

          Defendants.     :

            :

            :

            :

            :

            :

-------------------------------------------------------------------x

## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION BY KLEISSNER INVESTMENTS S.R.O. TO DISMISS THE COMPLAINT

**PEM LAW LLP**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
Jessica A. Merejo (288592020)
1 Boland Drive, Suite 101
West Orange, New Jersey 07502
Telephone: (973) 577-550
Facsimile: (973) 860-4433
Emails: rparikh@pemlawfirm.com
       keinhorn@pemlawfirm.com
       jmerejo@pemlawfirm.com

**FRIEDMAN KAPLAN SEILER
  ADELMAN & ROBBINS LLP**
Rahul Agarwal, Esq. (365832024)
Diana A. Arsanjani Reisman (*pro hac vice*
pending)
1 Gateway Center, 25th Floor
Newark, New Jersey 07012
Telephone: (973) 877-6400
Email(s):  ragarwal@fklaw.com
         dreisman@fklaw.com

*Attorneys for Plaintiffs*

***Of Counsel and on the Brief:***
Rahul Agarwal, Esq. (365832024)
Diana A. Arsanjani Reisman (*pro hac vice* pending)


Dated: March 27, 2026

# TABLE OF CONTENTS

Page

Table of Authorities .......................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................2

ARGUMENT......................................................................................................................3

I. THIS COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER
   DEFENDANT BASED ON ITS PURPOSEFUL CONTACTS WITH NEW
   JERSEY ......................................................................................................................3

    A.    Defendant is Subject to Specific Personal Jurisdiction Under the
   Traditional Purposeful Availment Test......................................................................4

        1.    Defendant Purposefully Availed Itself of New Jersey.................................4

        2.    The Minimum Contacts Requirement is Satisfied .......................................6

    B.    Alternatively, the Court Should Permit Jurisdictional Discovery ...........................8

II. APPLICATION OF DANIEL'S LAW DOES NOT VIOLATE THE FOREIGN
    COMMERCE CLAUSE ............................................................................................9

III. DANIEL'S LAW DOES NOT VIOLATE THE FIRST AMENDMENT .............................14

IV. DEFENDANT CANNOT INVOKE IMMUNITY UNDER SECTION 230 OF THE
    COMMUNICATIONS DECENY ACT .............................................................15

    A.    CDA Immunity is Not Established from the Complaint........................................15

    B.    Defendant Cannot Satisfy the Requirements for Section 230 Immunity...............16

V. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED SCIENTER...........................................19

CONCLUSION...................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ameripay, LLC v. Ameripay Payroll, Ltd.,
334 F.Supp.2d 629 (D.N.J. 2004) ......................................................................................3

Anderson v. TikTok, Inc.,
116 F.4th 180 (3d Cir. 2024) ...........................................................................................19

Atlas Data Privacy Corp. v. We Inform, LLC,
CV 24-10600 (D.N.J.) .........................................................................................................8

Atlas Data Privacy Corp. v. We Inform, LLC,
758 F. Supp. 3d 322 (D.N.J. 2024) ...................................................................1, 11, 15, 16

Atlas Data Privacy Corp. v. We Inform, LLC,
CV 24-10600, 2025 WL 1787566 (D.N.J. June 27, 2025) ...........................................9, 10, 20

Atlas Data Privacy Corp. v. We Inform, LLC,
CV 24-4037, 2025 WL 2444153 (D.N.J. Aug. 25, 2025) ...............................................15

Atlas Data Privacy Corp. v. Insidere, LLC,
CV MID-L-991-24, slip op. (N.J. Super. Ct. Law Div., Middlesex Cnty. Dec.
31, 2025) ............................................................................................................................16

Atlas Data Privacy Corporation v. Quantarium Alliance, LLC,
CV 24-11023, 2026 WL 765716 (D.N.J. Mar. 18, 2026) ............................................... *passim*

Backpage.com, LLC v. Hoffman,
No. 13-03952, 2013 WL 4502097 (D.N.J. Aug. 20, 2013) .............................................17

Barclays Bank PLC v. Franchise Tax Bd. of California,
512 U.S. 298 (1994) ..........................................................................................................14

BMW of North America, Inc. v. Gore,
517 U.S. 559 (1996) ..........................................................................................................12

Briskin v. Shopify, Inc.,
135 F.4th 739 (9th Cir. 2025) ...........................................................................................3, 6

Brody v. Hankin,
145 F. App'x 768 (3d Cir. 2005) ......................................................................................15

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) ..........................................................................................................3, 4

Def. Distributed v. Platkin,
    697 F. Supp. 3d 241 (D.N.J. 2023) ................................................................17, 19

Erie Ins. Co. v. Amazon.com, Inc.,
    925 F.3d 135 (4th Cir. 2019) ...............................................................................17

F.T.C. v. Accusearch Inc.,
    570 F.3d 1187 (10th Cir. 2009) .......................................................................17, 19

Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.,
    592 U.S. 351 (2021).............................................................................................3, 4

Green v. America Online,
    318 F.3d 465 (3d Cir. 2003)..................................................................................17

Hasson v. FullStory, Inc.,
    114 F.4th 181 (3d Cir. 2024) ..................................................................................7

Healy v. Beer Institute,
    491 U.S. 324 (1989).........................................................................................11, 12

Henderson v. Source for Pub. Data, L.P.,
    53 F.4th 110 (4th Cir. 2022) ............................................................................17, 18

Hepp v. Facebook,
    14 F.4th 204 (3d Cir. 2021) ...........................................................................4, 7, 16

Hurley v. Cancun Playa Oasis Int'l Hotels,
    CIV. A. 99-574, 1999 WL 718556 (E.D. Pa. Aug. 31, 1999) ..................................5

Huron Portland Cement Co. v. City of Detroit, Mich.,
    362 U.S. 440 (1960)................................................................................................9

Japan Line, Ltd. v. Los Angeles Cnty,
    441 U.S. 434 (1979).....................................................................................10, 13, 14

Kellman v. Spokeo, Inc.,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) ...................................................................19

Krause, v. RocketReach, LLC,
    561 F. Supp. 3d 778 (N.D. Ill. 2021) .....................................................................15

Lukis v. Whitepages Inc.,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) .....................................................................19

M.H. & J.H. v. Omegle.com, LLC,
    No. 20-cv-11294, 2021 WL 1050234 (D.N.J. Mar. 19, 2021) ..................................5

Marchionda v. Embassy Suites, Inc.,
    122 F. Supp. 3d 208 (D.N.J. 2015) ..............................................................................8

Mellon Bank (East) PSFS v. Farino,
    960 F.2d 1217 (3d Cir. 1992)........................................................................................3

Metcalfe v. Renaissance Marine, Inc.,
    566 F.3d 324 (3d Cir. 2009)..........................................................................................8

Moretti v. Hertz Corp.,
    CV 14-469-LPS, 2017 WL 1032783 (D. Del. Mar. 17, 2017) ..................................15

Nat'l Foreign Trade Council v. Natsios,
    181 F.3d 38 (1st Cir. 1999)..........................................................................................13

Nat'l Pork Producers Council v. Ross,
    598 U.S. 356 (2023)........................................................................................10, 11, 12

Pace v. Baker-White,
    432 F. Supp. 3d 495 (E.D. Pa. 2020) ....................................................................18, 19

Pike v. Bruce Church,
    397 U.S. 137 (1999)......................................................................................................11

Rippon v. Smigel, 449 N.J. Super. 344 (App. Div. 2017) ....................................................8

Toys "R" Us, Inc. v. Step Two, S.A.,
    318 F.3d 446 (3d Cir. 2003)................................................................................. passim

Venuto v. Atlanstis Motor Group, LLC,
    CV 17-3363, 2018 WL 2134035 (D.N.J. May 9, 2018) ..........................................4, 5

Vidal v. Elster,
    602 U.S. 286 (2024)......................................................................................................16

Walden v. Fiore,
    571 U.S. 277 (2014)........................................................................................................4

Wardair Canada, Inc. v. Florida Dep't. of Revenue,
    477 U.S. 1 (1986)....................................................................................................13, 14

**Statutes**

47 U.S.C. § 230(c)(1)....................................................................................................16, 18

N.J.S.A. 57:8-166.1, -166.3 ................................................................................. passim

**Constitutions**

Art. I, § 8, cl. 3 ....................................................................................................................................9

**PRELIMINARY STATEMENT**

Plaintiffs[1] bring this action against Defendant Kleissner Investments S.R.O. ("Kleissner" or "Defendant") for its violations of N.J.S.A. 56:8-166.1 ("Daniel's Law").

Daniel's Law prohibits the disclosing, re-disclosing, or otherwise making available the home addresses and unpublished home telephone numbers ("Protected Information") of "covered persons," *e.g.*, active or retired judges, law enforcement officers, prosecutors, child protective investigators in the Division of Child Protection and Permanency, and any qualifying family members who submit a written notice demanding that such protected information not be disclosed. N.J.S.A. 56:8-166.1. In recognition of the unique dangers faced by such individuals, Daniel's Law was enacted to protect "covered persons" from potential harm. See Atlas Data Privacy Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 337 (D.N.J. 2024).

The Complaint in this action alleges that Kleissner violated Daniel's Law by continuing to disclose, re-disclose, or otherwise make available the Protected Information of the Individual Plaintiffs and Covered Persons (as defined in the Complaint) after receiving their written nondisclosure requests.[2] Defendant's continued disclosure of such information after the statutory period of ten (10) business days violates Daniel's Law.

Rather than address its conduct, Kleissner advances a grab bag of threshold defenses—lack of personal jurisdiction, immunity under the Communications Decency Act, and a Foreign Commerce Clause defense—that rest on mischaracterizations of the Complaint and factual

---

[1] Plaintiffs comprise Atlas Data Privacy Corporation ("Atlas"), as assignee of individuals who are Covered Persons, along with the Individual Plaintiffs—law enforcement officers Jane Doe-1 and Peter Andreyev.

[2] Covered Persons and Protected Information are further explained in the Complaint. (*See* Compl. ¶¶ 9, 21-26.)

questions that cannot be resolved at the pleading stage.[3] Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss, allowing the parties to proceed to the merits of these claims and to Defendant's non-compliance with Daniel's Law.

## STATEMENT OF FACTS

Defendant Kleissner offers and engages in the disclosure of data and information through one or more websites or applications in New Jersey, including intelx.io, to businesses and individuals who reside in New Jersey. (Compl. ¶ 37.) In accordance with Defendant's business model, users or customers may obtain a name and home address and/or a name and home telephone number (including the name and address and/or home telephone number of the Individual Plaintiffs and Covered Persons). (Id. ¶ 38.)

Atlas's platform provides Covered Persons with the tools and discretion to enforce their privacy rights under Daniel's Law. Upon signing up for Atlas's platform, a Covered Person is asked a series of questions to collect necessary personal information and qualify their eligibility under Daniel's Law. (Compl. ¶ 28.) If eligible, each Covered Person receives their own email account through AtlasMail, an email service operated by Atlas, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for their personal use. (Id. ¶¶ 28-29.) Each Covered Person is then presented with a page on which they can review their home addresses and home telephone numbers, a nondisclosure request template, and a list of potential data brokers to which they can send nondisclosure requests. (Id. ¶ 30.) The Covered Person is responsible for selecting which, if any, data brokers to send nondisclosure requests. (Id.)

---

[3] Plaintiffs note that Defendant does not seek dismissal of this action pursuant to Rule 12(b)(4) in this Motion. See Defendant's Brief in Support its Motion to Dismiss (ECF No. 27-1) ("Mot.") at 6.

Starting on or around January 6, 2024, the Covered Persons and Individual Plaintiffs used the Atlas platform to send written nondisclosure requests to Defendant. (Compl. ¶ 49.) Defendant failed to comply with the nondisclosure requests within the time period required by Daniel's Law and remained noncompliant as of the filing of the Complaint—and potentially to this day. (Id. ¶¶ 51-52.)

**ARGUMENT**

**I. THIS COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT BASED ON ITS PURPOSEFUL CONTACTS WITH NEW JERSEY[4]**

Federal courts analyze specific personal jurisdiction under a three-part test. *First*, Plaintiffs must show that the defendant took "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Second*, "[t]he plaintiff's claims…must arise out of or relate to the defendant's contacts with the forum." Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., 592 U.S. 351, 359 (2021) (quotation marks and citation omitted).  *Third*, if both threshold requirements are met, "the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F.Supp.2d 629, 633 (D.N.J. 2004) (citing Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1226 (3d Cir. 1992)); Briskin v. Shopify, Inc., 135 F.4th 739, 751 (9th Cir. 2025) (en banc) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

Given the Court's recent personal jurisdiction opinion in related matters, Plaintiffs have confined their jurisdictional analysis to the traditional purposeful availment framework articulated in Ford. See Atlas Data Privacy Corp. v. Quantarium Alliance, LLC, CV 24-11023, 2026 WL

---

[4] Plaintiffs do not contend that Defendant is subject to general personal jurisdiction in New Jersey.

765716, at *6 (D.N.J. Mar. 18, 2026) ("Daniel's Law does not require intentional wrongdoing for liability to attach, and thus plaintiffs have not met the first requirement of the Calder test.")

### A. Defendant is Subject to Specific Personal Jurisdiction Under the Traditional Purposeful Availment Test

Under the traditional test for specific jurisdiction, the query is whether the defendant had "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state" that "give rise to—or relate to—the plaintiff's claims." Hepp v. Facebook, 14 F.4th 204, 207 (3d Cir. 2021). Plaintiffs "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." Ford, 592 U.S. at 359 (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)). In addition, Plaintiffs' claims "must arise out of or relate to the defendant's contacts." Id. "The minimum contacts requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Venuto v. Atlantis Motor Group, LLC, CV 17-3363 (RBK/KMW), 2018 WL 2134035, at * 3 (D.N.J. May 9, 2018) (finding specific jurisdiction over defendant where it "solicit[ed] business and attempt[ed] to close a deal" with a New Jersey citizen by "email, telephone, and texts").

### 1. Defendant Purposefully Availed Itself of New Jersey

As the Supreme Court has explained, "even a single act can support jurisdiction," which "may not be avoided merely because the defendant did not *physically* enter the forum state." Burger King, 471 U.S. at 475 n.18 (emphasis in original). Many courts have held that the solicitation of business from residents of a particular state, even if that solicitation occurs over the internet or the telephone, is sufficient to support the exercise of jurisdiction. See, e.g., Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003) (If a website operator "knowingly

4

conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied."); <u>Venuto</u>, 2018 WL 2134035, at *3 (finding specific jurisdiction over defendant where it "solicit[ed] business and attempt[ed] to close a deal" with a New Jersey citizen by "email, telephone, and texts").

Here, Kleissner has purposefully availed itself of the privileges afforded by New Jersey law by appropriating the information of New Jersey residents and disclosing that information through one or more websites in New Jersey, including intelx.io, to individuals and businesses in New Jersey. <u>See</u> <u>Quantarium Alliance</u>, 2026 WL 765716, at *21 (exercising specific jurisdiction where "defendants obtain through third parties information including home addresses and/or unlisted phone numbers of New Jersey residents and offer that information for sale or otherwise to New Jersey residents.").

It is precisely this acquisition and exploitation of *forum-specific* data that sets this case apart from Defendant's line of website cases. Defendant cites <u>M.H. & J.H. v. Omegle.com, LLC</u>, No. 20-cv-11294, 2021 WL 1050234, at *4 (D.N.J. Mar. 19, 2021) for the proposition that specific jurisdiction is not satisfied if a defendant merely operates a "highly interactive website." (Mot. at 10-11.) Indeed, this Court has reasoned that "plaintiffs must establish that defendants offer 'something more' than commercially interactive websites accessible in New Jersey." <u>Quantarium Alliance</u>, 2026 WL 765716, at *21 (quoting <u>Toys "R" Us</u>, 318 F.3d at 452-54). Here, Defendant does not merely operate a website that happened to be accessible to New Jersey residents, as in <u>Omegle</u> or <u>Hurley v. Cancun Playa Oasis Int'l Hotels</u>, CIV. A. 99-574, 1999 WL 718556, at *3 (E.D. Pa. Aug. 31, 1999). Nor does Defendant sell physical goods through an internet platform that happens to be reachable from New Jersey, as in <u>Toys "R" Us</u>. Rather, Defendant "obtain[s]

5

through third parties information including home addresses and/or unlisted phone numbers of New Jersey residents and offer[s] that information for sale or otherwise to New Jersey residents" on its website. Quantarium Alliance, 2026 WL 765716, at *21 (holding that such conduct constitutes "something more" than a commercially interactive website, sufficient to confer personal jurisdiction); see also Shopify, 135 F.4th at 752-60 (holding that a defendant's affirmative collection of a forum state's residents' personal data and its subsequent sale for commercial gain constitutes conduct expressly aimed at the forum even without differential targeting).

Furthermore, unlike the cases Defendant relies on, the claims here are not triggered the moment its website is accessed. Liability arises only after Defendant receives a nondisclosure request, from a Covered Person in New Jersey, and then continues to disclose that information after the ten-day statutory period. Accordingly, what distinguishes this case from the authorities on which Defendant relies is that Defendant obtained information on New Jersey residents, affirmatively disclosed New Jersey-specific data to New Jersey residents, and *continued* that forum-directed conduct even after receiving nondisclosure notices. Defendant, therefore, "should 'reasonably anticipate being haled into court [in the forum state].'" World-Wide Volkswagen Corp., 444 U.S. at 297.

### 2. The Minimum Contacts Requirement is Satisfied

Plaintiffs' claims arise directly from—and are inseparable from—Defendant's New Jersey contacts. The alleged injury stems from covered person information collected in New Jersey, made available on Defendant's website, and sold to New Jersey residents. The website and product at issue are therefore not incidental conduits for unrelated transactions, but the very means by which Defendant's New Jersey-directed harm occurred. See Quantarium Alliance, 2026 WL 765716, at

*8 ("The websites themselves, as noted, contain and directly make available the defendants' product – the personal information about New Jersey residents to New Jersey residents and to others.")

The cases Defendant cites only underscore the point, as they involve defendants whose forum contacts bore no connection to the conduct underlying the plaintiffs' claims. In Hepp, the Third Circuit found no specific jurisdiction because the defendants' alleged contacts with the forum state—advertising and other commercial activity—were unrelated to the plaintiff's claim that her likeness had been misappropriated online. 14 F.4th at 207-08. Here, by contrast, Plaintiffs' claims arise directly from—and are inseparable from—Defendant's New Jersey contacts. The alleged injury stems from covered person information collected in New Jersey, made available on Defendant's website, and sold to New Jersey residents. And in Hasson, the Court found no jurisdiction where the defendant Papa Johns' "in-state restaurant sales and marketing activities, as alleged in the complaint, [were] insufficiently related to [the plaintiff] Schnur's wiretapping claims." Hasson v. FullStory, Inc., 114 F.4th 181, 195 (3d Cir. 2024). But, as this Court has stated, "[t]he website in Schnur's case was incidental to and separate from Papa Johns' product, that is, pizzas which they sell in Pennsylvania. In contrast, the information collected and made available in New Jersey and elsewhere on [a defendant data broker's] website[] constitutes the very product of [that defendant]." Quantarium Alliance, 2026 WL 765716, at *20-21.

Finally, the claims here are not triggered by the moment a website is accessed. Liability arises only after Defendant receives a New Jersey nondisclosure request and then knowingly fails to take any action within the ten-day statutory period. That post-notice, forum-directed conduct is what gives rise to Plaintiffs' claims and distinguishes this case from the authorities Defendant relies upon.

7

**B. Alternatively, the Court Should Permit Jurisdictional Discovery**

If the Court finds that jurisdiction is in question, Plaintiffs respectfully request leave to conduct jurisdictional discovery, consistent with that permitted in analogous cases. See, e.g. Atlas Data Privacy Corp. v. Quantarium Alliance, LLC, CV 24-11023 (D.N.J); Atlas Data Privacy Corp. v. We Inform, LLC, CV 24-10600 (D.N.J.).

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is *clearly frivolous*." Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (emphasis added) (quoting Toys "R" Us, 318 F.3d at 456). When "a plaintiff presents factual allegations suggesting with reasonable particularity the *possible* existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." Id. (alterations omitted and emphasis added) (quoting Toys "R" Us, 318 F.3d at 456). Courts routinely permit jurisdictional discovery. See Marchionda v. Embassy Suites, Inc., 122 F. Supp. 3d 208, 211 (D.N.J. 2015) (ordering seven weeks of limited jurisdictional discovery even though court had "serious doubts" about personal jurisdiction in this case). Moreover, "jurisdictional discovery is particularly appropriate where the defendant is a corporation." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 336 (3d Cir. 2009). Because an individual plaintiff "is a total stranger to a corporation . . . full" jurisdictional discovery should generally be given, including the ability "to take depositions." Id. at 336 (citation omitted).

Defendant admits that it conducts business with customers in New Jersey. See Kleissner Decl. (ECF No. 27-4), ¶ 29. At bottom this admission establishes the "possible existence of the requisite 'contacts'" to permit Plaintiffs to conduct jurisdictional discovery. Toys "R" Us, 318 F.3d at 456.

**II. APPLICATION OF DANIEL'S LAW DOES NOT VIOLATE THE FOREIGN COMMERCE CLAUSE**

Even though Defendant operates a website that is accessible from New Jersey, and even though Defendant, as alleged in the Complaint, maintains and discloses the data of New Jersey residents, Defendant argues that, as a Czech Corporation, the Foreign Commerce Clause allows it to escape liability. This Court should reject Defendant's invitation to restrict the application of Daniel's Law to only domestic companies, while carving out international ones. Assuming the Court finds personal jurisdiction over a particular entity, Covered Persons can and should be able to assert their rights against domestic and foreign brokers of their home address and unpublished home telephone number. Defendant's Foreign Commerce Clause challenge should be denied.

The Constitution provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3. But "the Constitution when conferring upon Congress the regulation of commerce, never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." Huron Portland Cement Co. v. City of Detroit, Mich., 362 U.S. 440, 443-44 (1960) (cleaned up.) "Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution." Id.

This Court already has rejected an extraterritorial challenge, based on statutory construction, to Daniel's Law. Atlas Data Privacy Corp. v. We Inform, LLC, CV 24-10600, 2025 WL 1787566, at *8 (D.N.J. June 27, 2025) (holding that the "Legislature's aim is to protect certain categories of New Jersey residents from the dangers caused by the disclosure of personal information, whether the disclosure emanates from within or from without New Jersey's borders"). "The Legislature was undoubtedly cognizant of the reality that entities holding the information in

9

question may disclose the information in New Jersey electronically or by other means from a location originating outside of New Jersey." Id.

Defendant argues that Daniel's Law violates the Foreign Commerce Clause because (1) it has impermissible extraterritorial effect beyond the borders of the United States, and (2) it "prevents the Federal Government from speaking with one voice when regulating commercial relations with foreign governments," Japan Line, Ltd. v. Los Angeles Cnty, 441 U.S. 434, 451 (1979). Neither argument withstands scrutiny.

*First,* Defendant stretches the extraterritoriality argument well beyond the circumstances in which courts have applied it. "The antidiscrimination principle lies at the 'very core' of [the Court's] dormant Commerce Clause jurisprudence." Nat'l Pork Producers Council v. Ross, 598 U.S. 356, 369 (2023).[5] The Commerce Clause "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Id. (cleaned up). And the Court has rejected the idea of an "'almost *per se*' rule" forbidding the enforcement of state laws that have the practical effect of controlling commerce outside the State, id. at 375, observing that only "a small number of our cases have invalidated state laws that appear to have been *genuinely nondiscriminatory*," id. at 379 (cleaned up) (emphasis added). Daniel's Law is nondiscriminatory. Defendant has not alleged a discriminatory purpose or effect—nor could it. The obligations on in-state and out-of-state data brokers are exactly the same.

At most a nondiscriminatory statute that incidentally affects interstate or foreign commerce is evaluated under the balancing framework set forth in Pike v. Bruce Church, 397 U.S. 137, 142

---

[5] Tellingly, Defendant does not cite or reference the Supreme Court's recent decision in National Pork Producers.

(1999). <u>But see</u> <u>Nat'l Pork Producers</u>, 598 U.S. at 378-80 (noting that in the Court's <u>Pike</u> line of cases, "the presence or absence of discrimination in practice proved decisive"). Under the <u>Pike</u> test, a statute will be invalidated only if the burden imposed on commerce is "clearly excessive" in relation to the statute's local benefits. <u>Pike</u>, 397 U.S. at 142. Daniel's Law easily satisfies that standard. Defendant does not contest New Jersey's substantial interest in protecting its judges, prosecutors, law enforcement officers, and their families from harm.[6] Any effect on foreign commerce is incidental at most. Defendant identifies none.

Furthermore, Daniel's Law is fundamentally different in kind from the regulatory regimes addressed in Defendant's cases. In <u>Healy</u>, the Court addressed a Connecticut statute that targeted "out-of-state shippers of beer." <u>Healy v. Beer Institute</u>, 491 U.S. 324, 326 (1989). The statute required out-of-state shippers to affirm that their posted price for products sold to Connecticut wholesalers was no higher than the price at which those were products were sold in bordering states. <u>Id</u>. The Court held that this statute constituted "economic protectionism" and that it had the "undeniable effect of controlling commercial activity occurring wholly outside the boundary of the State." <u>Id</u>. at 337, 340. <u>Gore</u>, similarly, concerned statutory punitive damages designed to punish conduct occurring in *other* jurisdictions *towards nonparties.* See <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 573 (1996). In short, those challenged statutes impermissibly projected state law beyond the states' borders by effectively controlling *entirely* out-of-state conduct. <u>See</u>

---

[6]  The New Jersey Legislature declared in Daniel's Law itself that its purpose was to enhance the safety and security of judges, prosecutors, and other law enforcement officers so that they are able to carry out their official duties without fear of personal reprisal….None of the parties appears to contest that Daniel's Law, in aiming to protect covered persons from fear, threats, injury and death, serves a need to further a state interest of the highest order.

<u>Atlas Data Privacy Corp. v. We Inform, LLC</u>, 758 F. Supp. 3d 322, 337 (D.N.J. 2024).

Nat'l Pork Producers, 598 U.S. at 374 (rejecting petitioners' reliance on Healy and noting that the statute in Healy had a "specific impermissible extraterritorial effect").

Daniel's Law does nothing of the sort. It does not regulate how Defendant generally conducts business with consumers in other jurisdictions; it merely provides a remedy for injury occurring to certain individuals *in New Jersey*. Moreover, it applies equally to companies in and out of New Jersey.  Instead, Daniel's Law is akin to the state law upheld in National Pork Producers because a state statute requiring companies to follow its privacy standards as a condition of collecting or selling certain residents' data operates as a market-access regulation, not a direct extraterritorial command. There, the Court upheld California's law conditioning the in-state sale of pork on compliance with animal-welfare standards, rejecting the argument that a state impermissibly regulates extraterritorially simply because its law has substantial upstream effect on out-of-state producers. Nat'l Pork Producers, 598 U.S. at 383-87. In both settings, the law regulates transactions that impact in-state consumers (there, the sale of pork; here, the sale and disclosure of the personal information of residents) and merely induces upstream changes in how businesses operate elsewhere. There, the upstream effects extended to the way livestock was raised. The upstream effect here is that a data broker must *respond* to a nondisclosure request—hardly the type of 'extraterritorial regulation' that runs afoul of the Commerce Clause.

*Second,* Daniel's Law in no way impairs the Federal Government's ability to "speak with one voice." Japan Line, Ltd., 441 U.S. at 449. [7] Defendant cites to cases in which the Court confronted statutes with direct implications for international trade or foreign policy—concerns far removed from this case. In Japan Line, the Court invalidated a California state tax that created

---

[7] Japan Line also, alternatively, emphasizes the potential to create multiplate taxation regimes. Daniel's Law does not implicate this "consideration"—and Defendant does not argue that it does.

12

multiple international taxation regimes and threatened the United States' commercial relations with Japan. 441 U.S. at 449-54 ("If a novel state tax creates an asymmetry in the international tax structure, foreign nations disadvantaged by the levy may retaliate against American-owned instrumentalities present in their jurisdictions."). Similarly, Natsios involved a Massachusetts law imposing sanctions on companies doing business with Burma (Myanmar). Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38 (1st Cir. 1999), aff'd sub nom. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363 (2000). The statute was invalidated because it intruded into the federal government's authority over foreign affairs and conflicted with U.S. sanctions policy towards Burma (Myanmar), a conclusion later confirmed by the Supreme Court in Crosby, 530 U.S. at 382-86. The foreign policy concerns animating Japan Line and Natsios are notably absent here.

Here, Defendant argues that application of Daniel's Law would *prevent* the Nation from 'speaking with one voice' in foreign affairs but fails to identify any federal policy or foreign-relations interest that application of the statute would disrupt. Defendant acknowledges that the Federal Government has not spoken on this discrete issue of data privacy, suggesting only that it "may speak—or not…in future." (Mot. at 19.) But silence alone does not establish a conflict with federal policy or implicate "one voice" concerns. See, e.g. Wardair Canada, Inc. v. Florida Dep't. of Revenue, 477 U.S. 1, 6-13 (1986) (rejecting a "speak with one voice" challenge where states taxed aviation fuel used by foreign airlines even though the Federal Government *expressly refrained* from imposing national taxes on that fuel). Without more, it indicates acquiescence. Id.; see also Barclays Bank PLC v. Franchise Tax Bd. of California, 512 U.S. 298, 324 (1994) ("[W]e discern no 'specific indications of congressional intent' to bar the state action here challenged."). Nor does Defendant even suggest that any future federal policy would conflict with the New Jersey statute. On the contrary, Defendant concedes that "at least ten states have passed statutes similar

13

to Daniel's law" in recent years and that Congress passed a comparable judicial privacy act (the "Daniel Anderl Judicial Security and Privacy Act"). (Mot. 18-19.) These circumstances undermine, rather than support, Defendant's claim that application of Daniel's Law would interfere with the Nation's ability to 'speak with one voice' in foreign affairs—because, as in Wardair, the Federal Government's silence despite opportunities to register disapproval of these state statutes confirms the absence of any conflicting policy. Furthermore, Defendant's theory would render the Japan Line and Crosby inquiries meaningless, as application of any state statute would be invalidated based on speculation about some hypothetical future federal policy.

Daniel's Law is narrowly-focused on the privacy and safety of public officials and their families—it requires notice and a 10-day compliance period, and it requires only the nondisclosure of two pieces of data for certain New Jersey residents. It does not set pricing or tax policy or regulate foreign countries. It does not implicate diplomatic efforts or trade policy. And, it applies equally to domestic and international companies who are obtaining and disclosing the data of these New Jersey residents. Accordingly, the Court should reject Defendant's Foreign Commerce Clause challenge.

### III. DANIEL'S LAW DOES NOT VIOLATE THE FIRST AMENDMENT

Defendant incorporates by reference First Amendment challenges raised by defendants in other litigation involving Daniel's Law. (Mot. at 20 (citing Atlas Data Privacy Corp. v. We Inform, LLC, No. 25-1555 (3d Cir.) and others). Plaintiffs likewise incorporate by reference their briefing in those cases.

14

## IV. DEFENDANT CANNOT INVOKE IMMUNITY UNDER SECTION 230 OF THE COMMUNICATIONS DECENY ACT

### A. CDA Immunity is Not Established from the Complaint

Dismissal on the basis of an affirmative defense like Section 230 is only appropriate "if the predicate establishing the defense is apparent *from the face of the complaint*." Brody v. Hankin, 145 F. App'x 768, 771 (3d Cir. 2005). Defendant has the burden of satisfying the elements of Section 230 based on the allegations in the Complaint—which it has failed to do. Nothing in the Complaint establishes that Defendant is "treated as the publisher or speaker of any information provided by another information content provider," and, importantly, Plaintiffs "need not affirmatively negate any of the elements of Section 230." Moretti v. Hertz Corp., CV 14-469-LPS, 2017 WL 1032783, at *2-3 (D. Del. Mar. 17, 2017); see, e.g., Krause, v. RocketReach, LLC, 561 F. Supp. 3d 778, 785-86 (N.D. Ill. 2021) (rejecting CDA immunity argument where the complaint allegations did not establish Section 230 elements).

Here, Defendant asks the Court to discern complex factual questions—like how Defendant obtains its information and what editorial functions it performs—before the factual record is developed. Indeed, this Court rejected the same Section 230 argument advanced by Defendant as premature in a parallel Daniel's Law litigation. Atlas Data Privacy Corp. v. We Inform, LLC, No. CV 24-4037, 2025 WL 2444153, at *4 (D.N.J. Aug. 25, 2025) ("To determine whether defendants develop the information in issue and whether they have immunity under the CDA must await discovery…Even if defendants do not create the home addresses and unlisted telephone numbers of covered persons, the court has insufficient evidence in the record to determine whether they develop it."); see also Atlas Data Privacy Corp. v. Insidere, LLC, CV MID-L-991-24, slip op. at 20 (N.J. Super. Ct. Law Div., Middlesex Cnty. Dec. 31, 2025) ("[f]ollowing the logic set forth by the Hon. Judge Bartle III" to conclude that CDA immunity is not established at this stage).

15

Furthermore, Defendant's attempt to distinguish itself from the defendants in <u>We Inform</u> does not alter the analysis. The Court has yet to determine whether those defendants are entitled to CDA immunity *because the record is not yet developed*, so the comparison does not advance Defendant's argument. "The court is limited to the four corners of the complaint and of course any undisputed fact outside the complaint." <u>Id</u>. And CDA immunity is not established from the face of the Complaint.

### B. Defendant Cannot Satisfy the Requirements for Section 230 Immunity

Even if the CDA applies to Daniel's Law claims (it does not),[8] Defendant's motion should be denied because it has not satisfied and cannot satisfy the second and third prongs of Section 230 immunity.

Under the second prong, a plaintiff's claim must require that the defendant be "treated as the publisher or speaker of information." 47 U.S.C. § 230(c)(1). "What matters is not the name of the cause of action, but whether it inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." <u>Def. Distributed v. Platkin</u>, 697 F. Supp. 3d 241 (D.N.J. 2023), <u>aff'd sub nom</u>. <u>Def. Distributed v. Attorney Gen. of New Jersey</u>, 167 F.4th 65 (3d Cir. 2026) (quoting <u>Backpage.com, LLC v. Hoffman</u>, No. 13-03952, 2013 WL 4502097, at *6 (D.N.J. Aug. 20, 2013) (cleaned up)). A plaintiff's claim only treats the defendant as the publisher or speaker of any information if it (1) "makes the defendant liable for publishing certain

---

[8] Section 230 immunity does not apply to laws pertaining to intellectual property, as courts have broadly defined that term. <u>See</u> <u>Hepp</u>, 14 F.4th at 205 (finding state laws "pertaining to" the subject of intellectual property are exempt from Section 230 immunity). Daniel's Law is a state privacy law that also protects a covered person's intellectual property rights one holds in their name and protected information. <u>See</u> <u>Vidal v. Elster</u>, 602 U.S. 286, 301-07 (2024) (tracing the history of and linking common law privacy rights to intellectual property). Defendant cannot, therefore, invoke Section 230 immunity.

information to third parties, and (2) seeks to impose liability based on the information's improper content." Henderson v. Source for Pub. Data, L.P., 53 F.4th 110, 120–21 (4th Cir. 2022). Liability under Daniel's Law meets neither of these requirements.

According to Defendant, any information it places on its website or stores in its databases is "published," and Section 230 immunity therefore follows automatically. (Mot. at 23.) But that argument mischaracterizes the second prong of Section 230. In a typical Section 230 case, liability is premised on a platform's editorial decision to publish content created by a user—for example, a claim that a website should be liable because a user posted defamatory statements. See, e.g., Green v. America Online, 318 F.3d 465 (3d Cir. 2003) (granting Section 230 immunity where claim against AOL was based on defamatory and harmful content posted in chatroom). Section 230 bars those claims because they seek to hold the website liable for the *substance* of the statements made by the user when it is the *user's* statements that are defamatory.

That is not the theory here. Here, Defendant's liability arises from its own conduct—its failure to comply with a statutory removal requirement—not from the *substance* of the information appearing on its website. See, e.g., Erie Ins. Co. v. Amazon.com, Inc., 925 F.3d 135, 139 (4th Cir. 2019) (rejecting Section 230 immunity because the plaintiff's product-liability claim was premised on Amazon's *conduct* of selling a defective product, not Amazon's publication of the product on its website); F.T.C. v. Accusearch Inc., 570 F.3d 1187, 1204-05 (10th Cir. 2009) (Tymkovitch, J., concurring) (rejecting Section 230 immunity where "the FTC sought and ultimately held

17

[defendant] liable for its *conduct* rather than for the content of the information it was offering on [its] website").[9]

Furthermore, liability under Daniel's Law is not based on any "improper content" of published speech. Henderson, 53 F.4th 110 at 122 ("[F]or § 230(c)(1) protection to apply, we require that liability attach to the defendant on account of some improper content within their publication."). Here, there is no question that the published content—home addresses and unpublished home telephone numbers—is true and accurate. Defendant argues nothing to the contrary. That is the very point of Daniel's Law—publishing this accurate information puts covered persons at risk. Because there is nothing inherently wrong about the content itself, the "improper-content requirement" articulated in Henderson for Section 230 immunity to apply is not met. Indeed, Daniel's Law is 'agnostic' about the substantive content or message expressed by the speaker, and there is no allegation that this information was untruthful or that Defendant obtained it illegally. Defendant's liability is, therefore, not based on the unlawfulness of the speech itself; liability is based on Defendant's *own* noncompliance with the nondisclosure requests. Daniel's Law does not seek to hold Defendant liable for its conduct as a "publisher or speaker," and Section 230 immunity does not apply.

The third prong asks whether Defendant's material was provided by "another information content provider." 47 U.S.C. § 230(c)(1). Courts in the Third Circuit focus this analysis on whether the defendant materially contributed to the published pieces of information relevant to liability. See, e.g., Pace v. Baker-White, 432 F. Supp. 3d 495, 508 (E.D. Pa. 2020), aff'd, 850 F. App'x 827

---

[9] Defendant suggests that Plaintiffs have advanced similar arguments in other cases. (Mot. at 23.) That is correct—and the point remains the same here: claims brought under Daniel's Law are not subject to CDA immunity.

18

(3d Cir. 2021). Section 230 immunity only extends to a publisher's "traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content" originating from an entity other than itself. Def. Distributed, 697 F. Supp. 3d 241 at 274. But if a Defendant plays a role in generating the content—*e.g.*, by "solicit[ing] requests" for information and then transforming it into "a publicly available commodity"—there is no immunity because Defendant's conduct extends beyond traditional editorial functions. Accusearch Inc., 570 F.3d at 1198–1201.

Defendant is not exercising mere editorial functions here. As alleged, Defendant takes an active role in soliciting and obtaining specifically sought Covered Persons' information, including unpublished content, and curating it for publication to its customers. Compl. ¶¶ 35–39; see, e.g., Anderson v. TikTok, Inc., 116 F.4th 180, 184 (3d Cir. 2024) (holding Section 230 does not apply when defendants "curate compilations" of others' content via their expressive algorithms); Lukis v. Whitepages Inc., 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020) (declining to dismiss IRPA claim against defendant "alleged to have actively compiled and collated, from several sources, information regarding" the plaintiff); Kellman v. Spokeo, Inc., 599 F. Supp. 3d 877, 898 (N.D. Cal. 2022) (finding no immunity where defendant actively took content from other sources, curated it, and uploaded it to its site); Pace, 432 F. Supp. 3d at 508 (finding no immunity where defendant's website was not a "typical Internet bulletin board[,]" and finding it was "much more than a passive transmitter"). Thus, the Complaint plausibly alleges that the "essential published content" at issue in this case was not merely acquired from another content information provider, and Defendant cannot meet Section 230's immunity requirements.

## V. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED SCIENTER

The Complaint alleges that Defendant received notice requesting removal of Protected Information and nevertheless continued to disclose that information after the statutory 10-day time

19

period. That alone is sufficient to plead both negligence and the requisite scienter for recklessness or willfulness. Indeed, the Court has held that these allegations are sufficient to plead recklessness in other cases. Atlas Data Privacy Corp. v. We Inform, LLC, CV 24-10600, 2025 WL 1787566, at *7 (D.N.J. June 27, 2025) ("[P]laintiffs allege that defendants received takedown requests and continue for extended periods thereafter not to comply with Daniel's Law. For present purposes, this lapse in time is sufficient to allege recklessness.").

Defendant's suggestion that it could not have acted negligently, recklessly, or willfully because it is a Czech company located in the Czech Republic or purportedly lacked certainty about the applicability of New Jersey law conflates jurisdictional questions with the scienter inquiry. As an initial matter, ignorance of the law is no defense. Nor does Defendant cite a *single* case supporting the proposition that it is entitled to a different standard of negligence, reckless disregard, or willfulness. Accepting Defendant's theory would mean that any foreign entity could avoid liability simply by claiming uncertainty about whether a statute applied to its conduct—*even after receiving notice asserting that it did*. That is not the pleading standard. The relevant question is whether Defendant, after receiving notice, recklessly disregarded the known risk that its conduct violated Daniel's Law or acted with deliberate indifference to that risk, and the Complaint plausibly alleges that it did. A defendant that continues to disregard a state's laws long after receiving notice cannot now evade jurisdiction or liability by claiming ignorance or relying on defenses that do not apply.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety. In the alternative, Plaintiffs request that the Court permit jurisdictional discovery before ruling on Defendant's Motion.


Dated:    March 27, 2026

Respectfully Submitted,

**FRIEDMAN KAPLAN SEILER**
 **ADELMAN & ROBBINS LLP**

*Attorneys for Plaintiffs*

_____/s/ Rahul Agarwal___
RAHUL AGARWAL