**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, and PETER ANDREYEV, <br><br> Plaintiffs, <br><br> -against- <br><br> KLEISSNER INVESTMENTS S.R.O., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br> Defendants. | 25 Civ. 17065 (HB) <br><br> ECF CASE |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
Victor Suthammanont
Kostelanetz LLP
7 World Trade Center, 34th Floor
New York, NY 10007

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................ i

Table of Authorities..................................................................................................... ii

Argument ..................................................................................................................... 1

    I.      Plaintiffs' Opposition Is Fatally Defective................................................... 2

        A.   Plaintiffs Ignore Controlling Federal Law Allowing the
            Arbitration of Statutory Claims ....................................................... 2

        B.   Plaintiffs' Opposition Rests Upon Unsubstantiated Fact and
            Should Not Be Credited ..................................................................... 2

        C.   Plaintiffs Did Not Accrue Valid Statutory Claims ........................... 4

    II.     The Arbitration Agreement is Enforceable ...................................... 5

        A.   Plaintiffs' Purported Defenses Are Foreclosed by the Federal Arbitration Act ............... 5

        B.   Plaintiffs Fail to Establish Any Defense to Contract ......................... 6

        C.   Plaintiffs Offer No Evidence Concerning How Plaintiffs' Claims
            Would Be Treated by a Czech Arbitrator ......................................... 8

    III.    Plaintiffs' Claims are within the Scope of the Arbitration Provision............................. 9

        A.   Czech Law Governs Interpretation of the Scope of the Arbitration Provision.............. 11

        B.   Plaintiffs' Reliance on New Jersey Law Lacks Merit.................................... 12

Conclusion ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................................................ 5

*AT&T Technologies, Inc. v. Communications Workers of America*,
 475 U.S. 643 (1986) ................................................................................................ 13, 14

*Atalese v. U.S. Legal Servies Group, L.P.*, 219 N.J. 430 (2014) .................................................... 12

*Bernetich, Hatzell & Pascu, LLC v. Medical Records Online, Inc.*,
 445 N.J. Super. 173 (App. Div. 2016) ........................................................................... 7, 8

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014) ............................... 10, 13, 14

*Concepcion*, 563 U.S. at 341 ...................................................................................................... 6

*Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018) .............................................................. 2, 5, 8

*EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.*,
 410 N.J. Super. 453 (App. Div. 2009) ................................................................................ 13

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*,
 168 N.J. 124 (2001) ........................................................................................................ 12

*Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) ................................................................. 2, 13

*Gilmer v Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ................................................. 2, 13

*Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764 (3d Cir. 2013) ......................... 1, 3, 11

*Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174 (2013) ............................................................. 13

*In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515 (3d Cir. 2019) ..................... 9, 11

*Kindred Nursing Centers Ltd. Partnership v. Clark*, 581 U.S. 246 (2017) ........................... 6, 7, 12

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) .................................. 1

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ......................... 9

*Moon v. Breathless Inc.*, 868 F.3d 209 (3d Cir. 2017) ............................................................... 12

**Statutes**

9 U.S.C. § 2 ............................................................................................................................... 5

N.J.S.A. § 56:8-166.1(a)(1) ....................................................................................................... 4

N.J.S.A. § 56:8-166.1(a)(2) ........................................................................................... 4

**Rules**

Fed. R. Civ. P. 11(b)(3) ................................................................................................. 3

In Plaintiffs' Response Brief in Opposition to the Motion to Compel Arbitration ("Pl. Resp.") (DE 31), Plaintiffs concede, albeit "*arguendo*," that they agreed to Kleissner Investments S.R.O.'s Terms of Service. They further concede it includes an arbitration provision mandating arbitration in the Czech Republic and governed by Czech law. Faced with these dispositive concessions and federal law that requires the dispute be sent to arbitration, Plaintiffs rely on unsubstantiated factual averments to argue that they should not be bound to the Terms of Service and incorporated arbitration agreement. They misconstrue the applicable case law to contend that the arbitration agreement is unenforceable or that this dispute is outside its scope. In the event this Court is unconvinced (as it should be) by their brief, Plaintiffs then request a second bite at the apple to do what they could have done initially in their Response—provide facts supporting their position. This Court should put an end to Plaintiffs' gamesmanship, assuming it has jurisdiction to do so in the first place.[1]

## **ARGUMENT**

Upfront, it is important to note several critical concessions and deficiencies with Plaintiffs' Response. First, Plaintiffs concede "*arguendo* the existence of a Terms of Service agreement." Pl. Resp. 5. They concede that the Terms of Service contain an arbitration provision. Pl. Resp. 4. Accordingly, there is "no genuine issue of fact concerning the formation of the agreement" to arbitrate. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009). It is the burden of the non-movant to "come forward with enough evidence in response to the motion to compel arbitration to place the question [of arbitrability] in issue." *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 774 (3d Cir. 2013). Despite the ability to do so without discovery, discussed in detail *infra*, Plaintiffs provided no such evidence.

---

[1]     *See* Def. Mot. to Dismiss (DE 27).

## I.    PLAINTIFFS' OPPOSITION IS FATALLY DEFECTIVE

### A.    Plaintiffs Ignore Controlling Federal Law Allowing the Arbitration of Statutory Claims

As an initial matter, Plaintiffs repeatedly contend throughout their Response that their purported Daniel's Law statutory claims may not be arbitrated. Before addressing that contention in detail below, it is notable that Plaintiffs never address the multitude of federal cases that explicitly allow the arbitration of statutory claims. As early as 1991, the Supreme Court stated: "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (listing cases). Since then, the Court has repeatedly reiterated that general principle. *E.g.*, *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018) (allowing arbitration of a statutory claim). The Third Circuit has faithfully applied this precedent. *See Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007). Plaintiffs' Response is replete with citation to New Jersey state law that is inapplicable and, in any event, cannot override this controlling federal law principle. Accordingly, the Court should compel arbitration for the reasons set forth below.

### B.    Plaintiffs' Opposition Rests Upon Unsubstantiated Fact and Should Not Be Credited

Plaintiffs argue as a "structural" matter, Pl. Resp. 2, that the arbitration agreement is unenforceable or that it does not address "preexisting" statutory claims. Pl. Resp. 10. But Plaintiffs' arguments rest upon a premise offered with zero evidentiary support—that Plaintiffs did not agree to arbitrate until *after* their Daniel's Law claims purportedly accrued. Plaintiffs contend that the "sequence of events" is: (1) Plaintiffs sent tens-of-thousands of takedown notices to Defendant without ever checking to see if their protected information was available on Defendant's website at intelx.io (the "Website"), and (2) only *later* was the Website searched to

2

verify compliance.[2] Resp. Br. 6, 9, 12, 14. Despite Plaintiffs' burden of proof to put the facts at issue, *Guidotti*, 716 F.3d at 774, as well as the importance of this "fact" to Plaintiffs' opposition *and* Atlas's access to its employees and tens of thousands of persons who utilize its services (including the Named Plaintiffs), Plaintiffs offer not a single declaration or any evidence in support of that sequence of events.[3] The Court should not credit it.

To be clear, *when* Plaintiffs agreed to arbitrate is irrelevant as demonstrated below. But even if it were, Plaintiffs already had the opportunity (and the burden) to prove the sequence of events in their Response. They made no effort to do so. Instead, they request "limited discovery" to "develop the factual record." Pl. Resp. 5 n.2. But to what end? The information (when they purportedly accessed the Website) is already in their control. Plaintiffs elected not to provide it to the Court or to Defendant despite the opportunity to do so. The Court should not credit this hide-the-ball approach by ordering discovery, thus giving Plaintiffs additional bites at the apple.

Moreover, and critically, if Plaintiffs checked the Website prior to sending the takedown notices as Defendant originally presumed (and which remains effectively unrebutted), none of Plaintiffs' objections to the arbitration agreement have merit. The Terms of Service, through the

---

[2]    In contrast, Defendant presumed that Plaintiffs visited the Website to first determine whether there was protected information to remove prior to sending takedown notices. Def. Mem. of Law in Support of Mot. to Compel Arbitration ("Def. Br.") (DE 26-1) at 12.

[3]    This failure raises the question of whether Plaintiffs can even do so, particularly considering Defendant's submission within a shorter timeframe of further evidence in reply to Plaintiffs' Response. *See* Supplemental Declaration of Peter Kleissner ("Supp. Kleissner Decl.") and the Addendum to Legal Analysis of the Arbitration Clause under the Laws of the Czech Republic ("Supp. Kokešová Report"), submitted by Alžběta Kokešová, filed contemporaneously with this Reply.

Further, Plaintiffs' lack of evidentiary proffers and absolute failure to address Defendant's points concerning the lack of protected information of Plaintiff Peter Andreyev on the Website, *see, e.g.,* Def. Br. 6 n.2, calls into question the basis for any of Plaintiffs' factual arguments and whether Defendant was correct in presuming compliance with Fed. R. Civ. P. 11(b)(3).

incorporated Privacy Policy, govern any data-removal requests. *See* Declaration of Peter Kleissner ("Kleissner Decl.") (DE 26-4) at ¶¶ 23, 25. Plaintiffs do not even bother to argue otherwise. This failing of Plaintiffs should end the inquiry. Respectfully, the Court should order the claims to arbitration in the Czech Republic.

### C.    Plaintiffs Did Not Accrue Valid Statutory Claims

Finally, if what Plaintiffs say concerning the sequence of events is true, they did not comply with the takedown notice provision in Daniel's Law, N.J.S.A. § 56:8-166.1(a)(2), and therefore never acquired a valid statutory claim. The takedown provision states that an "authorized person" may send a notice "requesting that the [recipient] cease the disclosure of the information and remove the protected information from the Internet or where otherwise made available." *Id*. The use of the verbs "cease" and "remove" mean that the protected information is actually available for takedown. The provision thus presumes that the "authorized person" had a basis to send a takedown notice. The law does not provide for prophylactic demands where information "may" be disclosed, nor does any of the law's language imply that. Nothing in Daniel's Law indicates that the legislature intended to authorize tens of thousands of unfounded and frivolous takedown emails to publishers. Doing so would undercut the central purpose of the law—to ensure that recipients act in a timely manner to remove such information. If recipients are wading through thousands of simultaneous, unfounded takedown demands, how could they possibly process those with merit? This is not what the law contemplates.

In sum, if Plaintiffs' unsubstantiated statement is believed, they sent tens of thousands of frivolous takedown notices without any basis to do so. Under Daniel's Law, however, the obligation to take down information is only triggered by a valid demand. N.J.S.A. § 56:8-166.1(a)(1). Therefore, without complying with N.J.S.A. § 56:8-166.1(a)(2), none of the

4

Plaintiffs possess a valid statutory claim, the existence of which underlies nearly every argument they make in opposition to the agreed-upon arbitration provision.

## II.     THE ARBITRATION AGREEMENT IS ENFORCEABLE

### A.     Plaintiffs' Purported Defenses Are Foreclosed by the Federal Arbitration Act

Plaintiffs' arguments concerning enforceability, Pl. Resp. 6-8, are by their own admission premised on the existence of an agreement, Pl. Resp. 5, which Plaintiffs claim is unenforceable "as applied here." Pl. Resp. 6. They state: "Plaintiffs do not contend that the challenged arbitration provision is facially invalid or incapable of being enforced in any circumstance." *Id.* Accordingly, without citation, Plaintiffs appear to be relying on the "savings clause" of Section 2 of the Federal Arbitration Act ("FAA"), which provides that arbitration provisions are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. Plaintiffs contend that provision (again, without citation, though it is the governing provision) applies here because "*in this specific context,* the provision is unenforceable." Pl. Resp. 6 (emphasis in original). Plaintiffs contend this is because it would be coercive to require arbitration in circumstances where Plaintiffs allegedly need to agree to Terms of Service to exercise their purported rights under New Jersey law. Pl. Resp. 6-8.

But the FAA does not allow this defense. The "saving clause recognizes only defenses that apply to 'any' contract." *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 507 (2018). It does not apply to "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 507-08 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Here, Plaintiffs argue that the arbitration provision is "coercive" because, in order to ascertain their rights under New Jersey law, they were required to access the Website and agree to the Terms of Service, thus *requiring them to arbitrate*. Pl. Resp. 6-8. Setting aside whether this fact pattern actually sets forth a legal defense recognized in the Czech Republic or

5

New Jersey (Plaintiffs cite no applicable law on the issue), it is irrelevant because even commonly applicable contract defenses provide no comfort if they are applied "in a fashion that disfavors arbitration." *Kindred Nursing Centers Ltd. Partnership v. Clark*, 581 U.S. 246, 254-55 (2017) (quoting *Concepcion*, 563 U.S. at 341).

Plaintiffs' brief reveals that the purported coercion here is a defense specifically targeting arbitration: "Conditioning access to necessary evidence [to bring a claim] on an agreement *to arbitrate* renders the provision unenforceable as applied." Pl. Resp. 8 (emphasis added). Setting aside the non-existent authority for the proposition that Plaintiffs are entitled to "necessary evidence" in a pre-litigation context, the Supreme Court has made it clear that the FAA does not allow challenges to the enforcement of arbitration provisions disguised as a common-law defense to contract. *E.g., Concepcion*, 563 U.S. at 341. The arbitration agreement is enforceable.

**B.       Plaintiffs Fail to Establish Any Defense to Contract**

Even if *Epic Systems*, *Kindred Nursing*, and *Concepcion* do not end the matter, Plaintiffs' arguments concerning enforceability, Pl. Resp. 6-8, are unavailing because they flow from two flawed premises and the unsubstantiated factual assertion discussed *supra*, Section 1.B. The first flawed premise is that Plaintiffs had a valid Daniel's Law claim despite their own non-compliance with the takedown-notice provision of Daniel's Law. *See* Section 1.C. Under Plaintiffs' own unsubstantiated version of the facts, they did not comply with Daniel's Law.

Compliance with the takedown provision, while binding Plaintiffs to arbitration under the Terms of Service, would have provided them with the outcome they purportedly sought. Had Plaintiffs registered for the Website in the first instance to see if their information was present, they would have gleaned that the Website and the Terms of Service provide specifically for a means to request data removal. Kleissner Decl. (DE 26-4) ¶¶ 23-27 and Ex. B (DE 26-6) at 3 (Privacy Policy). If they had followed the protocol Defendant provides for removal requests,

6

*there would be no Daniel's Law violation* because Defendant honors such requests. *See id.*; Supp. Kleissner Decl. ¶¶ 7-10. Plaintiffs' purported privacy motives would have been vindicated.

It is only because Plaintiffs shot first and aimed later in order to manufacture monetary claims that they find themselves in this purported "dilemma" concerning Rule 11. Pl. Resp. 8. By intentionally manufacturing circumstances in which compliance with Daniel's Law would be difficult, if not impossible (i.e., simultaneously flooding Defendant with tens of thousands of frivolous takedown requests), and only *then* attempting to verify what information was available on the Website, does the purported tension with Rule 11 that Plaintiffs complain about arise.

Here lies the second false premise underlying Plaintiffs' coercion argument: that Defendant was obligated to provide access to the Website or any information. There is no such obligation. Daniel's Law does not provide any right of inspection, nor do Plaintiffs identify one. Thus, Plaintiffs' reliance on *Bernetich, Hatzell & Pascu, LLC v. Medical Records Online, Inc.*, 445 N.J. Super. 173 (App. Div. 2016), is entirely misplaced. *Bernetich* does not even address "coercion." It is a contract-formation case.[4] *Bernetich*'s holding rests entirely on the grounds that providing the medical records at issue in that case was a "pre-existing" statutory and regulatory duty of defendant in that case. 445 N.J. Super. at 183-84. Because of that duty, defendant "did not promise [plaintiff] anything it was not already obliged to provide" and the arbitration agreement lacked consideration. *Id.* at 184-85. In this case, Defendant had no obligation whatsoever to provide Plaintiffs access to the Website at any time. By providing access, there was consideration provided in exchange for the arbitration agreement.

---

[4]     This does not affect the discussion *supra* Section II.A concerning the saving clause. "A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made." *Kindred Nursing*, 581 U.S. at 254-55.

Thus, Defendant did not "manufacture assent to arbitration[.]"[5] Pl. Resp. 7. If Plaintiffs' unsupported version of events is believed, knowing that they may want to pursue New Jersey statutory claims in a judicial form, *they still voluntarily agreed to arbitration in the Czech Republic under Czech law.*[6] The very purpose of the FAA is to effectuate that choice. *See Epic Systems*, 584 U.S. at 505-06. This is exactly why, even if Plaintiffs' unsupported version of events is credited, the timing issue is of no moment.

Finally, it bears repeating that if the timing of the arbitration agreement is what Defendant originally presumed (i.e., that Plaintiffs accessed the Website to determine whether their information was searchable prior to sending the takedown notices), none of Plaintiff's objections to the arbitration agreement have merit, and the agreement is enforceable. Plaintiffs made no attempt to rebut that analysis.

C.    **Plaintiffs Offer No Evidence Concerning How Plaintiffs' Claims Would Be Treated by a Czech Arbitrator**

Plaintiffs, without any evidentiary or legal basis whatsoever, baldly contend that the application of Czech law would "extinguish" Plaintiffs' rights. Pl. Resp. 8-9. Their only support for this contention conflates whether (a) Defendant's alleged conduct is legal in the Czech Republic with (b) whether Czech law precludes the pursuit of New Jersey statutory claims. *Id.* Plaintiffs provide no evidence or legal authority whatsoever on the latter point. But Defendant's

---

[5]    For the same reasons, the liability-waiver analysis in *Bernetich*, 445 N.J. Super. at 185-86, is inapplicable here.

[6]    Again, whatever conundrum Plaintiffs found themselves in because of the effort to manufacture monetary claims is of no moment. There are no pre-litigation discovery obligations between parties. That Plaintiffs chose expediency and agreed to the arbitration provision or were not thorough enough to determine another path to verify the existence of potential claims should not allow them to void the agreement they reached with Defendant. For example, there is no evidence that Plaintiffs simply inquired whether the takedown notices were received and processed. Their lack of diligence is hardly the fault of Defendant.

8

unrebutted expert report stated that parties may agree to arbitration "for the breach of a statutory (as opposed to contractual) duty[.]" Kokešová Report (DE 26-3) at 5; *see also* Supp. Kokešová Report (unless expressly excluded, arbitration agreements apply to all rights arising from the relevant legal relationship). Further, Plaintiffs' contention ignores that they may have remedies under Czech law, including Defendant's own Terms of Service and the incorporated Privacy Policy, to effectuate the removal of any protected information Plaintiffs contend is accessible via Defendant's website. *See* Kleissner Decl. ¶¶ 23-27.

Accordingly, there is no basis for the Court to conclude that it is confronted with the hypothetical presented in the *dicta* footnote in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). Rather, the court should pay heed to the *Mitsubishi* court's admonition that there "is no reason to depart from these guidelines [i.e., the FAA] where a party bound by an arbitration agreement raises claims founded on statutory rights." *Id.* at 626; *see also supra* Section II.A.

## III.   PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION PROVISION

Because there is a valid arbitration agreement, the only remaining issue is whether the dispute falls within the scope of that agreement. *See In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019). As demonstrated in Defendant's moving papers, Def. Br. 14-15, this dispute does fall within the scope of the arbitration provision. Again, Plaintiffs' contrary arguments rest on several flawed premises.

First, Plaintiffs' contention that they possess "pre-existing statutory claims" is both factually unsupported, *see supra* Section I.B, and legally flawed, *see* Section I.C. Both failings wholly undermine the central premise of Plaintiffs' arguments concerning the scope of the agreement. *See* Pl. Resp. 14 (asserting the timing of the takedown notices *before* accessing the

Website created a duty independent of the Terms of Service). If Plaintiffs accessed the Website *prior to* sending the takedown notices, as Defendant originally presumed, Def. Br. 11-13, then there is no dispute that Plaintiffs' claims fall within the scope of the arbitration agreement.[7] *See* Def. Br. 14-15. Plaintiffs do not even address that scenario in their Response. And again, despite their burden and access to relevant evidence without discovery, they offer not an iota of factual support that events transpired in the order they contend. *Supra* Section 1.B. Accordingly, on this basis alone, the Court should reject their arguments that the dispute is outside the scope of the arbitration provision and order the matter to arbitration.

Second, even if the Court credits Plaintiffs' unsubstantiated assertions, the arbitration provision covers the dispute. As an initial matter, if Plaintiffs proceeded in the manner they contend, they did not have a valid statutory claim. *Supra* Section 1.C. Even if they had a valid statutory claim, the arbitration provision itself clearly states that "all rights and obligations of the Parties arising from or related to this Agreement shall be governed by the Czech law." Kleissner Decl. Exhibit A (DE 26-5) (IntelX Terms of Service) ¶ 39. As noted above, the Terms of Service clearly incorporates the Privacy Policy. *Id*. ¶ 4. The Privacy Policy unambiguously addresses "Content Removal," Kleissner Decl. Ex. B, which is the exact same factual basis as Plaintiffs' purported statutory claim. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) ("In assessing whether a particular dispute falls within the scope of an arbitration clause, we focus on the factual underpinnings of the claim rather than the legal theory alleged in the complaint.") (cleaned up). Nothing in the arbitration provision excludes statutory claims arising from disputes concerning content removal, and such disputes are subject to arbitration under

---

[7]    Here again, if Plaintiffs agreed to the arbitration provision, they would have been bound by the content-removal provision within Defendant's Privacy Policy and any removal requests would have been honored. Kleissner Decl. ¶ 23-25; Supp. Kleissner Dec. ¶¶ 7-10.

Czech law. Defendant's unrebutted Czech law expert confirms that conclusion.[8] *See* Supp. Kokešová Report at 2-4 (all rights arising from the relevant legal relationship are within scope of arbitration provision unless specifically excluded); Kokešová Report at 23 (opining, under Czech law, that the agreement provides for arbitration of statutory claims). Thus, Plaintiffs—sophisticated litigants who have brought hundreds of cases—were clearly on notice that (i) Czech law would apply and (ii) that disputes related to "content removal," even if statutory, would be subject to arbitration.

### A.   Czech Law Governs Interpretation of the Scope of the Arbitration Provision

Despite their agreement to the application of Czech law, Plaintiffs' scope-related argument proceeds as if New Jersey contract-interpretation rules apply. They do not. In determining the scope of an arbitration clause, the applicable territory's law "governs." *See Remicade Antitrust Litig.*, 938 F.3d at 522-23. The parties expressly elected to use Czech law to interpret the Terms of Service. Kleissner Decl. Ex. A. ¶ 39. ("This Agreement and all rights and obligations of the Parties arising from or related to this Agreement shall be governed by the Czech law."). The Terms of Service govern the claims here, as noted above. Thus, the law of the Czech Republic is determinative on questions of scope. The reasoning in *Remicade Antitrust Litigation* confirms this conclusion. There, the Third Circuit enforced a choice-of-law provision

---

[8]      Again, Plaintiffs' decision (whether for expediency or otherwise) not to fulfill their burden to present "enough evidence" to create a genuine issue of fact as the issue of Czech law, *Guidotti*, 716 F.3d at 774, should not be rewarded. As early as December 5, 2025, Plaintiffs were on notice that Defendant intended to move to compel arbitration. DE 15 (Letter to the Court) at 1. Defendant filed the Motion to Compel Arbitration on February 25, 2026, and included their expert report. *See* DE 26-3. The parties consented to an extension of Plaintiffs' time to respond for good cause. *See* DE 29 (Mar. 15, 2026 letter from Plaintiffs' counsel). Plaintiffs had ample opportunity to provide facts and their own Czech law expert if they were able to do so.

that did <u>not</u> "make explicit" that relevant state law "governs interpretation of the contract generally." 938 F.3d at 523 n.5. Here, the Terms of Service are explicit: Czech law applies.

Under Czech law, as Defendant's unrebutted expert report establishes, Plaintiffs' claims fall within the scope of that agreement. *See* Kokešová Report at 23-24; *see also* Supp. Kokešová Report at 2-4. All arguments concerning scope under New Jersey law are irrelevant. *See* Pl. Resp. 10-15. Accordingly, the Court should compel this matter to arbitration.

**B.    Plaintiffs' Reliance on New Jersey Law Lacks Merit**

Plaintiffs' reliance on New Jersey law does not help them, either. First, Plaintiffs' cited cases concerning the arbitration of statutory claims are inapposite. *See* Pl. Resp. 11. For one thing, the specific arbitration-targeted provisions of New Jersey state law that those cases address are likely invalid in light of *Kindred Nursing*, 581 U.S. 246 (striking down Kentucky court ruling requiring specific authority for agents to enter into arbitration agreements). Moreover, they are factually distinguishable. None of Plaintiffs' authority concerned a sophisticated litigation mill or repeated litigants who, with knowledge that they possessed or may possess a statutory claim, agreed to an arbitration provision addressing the specific subject matter of those claims. *See Atalese v. U.S. Legal Servies Group, L.P.*, 219 N.J. 430, 444 (2014) (applying New Jersey law with respect to a "consumer contract" where claim arose after agreement); *Moon v. Breathless Inc.*, 868 F.3d 209 (3d Cir. 2017) (applying New Jersey law to an employment contract where claim arose after agreement); *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124 (2001) (applying New Jersey law with respect to discrimination claim where claim arose after agreement). Accordingly, even if New Jersey law regarding the scope of the agreement applies (it does not, *see supra*), the court must compel arbitration. "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the

12

asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). The arbitration provision here is entirely susceptible to such an interpretation.

In fact, the Third Circuit interpreted a substantially similar provision to that effect in *CreditInform*, 511 F.3d 369. The arbitration provision in *CreditInform* stated: "Any claim arising out of or relating to the Product [a credit-repair service] shall be settled by binding arbitration[.]" *Id.* at 375. The parties' agreement here reads: "All disputes arising from this Agreement and in connection therewith shall be finally decided [in arbitration]." Kleissner Decl. Ex. A. (DE 26-5) ¶ 39. There is no substantive difference between the scope of the two provisions. In *CreditInform*, the Third Circuit "reject[ed] out of hand" plaintiff's argument that her statutory claims were outside the scope of the arbitration provision. *CreditInform*, 511 F.3d at 376. The same applies here—as noted above, the factual basis of Plaintiffs' purported claims arise from a content-removal question specifically the subject of parties' agreement. *See CardioNet*, 751 F.3d at 173 (holding that the factual basis, not legal theory, of the dispute governs scope).

For the same reason, Plaintiffs completely misapprehend the interpretive principle of *CardioNet*. 751 F.3d at 173. That case and others upon which Plaintiffs rely, Pl. Resp. 12-15, do not, as Plaintiffs contend, create a rule that arbitration provisions only apply to claims that "depend upon" the interpretation of the underlying contract. *Id.* 14. There is no case that stands for that proposition. Courts have enforced arbitration provisions covering statutory claims that did not hinge on underlying contractual duties or interpretations for decades. *Gilmer v Interstate/Johnson Lane Corp.*, 500 U.S. at 26 (collecting cases); *see also EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.*, 410 N.J. Super. 453, 474-75 (App. Div. 2009), *abrogated on other grounds by Hirsch v. Amper Fin. Servs., LLC,* 215 N.J. 174 (2013) (statutory violation allegedly occurred before arbitration agreement).

*CardioNet* itself illustrates this. 751 F.3d at 175. The arbitration provision in that case was materially narrower than the Terms of Service here. *Id.* at 173-74 (arbitration provision did not cover "all" or "any" disputes, but rather, was "limited to disputes concerning the Agreement's 'performance or interpretation'"). Here, the arbitration provision covers "All disputes arising from" and "in connection with" the Terms of Service. Kleissner Decl. Ex. A. ¶ 39. Even crediting Plaintiffs' unsubstantiated version of events,[9] with knowledge that they might have had claims related to content removal, they entered into an agreement that addressed that issue in the incorporated Privacy Policy and subjected "content removal" disputes to arbitration. This ends the inquiry because there is no positive assurance that the arbitration provision does not cover the dispute. *See AT&T Technologies*, 475 U.S. at 650.

---

[9]    Again, they rely on a factual predicate, Pl. Resp. 14, that the court should not credit. *See supra* Section 1.B.

## CONCLUSION

For the reasons set forth above and in Defendant's moving papers, this Court should direct Plaintiffs' claims to arbitration in the Czech Republic through an order dismissing this litigation, or in the alternative, staying all claims pending such arbitration.


April 10, 2026

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
  Victor Suthammanont
  Kostelanetz LLP
  7 World Trade Center, 34th Floor
  New York, NY 10007
  (212) 719-2649
  vsuthammanont@kostelanetz.com

15