UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, and PETER ANDREYEV,<br><br>    Plaintiffs,<br><br>    -against-<br><br>KLEISSNER INVESTMENTS S.R.O., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>    Defendants. | **25 Civ. 17065 (HB)**<br><br>**ECF CASE** |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANT KLEISSNER INVESTMENTS S.R.O.**


Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
Victor Suthammanont
Kostelanetz LLP
7 World Trade Center, 34th Floor
New York, NY 10007

# TABLE OF CONTENTS

Table of Authorities..................................................................................................................ii

Argument ........................................................................................................................... 1

    I.    The Court Lacks Personal Juridiction................................................................... 1

        A.    There Is No Factual Support for Plaintiffs' Jurisdictional Arguments........................... 1

        B.    The Burden of Establishing Personal Jurisdiction Rests with Plaintiff ........................ 2

        C.    Plaintiffs Failed to Establish that Specific Jurisdiction Exists....................................... 3

        D.    Plaintiffs Failed to Establish that Jurisdictional Discovery is Warranted....................... 7

    II.    Daniel's Law Violates the Foreign Commerce Clause ....................................... 8

    III.    Defendant Has Established Statutory Immunity............................................. 12

Conclusion ....................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Atlas Data Privacy Corp. v. Quantarium Alliance, LLC*, 24-cv-04098,
   2026 WL 765716 (D.N.J. Mar. 18, 2026) ................................................................ 4

*Atlas Data Privacy Corp. v. We Inform, LLC*, 24-cv-04037 (D.N.J. Jun. 30, 2025) ...................... 8

*Atlas Data Privacy Corp. v. We Inform, LLC*, 24-cv-04037,
   2025 WL 2444153 (D.N.J. Aug. 25, 2025)................................................. 12, 13, 14

*Baer v. United States*, 722 F.3d 168 (3d Cir. 2013) ........................................................ 8

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ........................................ 10

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................ 4

*DiMeo v. Max*, 248 F.App'x 280 (3d Cir. 2007) .................................................. 12, 14

*Display Works, LLC v. Bartley*, 182 F.Supp.3d 166 (D.N.J. 2016)................................ 2

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351 (2021) ............................ 3, 4

*Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) ............................... 12, 13, 14

*Hasson v. FullStory, Inc.,* 114 F.4th 181 (3d Cir. 2024)................................................ 6

*Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110 (4th Cir. 2022) .................................... 13

*Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021) .......................................................... 6

*Hurley v. Cancun Playa Oasis Int'l Hotels*, 99-cv-574, 1999 WL 718556
   (E.D. Pa. Aug. 31, 1999)............................................................................ 5

*Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016).......................................... 13

*Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434 (1979) .................................... 9, 10

*Lincoln Ben. Life Co. v. AEI Life, LLC,* 800 F.3d 99 (3d Cir. 2015)........................................ 7

*M.H. & J.H. v. Omegle.com LLC*, 20-cv-11294, 2021 WL 1050234
   (D.N.J. Mar. 19, 2021) .............................................................................. 5

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) .......................................................... 2

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992)................................ 2

*MJH Life Scis., LLC v. P/S/L Grp. Am. Inc.*, 24-cv-08781,
  2024 WL 4432749 (D.N.J. Oct. 7, 2024) ................................................................. 8

*National Foreign Relations Council v. Natsios*, 181 F.3d 38 (1st Cir. 1999) ................................. 9

*National Pork Producers v. Ross*, 598 U.S. 356 (2023) ..................................................... 9

*Patterson v. FBI*, 893 F.2d 595 (3d Cir. 1990) ........................................................... 2

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ........................................................ 5

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ......................................................... 12

*Schuchardt v. President of the United States*, 839 F.3d 336 (3d Cir. 2016) .................................... 7

*Toys "R" Us, Inc. v. Step Two, S.A*, 318 F.3d 446 (3d Cir. 2003) ........................................ 5, 7, 8

*Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1 (1986) ....................................... 11

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................. 5

**Other Authorities**

Listina základních práv a svobod [Charter of Fundamental Rights and Basic Freedoms],
  Art. 17, No. 2/1993 Coll., as amended (Czech Rep.) ................................................. 11

**Statutes**

47 U.S.C. § 230 ...................................................................................... 12, 13

In response to Defendant Kleissner Investments S.R.O.'s motion to dismiss, Plaintiffs assert a host of unsupported legal and factual theories ultimately at odds with each other, their own pleadings, and the prevailing legal standards. Plaintiffs repeatedly incorporate unsubstantiated (and incorrect) factual statements critical to establishing personal jurisdiction— yet decline to offer evidence to support these assertions despite their burden to do so. Moreover, the weakness of Plaintiffs' legal arguments are revealed by the mental contortions required to give them credibility: Defendant purposefully availed itself of New Jersey's laws by its purported inaction solely in the Czech Republic; liability under Daniel's Law does not arise from "disclosure" despite the clear words of the statute and Plaintiffs' own Complaint; New Jersey can directly regulate conduct occurring entirely and legally in the Czech Republic.

For the reasons stated in Defendant's moving papers and below, this court lacks jurisdiction over Defendant, Daniel's Law violates the Foreign Commerce Clause, and the Communications Decency Act immunizes Defendant. This action should be dismissed.

## **ARGUMENT**

### I.    **THE COURT LACKS PERSONAL JURIDICTION**

#### A.    **There Is No Factual Support for Plaintiffs' Jurisdictional Arguments**

Before engaging with Plaintiffs' personal-jurisdiction arguments, it is important to note that their contentions rest on a premise unsupported by its pleadings or in fact. Plaintiffs assert that Defendant "appropriate[ed] the information of New Jersey residents and disclos[ed] that information . . . to individuals and businesses in New Jersey." Plaintiff's Response to Motion to Dismiss ("Pl. Resp.") (DE 32) at 5. Plaintiffs similarly claim that "Defendant obtained information on New Jersey residents [and] affirmatively disclosed New Jersey-specific data to New Jersey residents[.]" *Id*. at 6. They state that their purported injury "stems from covered person information collected in New Jersey, made available on Defendants' website, and sold to

New Jersey residents." *Id.* at 7. Plaintiffs proffer no evidence nor cite any allegation in the complaint supporting these statements.[1]

What evidence does exist, offered by Defendant without rebuttal, demonstrates that Defendant had exceedingly little interaction with New Jersey, none of it targeted or intentional. Plaintiffs have offered no allegation or evidence that personal jurisdiction exists, and their basis for asserting personal jurisdiction is so weak that even jurisdictional discovery is unwarranted.

**B.      The Burden of Establishing Personal Jurisdiction Rests with Plaintiff**

Following a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). The plaintiff must present "a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Display Works, LLC v. Bartley*, 182 F.Supp.3d 166, 172 (D.N.J. 2016) (quoting *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Once factual allegations are placed in dispute, however, the court must consider all evidence presented. *See Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (jurisdictional dispute "requires resolution of factual issues outside the pleadings," so once raised, "plaintiff must sustain its burden of proof . . . through sworn affidavits or other competent evidence").

Defendant provided competent factual evidence, supported by sworn declaration, that Kleissner Investments lacks the minimum contacts needed for the court to assert specific

---

[1]      There are no such allegations. The Complaint is silent as to where Defendant obtains the information it republishes. As Defendant made clear, however, the Website, as a search engine, indexes *publicly available data*. Decl. of Peter Kleissner ("Kleissner Decl.") (DE 27-4) ¶¶ 9-12. Further, there is <u>no</u> allegation concerning the sale of protected information to New Jersey residents. At best, the Complaint alleges Defendant disclosed general "data and information" in New Jersey, Compl. ¶ 37, or that it disclosed protected information "on the Internet," Compl. ¶ 51, without connecting protected information to any disclosure in New Jersey.

2

jurisdiction. Def. Mem. of Law in Support of Mot. to Dismiss ("Def. Br.") (DE 27-1) at 7-16; Kleissner Decl. (DE 27-4) ¶¶ 4-6, 29-30. Defendant is based in the Czech Republic, operating an online search engine service using servers in the Czech Republic only. Kleissner Decl. (DE 27-4) at ¶¶ 4-7. Defendant does not advertise in or target marketing efforts towards New Jersey in any way, nor does it intentionally conduct or solicit business in the state. *Id*. ¶¶ 6, 29. Finally, only 0.22% of Defendant's end-user customers are located in New Jersey. *Id*. ¶ 30. At the time of the filing of the Complaint, Defendant had three end-user customers in New Jersey, but was not aware of that fact. Supplemental Declaration of Peter Kleissner ("Supp. Kleissner Decl.") ¶¶ 4-5.

In the face of these facts, Plaintiffs provide no evidence to carry their burden of proving personal jurisdiction beyond the meager facts alleged in the Complaint. Despite having access to the Individual Plaintiffs and tens of thousands of Covered Persons registered with Atlas, Plaintiffs submitted no declarations, no documents, nor any other evidence that Kleissner Investments had more than incidental contacts with or targeted New Jersey. Rather, as explained *supra* Section 1.A, Plaintiffs rely on a factual premise entirely unsupported by the Complaint's allegations or in fact.

C.     **Plaintiffs Failed to Establish that Specific Jurisdiction Exists**

Plaintiffs confirm that the traditional purposeful-availment framework applicable to specific personal jurisdiction articulated in *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351 (2021), applies in this case.[2] But they entirely fail to demonstrate that jurisdiction can be asserted under this test, which requires, first, a showing that Defendant purposefully availed itself of the privileges of conducting activities within the forum state, and second, that

---

[2]     Plaintiffs do not contend that there is general personal jurisdiction here.

Plaintiff's claims arise out of or relate to Defendant's purposeful availment. *Id.* at 359 (internal citations omitted).

On the first prong, Plaintiffs present a series of unsupported statements related to Defendant's interactions with New Jersey to assert a "purposeful availment" that simply does not exist. *See supra* Section 1.A. These factual contentions were notably absent from the Complaint. Defendant's facts, however, are unrebutted. Defendant operates a search engine, generally available on the internet, that uses web crawling techniques to index the content of other publicly available data for publication through the Website. Kleissner Decl. (DE 27-4) ¶¶ 9-10. Defendant is not the original source of any data at all, much less the data of forum residents or Covered Persons specifically. *Id.* ¶¶ 11-13. It does not pay for personal data. *Id.* ¶ 13. In other words, none of Defendant's business specifically targets the data of individuals in New Jersey. The information it provides to customers is, in effect, the original source material. *Id.* ¶ 12 ("Search results merely present data originally published on the internet by other parties."). Further, Defendant takes no efforts to solicit customers from New Jersey and had such an inconsequential amount of forum customers (3) *that it was unaware* it had any such business at all prior to the lawsuit. *Id.* ¶¶ 28-31; Supp. Kleissner Decl. ¶¶ 4-5. This cannot be the basis of specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("random, fortuitous, or attenuated contacts" are insufficient to show purposeful availment) (cleaned up).

This Court's reasoning in *Atlas Data Privacy Corp. v. Quantarium Alliance, LLC*, 24-cv-04098, 2026 WL 765716 (D.N.J. Mar. 18, 2026), does not avail Plaintiffs. Defendant did not knowingly obtain the information of New Jersey residents, much less pay for it. *Id.* at *7. It certainly did not "have discussions" with prospective customers in New Jersey. *Id*. It merely maintains a search engine that republishes information publicly available elsewhere on the

4

internet to customers wherever they may be located. Kleissner Decl. (DE 27-4) ¶¶ 9-13. There is no evidence refuting these facts. Nor have Plaintiffs offered any evidence even *suggesting* that Defendant was aware that its search engine was revealing New Jersey information or that it had New Jersey customers.

A finding of purposeful availment here would not only contravene the clear Third Circuit precedent in *Toys "R" Us, Inc. v. Step Two, S.A*, 318 F.3d 446, 452 (3d Cir. 2003) (defendant must "intentionally interact" with the forum state or "direct[] its activity towards the forum state" to find purposeful availment), and stand in stark contrast to district court decisions in *M.H. & J.H. v. Omegle.com LLC*, 20-cv-11294, 2021 WL 1050234 (D.N.J. Mar. 19, 2021) and *Hurley v. Cancun Playa Oasis Int'l Hotels*, 99-cv-574, 1999 WL 718556 (E.D. Pa. Aug. 31, 1999), but lead to absurd results. Finding purposeful availment here would effectively require a finding imputing knowledge of *all data on the internet* to Defendant. Even a finding that Defendant was cognizant that information concerning New Jersey individuals *may be* available on the internet or that a New Jersey customer *might* purchase access to the Website would necessarily apply to *every jurisdiction on the planet*. There is no limiting principle to such a finding. It would be tantamount to a finding of universal jurisdiction that contravenes the notions of fair play and substantial justice required by the Due Process Clause. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-97 (1980) (foreseeability of injury is not sufficient, defendant must have such connection with the forum that "he should reasonably anticipate being haled into court there");[3] *see also Remick v. Manfredy*, 238 F.3d 248, 259 n.3 (3d Cir. 2001) ("the mere posting of information . . . on an Internet website does not confer nationwide personal jurisdiction").

---

[3]    Notably, the interest of the state in asserting jurisdiction is irrelevant to the inquiry. *World-Wide Volkswagen*, 444 U.S. at 294 ("even if the forum State has a strong interest in

On the second prong, that Plaintiffs' claims arise out of or relate to alleged purposeful availment, Plaintiffs contend their claims arise from Defendant's knowing failure to comply with take-down requests within the statutory period. Plaintiffs refer to this alleged inaction as "forum-directed conduct." Pl. Resp. 7. They make no real attempt to grapple with *Hasson v. FullStory, Inc.*'s admonition that "arising out of" connection requires more than "but for" causation and "relating to" connection requires relatedness that is "inversely proportional to the overall intensity of the defendant's forum contacts[,]" 114 F.4th 181, 193 (3d Cir. 2024), and Defendant's related arguments. Def. Br. 13-14. Their only attempt to establish the requisite connections is to parrot the unsubstantiated factual assertion that their alleged injury stems from "information collected in New Jersey" and "sold to New Jersey residents." Pl. Resp. 7. There is no evidence that is true (it is not), nor an allegation of such in the Complaint. *See supra* Section 1.A. Plaintiffs' unsubstantiated parroting does not rebut Defendant's evidence to the contrary. Nor does it not bring the facts here outside the ambit *Hepp v. Facebook*, as Plaintiffs were attempting to show. 14 F.4th 204, 208 (3d Cir. 2021). Given the weakness of Defendant's unintentional and nearly non-existent contact with New Jersey, Plaintiffs were required to make a showing of a "strong connection" with their claim. *Id*. They failed to do so.

Moreover, Plaintiffs contend in this matter that they took no action to investigate whether any Covered Persons' data was searchable on the Website prior sending nearly twenty thousand take-down requests, without basis, and waiting at least ten days for the statutory period to expire. *See* Plaintiff's Response to Motion to Compel Arbitration ("Pl. Resp. to MTC") (DE 31) at 12. These contentions are also unsupported by evidence.[4] But if the Court credits them, then their

---

applying its law to the controversy . . . the Due Process Clause . . . may sometimes act to divest the State of its power to render a valid judgment").

[4]      *See* Defendant's Reply Brief in Support of its Motion to Compel Arbitration at 2-4.

6

claims cannot possibly "arise from" Defendant's contacts with Plaintiffs, as no purposeful contacts existed prior to the statutory claims accruing.

In sum, Plaintiffs do not meet their burden to establish personal jurisdiction by merely offering unsupported factual statements not even pleaded in the Complaint. They fail to rebut Defendant's evidence that it did not purposefully avail itself of New Jersey's laws and its analysis showing Plaintiffs' claims are unconnected to any such contacts. Fair play and substantial justice require dismissal of this case.

**D.      Plaintiffs Failed to Establish that Jurisdictional Discovery is Warranted**

Courts may permit jurisdictional discovery, but not without limits. It is well-established that "only those plaintiffs who have provided some basis to believe jurisdiction exists are entitled to discovery on that issue." *Lincoln Ben. Life Co. v. AEI Life, LLC,* 800 F.3d 99, 108 (3d Cir. 2015). To warrant jurisdictional discovery, a plaintiff must "present[] factual allegations that suggest with reasonable particularity" grounds for the assertion of personal jurisdiction. *Toys "R" Us*, 318 F.3d at 456 (internal quotations omitted). The Third Circuit has warned against the use of jurisdictional discovery as a fishing expedition, cautioning that "jurisdictional discovery is not available merely because the plaintiff requests it." *Lincoln Ben. Life*, 800 F.3d at 108 n. 38; *see also Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) ("Jurisdictional discovery is not a license for the parties to engage in a 'fishing expedition[.]'").

In support of their request, Plaintiffs cite *Toys "R" Us* to argue that Defendant's incidental number of end users in New Jersey provide sufficient factual evidence to warrant jurisdictional discovery. Pl. Resp. 8. The plaintiff in *Toys "R" Us*, however, proffered far more substantial factual evidence suggesting that personal jurisdiction was actively in dispute, including "conflicting affidavits rais[ing] the possibility" of undisclosed forum-based sales and an affidavit admitting to "substantial regular and systematic contacts with the United States" that may have

7

involved the forum state. 318 F.3d at 457-58. Plaintiffs provide no such evidence here, and fail to submit any evidence suggesting alleged intentional contacts beyond Defendant's incidental and unintentional contacts with New Jersey. Kleissner Decl. ¶¶ 28-31; Supp. Kleissner Decl. ¶¶ 4-6.

A party seeking discovery also must establish a basis for it by specifying what information is missing and showing a "reasonable expectation that discovery will reveal evidence." *Baer v. United States*, 722 F.3d 168, 176-77 (3d Cir. 2013) (affirming denial of jurisdictional discovery where plaintiff failed to establish that relevant evidence would likely be uncovered); *see also MJH Life Scis., LLC v. P/S/L Grp. Am. Inc.*, 24-cv-08781, 2024 WL 4432749, at *4 (D.N.J. Oct. 7, 2024) (denying jurisdictional discovery where defendant already submitted sufficient information regarding citizenship). Plaintiffs make no such attempt here.

In this matter, no relevant information is missing. Defendant has already provided— voluntarily—much of the relevant information about its company structure, business operations, search engine functionality, and unknowing incidental contacts with New Jersey. *See* Kleissner Decl. (DE 26-4). None of these sworn statements were rebutted or even put in issue by Plaintiff. It further offered in reply the exact number of unintentional and incidental contacts. Supp. Kleisser Decl. ¶¶ 4-6. This information is presumably what would be requested by Plaintiffs in jurisdictional discovery. Indeed, the information provided closely mirrors the information sought by Plaintiffs in related dockets. *See* Exhibit A – Interrogatories to Mot. to Compel Personal Jurisdiction Discovery (DE 72-2) at 7-10, *Atlas Data Privacy Corp. v. We Inform, LLC*, 24-cv-04037 (D.N.J. Jun. 30, 2025). In light of these disclosures, submitting Defendant to jurisdictional discovery is unwarranted and superfluous, not to mention a waste of judicial and party resources.

## II.    DANIEL'S LAW VIOLATES THE FOREIGN COMMERCE CLAUSE

In demonstrating that Daniel's Law violates the Foreign Commerce Clause, Defendant established that New Jersey may not directly regulate commerce wholly outside of its borders.

Def. Br. 16-18. In response, Plaintiffs argue against a strawman, contending that New Jersey's statute is "nondiscriminatory" under the dormant Commerce Clause analysis in *National Pork Producers v. Ross*, 598 U.S. 356 (2023). Pl. Resp. 10. Plaintiffs attempt to make much from the fact that Defendant "[t]ellingly" did not cite or reference it. *Id*. at 10 n.5. It is indeed telling that Defendant did not do so; it is completely irrelevant. *National Pork* involved the "dormant Commerce Clause." 598 U.S. at 364. Defendants make no such argument here. Def. Br. 16-20. The dormant Commerce Clause prohibits state laws that seek to advantage a state's domestic commerce by burdening interstate commerce. *National Pork,* 598 U.S. at 368-69. Nothing in *National Pork* limits the Foreign Commerce Clause to that doctrine. A "more extensive" inquiry of challenged state actions is required under the Foreign Commerce Clause. *See Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434, 446 (1979); *see also National Foreign Relations Council v. Natsios*, 181 F.3d 38, 66-67 (1st Cir. 1999), *aff'd sub nom Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) (more scrutiny applies in Foreign Commerce Clause context).

 *National Pork* is completely inapposite on its facts, as well. The California law at issue revised standards for the "in-state sale" of certain food products. 598 U.S. at 365. California did not create civil and potential criminal liability for conduct beyond its borders—it merely prevented the sale of nonconforming products within the state. Nor did California allow its citizens to unilaterally impose the state's standards and liability on foreign companies by simply sending an email. In sum, the California statute's effect in-state created incentive for downstream manufacturers to adopt California standards.

 Daniel's Law is entirely different, and Plaintiffs' attempt to sanitize the undisputed effects of Daniel's Law as mere "upstream effects" strains logic and credulity. *See* Pl. Resp. 12. Plaintiffs do not dispute that Daniel's Law imposes liability upon a Czech company for "merely

9

having the protected information available regardless of whether it is searched" on a Website in the Czech Republic to a user in the Czech Republic—conduct entirely legal in that country. Def. Br. 17-18. Not a single paragraph in the Complaint alleges the disclosure of protected information by Defendant in New Jersey or to a person in that state. *See, e.g.*, Compl. ¶¶ 37 (alleging Defendant engages in data disclosure in New Jersey without reference to protected information); 51 (alleging disclosure "on the Internet" without reference to New Jersey). Plaintiffs do not dispute that a New Jersey person unilaterally imposes the purported direct duty as well as potential damages (actual, statutory, and punitive) on the Czech company by simply sending an email, even if Defendant *never sells* the disputed information. Nothing about this is "upstream." For that reason, Plaintiffs' argument that Daniel's Law "does not regulate how Defendant generally conducts business with consumers in other jurisdictions" is a flat mischaracterization. *See* Pl. Resp. 12.

Plaintiffs' attempt to distinguish *BMW of North America, Inc. v. Gore* is similarly unavailing. 517 U.S. 559 (1996). In *BMW*, like here, Alabama tried to impose punitive liability upon a company for its lawful conduct in other states. *Id.* at 572-73. Despite Alabama's interest in protecting its consumers, it could not impose punitive liability "to deter conduct that is lawful in other jurisdictions." *Id.* at 573. Nor can New Jersey do so here.[5] No state may regulate conduct wholly outside its own borders, whether under the Foreign Commerce Clause or simply due to principles of state sovereignty and comity. *Id.* at 571, 571 n.16 (collecting cases).

Plaintiffs' arguments concerning the "one voice" test in *Japan Line* fare no better. 441 U.S. at 449. First, Plaintiffs totally fail to address that the multitude of differing regulations

---

[5]    There can be no reasonable dispute that Daniel's Law punitive damages provision is foreclosed by *BMW*, as is the "liquidated damages" provision, which is punitive in nature.

passed by the states and Congress, each of which in scope and application, Def. Br. 18, is literally the opposite of "one voice." Moreover, *Wardair Canada, Inc. v. Florida Dep't of Revenue* provides no support for Plaintiffs' position. 477 U.S. 1 (1986). In *Wardair*, the United States was party to two multilateral international agreements and seventy bilateral agreements that "acquiesce[d]" to the state taxation at issue. *Id.* at 9-11. Plaintiffs identify no such record of acquiescence here in international agreements. To the extent Congress and the Executive have acted, it has been in the domestic context. Def. Br. 19. And contrary to Plaintiffs' contentions, Daniel's Law risks retaliatory laws by jurisdictions, such as the Czech Republic, that protect the speech, publication, and commercial rights of their citizens. *See* Listina základních práv a svobod [Charter of Fundamental Rights and Basic Freedoms], Art. 17, No. 2/1993 Coll., as amended (Czech Rep.). What if the Czech Republic passed a statute imposing liability on New Jersey residents for pursuing Daniel's Law claims against Czech companies? Or sending takedown notices, without basis, for believing those Czech companies held their data?[6] Daniel's Law risks creating those foreign-policy issues.

Finally, despite the critical interests of the fifty states in all manner of areas where the regulation of entirely foreign conduct may be desirable to them, Plaintiff fails to identify a single analogous law that imposes liability upon foreign conduct lawful in that jurisdiction, much less one affirmed by a court. In part, the Due Process Clause protects against such overreach. *See supra* Section 1. But this dearth also reflects the respect for principles of state sovereignty and comity that legislatures usually recognize. New Jersey can no more outlaw a Czech bookseller making a book available for sale to a Prague resident (whatever its contents) than it can make Defendant liable for its lawful conduct in the Czech Republic under Daniel's Law.

---

[6]     *See* Defendant's Reply Brief in Support of its Motion to Compel Arbitration at 4.

## III.    DEFENDANT HAS ESTABLISHED STATUTORY IMMUNITY

It is well-established that dismissal on the pleadings may be granted where an internet service provider establishes statutory immunity under Section 230 of the Communications Decency Act ("CDA"). *See Green v. Am. Online (AOL)*, 318 F.3d 465, 471-72 (3d Cir. 2003) (Section 230 adequate grounds for Rule 12(b)(6) dismissal). Evidence demonstrating that all elements of Section 230 are satisfied must stem from allegations in the complaint, including facts that can be fairly surmised based on what is *missing* from the complaint. *See DiMeo v. Max*, 248 F.App'x 280, 282 (3d Cir. 2007) (plaintiff alleged defendant is the "publisher" of posts but failed to allege that defendant is the "author" or "content provider" behind them; accordingly, it can be assumed that posts originated from third-party providers thus satisfying the requirements for immunity). A court may also consider any undisputed facts outside the complaint, including documents integral to or relied upon in the complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Here, all elements proving that Defendant is statutorily immune from liability either plainly exist in Plaintiffs' Complaint, can be assumed based on the allegations notably absent, or stem from the Website cited in the Complaint.

Through Section 230, "Congress sought to immunize certain computer services from liability based on content posted by third parties." *Atlas Data Privacy Corp. v. We Inform, LLC*, 24-cv-04037, 2025 WL 2444153, at *3 (D.N.J. Aug. 25, 2025). In their Response, Plaintiffs greatly exaggerate the nature and quantity of facts in dispute in an attempt to circumvent this Congressional purpose. Plaintiffs, however, cannot misconstrue allegations that *they themselves pled* to evade dismissal. As demonstrated in the moving brief (Def. Br. 20-23) and below, the facts concerning *this* Defendant and *this* Complaint are materially divergent to those addressed in *We Inform*. 2025 WL 2444153. Here, the grounds for immunity are, in fact, apparent based on the face of the Complaint and Website referenced therein and not seriously disputed.

12

Three basic elements are required to establish statutory immunity under Section 230. Plaintiffs ignore the first prong, that Defendant is the "user[] or provider[] of an interactive computer service[,]" *We Inform,* 2025 WL 2444153, at *3, and thus concede the issue.

As to the second prong, the test requires that the asserted claim treats Defendant as a publisher. *See We Inform*, 2025 WL 2444153 at *3. Both the explicit allegations in Plaintiffs' Complaint and the text of Daniel's Law seek to impose liability for "disclosing" (i.e., publishing). Def. Br. 23. Yet Plaintiffs argue that, somehow, the editorial function of content removal (or not removing content) is separate from "disclosing" (i.e., publishing). Pl. Resp. 17. Even Plaintiffs' articulation that liability is predicated on "noncompliance with the nondisclosure requests" (Pl. Resp. 18) proves their illogic—literally the only method of "noncompliance" is continued <u>publication</u>. *Green* absolutely forecloses Plaintiffs' argument. 318 F.3d at 471 ("Green thus attempts to hold AOL liable for decisions relating to the monitoring, screening, *<u>and deletion of content</u>* from its network – *<u>actions quintessentially related to a publisher's role</u>*. Section 230 specifically proscribes liability in such circumstances." (emphasis added) (internal quotations and citation omitted)). The Court's analysis of that prong should end here.

In light of this, Plaintiffs (Pl. Resp. 17-18) attempt to import Fourth Circuit case law, *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 120-21 (4th Cir. 2022), that is unadopted by the Third Circuit and which no court in this circuit has applied, including this court. *See We Inform*, 2025 WL 2444153 at *3. The Fourth Circuit, in *Henderson*, adds to the traditional "publisher" test addressed above that the published information be "improper." 53 F. 4th at 122. The Third Circuit has never held Section 230 requires this, nor is it likely to do so. "There has been near-universal agreement that section 230 should not be construed grudgingly." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016) (collecting cases).

13

Even if that was a requirement, Plaintiffs' argument that Daniel's Law only applies liability on truthful, not "improper," speech (Pl. Resp. 18) is completely unmoored from the reality that the content of Defendant's publications is still allegedly "improper" under Daniel's Law. Plaintiffs' argument ignores that Congress immunized publishers in the CDA for third-party content leading to liability. Congress did not need to immunize publishers of content that was not "improper" whether under statute or common law. There is simply no content-based exception from "publisher" in either the text of the CDA or Third Circuit case law interpreting it.

Importantly, Plaintiffs' contentions raise no factual issues. The undisputed facts alleged in the Complaint and reiterated in Plaintiffs' Response demonstrate that liability is predicated on treatment of the Defendant as publisher of the protected information. *Green*, 318 F.3d at 471.

Finally, for the third prong, Defendant must demonstrate that the information challenged "is provided by another information content provider." *We Inform*, 2025 WL 2444153 at *3. Plaintiffs make no real effort to rebut what Defendant demonstrated in its moving papers—all of the information available via the Website, which is referenced in the Complaint, comes from "another information content provider" and Defendant does not "develop" such information. Def. Br. 22-23; *see also DiMeo*, 248 F. App'x at 282 (lack of allegations that defendant authored information or was an "internet content provider" sufficient for dismissal).

Instead, Plaintiffs mischaracterize the allegations in the Complaint to claim that "Defendant takes an active role in soliciting and obtaining specifically sought Covered Persons' information, including unpublished content, and curating it for publication to its customers." Pl. Resp. 19 (citing Comp. ¶¶ 35-39). That statement is untethered from any factual reality. First, paragraphs 35 to 39 of the Complaint contain <u>not a single allegation</u> concerning the source of information on Defendant's Website, much less any allegation that can be fairly characterized as

14

"an active role in soliciting and obtaining specifically sought" protected information, "including unpublished content," or "curating it for publication." Second, Defendant's Website, which Plaintiffs reference and ostensibly reviewed, expressly states "We index data from public sources and make it available to our users." *See* Welcome to Intelligence X, *available at* https://help.intelx.io/. Third, Plaintiffs' statement is directly contradicted by the Kleissner Declaration. (DE 27-4) ¶ 13 (Defendant "does not engage in the purchase or collection of any individual's personal data other than by indexing information that is otherwise publicly available on the internet. The company does not package or otherwise assemble collections of such data, other than those results returned automatically by a user's search.").

Accordingly, Defendant meets all elements of CDA immunity.[7]

## **CONCLUSION**

For the foregoing reasons and those stated in Defendant's moving papers, the Complaint should be dismissed.

April 10, 2026

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
    Victor Suthammanont
    Kostelanetz LLP
    7 World Trade Center, 34th Floor
    New York, NY 10007
    (212) 719-2649
    vsuthammanont@kostelanetz.com

---

[7]     With respect to Plaintiffs' arguments concerning the sufficiency of its scienter allegations against Defendant, Pl. Resp. 19-20, Defendant's moving papers, Def. Br. 23-25, adequately state its position such that reply is unnecessary.

15