**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, and PETER ANDREYEV,**

**Plaintiffs,**

**-against-**

**KLEISSNER INVESTMENTS S.R.O., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,**

**Defendants.**

**25 Civ. 17065 (HB)**

**ECF CASE**

# SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
Victor Suthammanont
Kostelanetz LLP
7 World Trade Center, 34th Floor
New York, NY 10007

## TABLE OF CONTENTS

Table of Authorities ........ ii

Preliminary Statement ........ 1

Argument ........ 2

I. Full Nelson Investigations Acted as Plaintiffs' Agent and Bound Them to the Arbitration Agreement ........ 2

A. Plaintiffs' Admissions in Discovery and their Supplemental Brief Establish an Agency Relationship ........ 2

B. Under New Jersey Law, Full Nelson Investigations Had Actual Authority to Bind Plaintiffs to Defendant's Terms of Service ........ 5

C. Alternatively, Plaintiffs Ratified Assent to Defendant's Terms of Service by Commencing This Lawsuit ........ 8

II. The Arbitration Agreement is Enforceable Against Atlas as the Assignee of Individual Daniel's Law Claims ........ 9

III. Plaintiffs' Argument Regarding When Daniel's Law Claims Accrued Is a Red Herring, Foreclosed by the Federal Arbitration Act ........ 10

IV. The Czech Choice-Of-Law Provision Is Valid and Enforceable ........ 11

Conclusion ........ 13

# TABLE OF AUTHORITIES

## Cases

*Adler v. Gruma Corp.*, 135 F.4th 55 (3d Cir. 2025) ............ 11

*Advanced Disposal Servs. E., Inc. v. N.L.R.B.*, 820 F.3d 592 (3d Cir. 2016) ............ 9

*Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560 (App. Div. 2007) ............ 7

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ............ 5

*Atlas Data Privacy Corp. v. Blackbaud, Inc.*,
757 F.Supp.3d 605 (D.N.J. Nov. 20, 2024) ............ 9, 10

*Clarkson v. Selected Risks Ins. Co.*, 170 N.J. Super. 373 (Law Div. 1979) ............ 8

*Harmon v. BMW of North America*, No. A-0006-23,
2024 WL 524619 (N.J. App. Div. Dec. 30, 2024) ............ 6

*Hawkins v. Harris*, 141 N.J. 207 (1995) ............ 3, 4

*In re Complaint of PMD Enters. Inc.*, 215 F. Supp. 2d 519 (D.N.J. 2002) ............ 3

*In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515 (3d Cir. 2019) ............ 11, 12

*In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148 (3d Cir. 2022) ............ 7, 8

*Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616 (3d Cir. 2009) ............ 11

*Lewis v. Travelers Ins. Co.*, 51 N.J. 244 (1968) ............ 6

*Mayer v. Verizon New Jersey, Inc.*, No. 13-CV-3980,
2014 WL 12789832 (D.N.J. May 6, 2014) ............ 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614 (1985) ............ 12, 13

*NCP Litig. Tr. v. KPMG LLP*, 187 N.J. 353 (2006) ............ 7, 8

*New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*,
203 N.J. 208 (2010) ............ 2, 4, 5, 6

*Sears Mortg. Corp. v. Rose*, 134 N.J. 326 (1993) ............ 2, 4

*Thermo Contracting Corp. v. Bank of N.J.*, 69 N.J. 352 (1976) ............ 8

*Torraco v. Torraco*, 236 N.J. Super. 500 (Ch. Div. 1989) ............ 4

## Statutes

9 U.S.C.A. § 2 ............ 10

**Other Authorities**

*Restatement (Third) of Agency* § 1.01 .......... 2
*Restatement (Third) of Agency* § 2.01 .......... 5, 6
*Restatement (Third) of Agency* § 2.03 .......... 5

Defendant Kleissner Investments, S.R.O. ("Defendant" or "Kleissner") respectfully submits this Supplemental Brief in Support of its Motion to Compel Arbitration.

**PRELIMINARY STATEMENT**

Through their Supplemental Brief in Opposition to the Motion to Compel Arbitration ("Pl. Supp. Br.") (DE 52) and incorporated interrogatory responses, Atlas Data Privacy Corporation ("Atlas") admitted to engaging a third-party private investigator, Full Nelson Investigations ("Full Nelson") to create end-user accounts and run searches on Defendant's website, Intelligence X ("IntelX" or the "Website"). In particular, Atlas's sworn interrogatory responses establish that, between August 8 and September 27, 2024, David Nelson—an investigator at Full Nelson—and a second investigator "under his direction and control" accessed IntelX, created both free and paid end-user accounts, and ran searches on the Website both manually and through its API, with an Atlas consultant configuring the API, all to obtain "[d]ata supporting the allegations asserted in the Complaint." Certification of Victor Suthammanont ("Suthammanont Cert.") Ex. A (Atlas Interrog. Resp. Nos. 3, 4, 5, 8).

It is also clear from the circumstances and Atlas's own Service Terms that it orchestrated this sequence of events and subsequent litigation not only for the benefit of its assignors but also Individual Plaintiffs Peter Andreyev and Jane Doe-1 (together, the "Individual Plaintiffs").[1] Thus, Full Nelson's investigative conduct, performed at the direction of Atlas for Plaintiffs' benefit, necessarily bound all Plaintiffs to the Arbitration Agreement contained in Defendant's Service Terms, regardless of technicalities regarding who hired whom or the precise timing of

[1] Atlas's Service Terms reveal that Atlas has sole discretion to decide whether to bring claims as assignee of Covered Persons or whether to connect individual Covered Persons to attorneys, so they may serve as individual plaintiffs in lawsuits. Indeed, even the claims of Peter Andreyev and Jane Doe-1 are controlled by Atlas. *See* Suthammanont Cert. Ex. D (Sample Atlas Service Terms, Section 4(e)(i)-(ii)).

events. Plaintiffs' arguments to the contrary are invalid under principles of agency law and the Federal Arbitration Act ("FAA").

## ARGUMENT

### I. FULL NELSON INVESTIGATIONS ACTED AS PLAINTIFFS' AGENT AND BOUND THEM TO THE ARBITRATION AGREEMENT

#### A. Plaintiffs' Admissions in Discovery and their Supplemental Brief Establish an Agency Relationship

Plaintiffs cannot both admit hiring Full Nelson to perform their due diligence under Rule 11 and simultaneously dispute the existence of an agency relationship, as they attempt to do here.[2] An agency relationship is established "when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 203 N.J. 208, 220 (2010) (quoting *Restatement (Third) of Agency* § 1.01). The relationship hinges on three core elements: mutual assent, action on behalf of the principal, and control. The mere fact that Plaintiffs deny an agency relationship is not controlling. *See* Pl. Supp. Br. at 9. New Jersey agency law does not require a formal agreement—it looks to parties' objective conduct, not subjective intent or purported labels. *Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 337 (1993) (holding that closing attorney retained by purchaser was agent of title insurer based on parties' relationship, roles, and

---

[2] Atlas appears to have directly engaged Full Nelson by identifying it in response to Defendant's Interrogatories. Suthammanont Cert. Ex. A (Atlas Interrog. Resp. Nos. 3, 8).

Individual Plaintiffs did not identify Full Nelson. *See* Suthammanont Cert. Ex. B (Peter Andreyev Interrog. Resp.); *see also* Suthammanont Cert. Ex. C (Jane Doe-1 Interrog. Resp.). But Atlas's Service Terms—which Individual Plaintiffs agreed to when they registered for Atlas's services—make clear that Atlas is, in fact, Individual Plaintiffs' agent despite that they "retain" their Daniel's Law claims. It was Atlas's decision, under the Service Terms, to allow Individual Plaintiffs to elect to retain those claims. They utilize the same attorneys. Full Nelson ran a search for at least Plaintiff Andreyev's name on Defendant's search engine. Thus, Individual Plaintiffs are bound by Atlas's decision to utilize Full Nelson.

conduct). Here, Plaintiffs admit sufficient facts to satisfy each element of an agency relationship in their supplemental opposition and interrogatory responses.

First, Plaintiffs admit that Atlas engaged Full Nelson to access IntelX and gather the requisite evidence needed to support its purported claim. This admission fulfills the assent and action prongs, as courts have recognized that hiring an investigator for the purpose of collecting evidence to in connection with a lawsuit may create an agency relationship. *See e.g., Hawkins v. Harris*, 141 N.J. 207, 211 (1995) (extending litigation privilege to investigators employed by the parties or their representatives for litigation evidence gathering); *see also e.g., In re Complaint of PMD Enters. Inc.*, 215 F. Supp. 2d 519, 529-30 (D.N.J. 2002) (attorney discipline matter holding retaining counsel responsible for private investigator's conduct as an agent). Full Nelson accessed IntelX and ran searches not for its own purposes, but as a hired hand.

Plaintiffs did not disclose any information regarding the retainer agreement, formal or informal, between Atlas and Full Nelson.[3] In response to several interrogatories inquiring about "each Plaintiff, agent for Plaintiffs, or person associated with Plaintiffs" who accessed and utilized Defendant's Search Engine, however, Atlas identified investigators from Full Nelson as having performed such conduct. Specifically, Atlas admits that Full Nelson investigators (1) created both free and paid end-user accounts through the Website and (2) ran searches on IntelX both manually and via API, with an Atlas consultant helping configure the API. Suthammanont Cert. Ex. A (Atlas Interrog. Resp. Nos. 3, 4, 5, 8). These searches were performed to obtain "[d]ata supporting the allegations asserted in the Complaint."[4] *Id*. (Atlas Interrog. Resp. Nos. 3,

---

[3] While the Court ordered discovery for purposes of the pending motions in the form of interrogatories and depositions, it did not allow document discovery.

[4] Notably, neither of the Individual Plaintiffs in this case identified Full Nelson as their investigator. Regardless, Full Nelson searched for the information of Plaintiff Andreyev. Suthammanont Cert. Ex. A (Atlas Interrog. Resp. No. 3, List of Covered Persons Searched via API, p. 13); *id*. (Atlas

8). The action prong is therefore established on Plaintiffs' own words, as the sole reason that Full Nelson visited IntelX and used the Search Engine was to develop the evidentiary record for Plaintiffs' Complaint, and any data it retrieved forms the entire factual basis for Plaintiffs' claims. An agent that gathers, at a principal's behest, all evidence on which the principal sues acts on that principal's behalf. *See e.g., Hawkins*, 141 N.J. at 22; *see also e.g., Torraco v. Torraco*, 236 N.J. Super. 500, 502-03 (Ch. Div. 1989) (treating a detective hired to gather evidence as counsel's agent for work product purposes).

The control element is likewise satisfied. Direct control is not required. Rather, courts "must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent." *N.J. Lawyers' Fund for Client Prot.*, 203 N.J. at 220; *see also Sears*, 134 N.J. at 338 ("direct control of principal over agent is not absolutely necessary"). Examining the totality of the circumstances, requisite control is obvious: Full Nelson did not independently decide to search on Defendant's website, randomly select whose information to input, or do so at its own leisure. To the contrary, Plaintiffs and/or their counsel in this litigation defined and directed every material aspect of Full Nelson's investigation. They identified Defendant's IntelX website as the target and directed Full Nelson to search it. They supplied the subject matter of the searches—the personal information of specific Covered Persons and the Individual Plaintiffs—and the timing of the searches, after takedown notices were allegedly sent *en masse*. Suthammanont Cert. Ex. A (Atlas Interrog. Resp. Nos. 3, 8). Finally, Atlas embedded its own personnel to assist, as Atlas consultant Arnaud de

---

Interrog. Resp. No. 6, List of Covered Persons Searched Manually, p. 49). Defendants do not know the identity of Plaintiff Doe, but presumably her name was searched, as well. Given Atlas's role in selecting the Individual Plaintiffs, the common attorneys between the parties, and Full Nelson's search for at least Andreyev's name, it is clear that Full Nelson was the agent in fact for all Plaintiffs—even if the Individual Plaintiffs attempt to obfuscate it.

Saint Meloir participated in running searches via API. *Id*. (Atlas Interrog. Resp. No. 3). Plaintiffs cannot disclaim an agency relationship with the bare contention that Full Nelson "was simply an investigator hired to verify compliance" and "document a sampling of violations," Pl. Supp. Br. at 5, when such characterization confirms that Full Nelson acted at Plaintiffs' direction. The fact that Plaintiffs did not dictate every minutia is immaterial.

Finally, this agency relationship exists as to each and every Plaintiff. Atlas orchestrated the investigation as assignee of Covered Persons' claims and on behalf of Individual Plaintiffs,[5] and the searches targeted both Covered Persons' and Individual Plaintiffs' protected information under Daniel's Law. Having accepted the benefit of Full Nelson's investigative work as the foundation of their legal claims, Plaintiffs, including Individual Plaintiffs, cannot now disclaim the agent who performed it. By their own admissions, Full Nelson acted as the agent of every Plaintiff.

### B. Under New Jersey Law, Full Nelson Investigations had Actual Authority to Bind Plaintiffs to Defendant's Terms of Service

The Supreme Court has held that whether a non-signatory is bound to an arbitration agreement is governed by "traditional principles" of state law which "allow a contract to be enforced by or against nonparties" through a variety of theories. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Agency is one such theory. Therefore, the central question is not whether Plaintiffs assented to be bound by Defendant's Terms of Service, but whether New Jersey agency law necessarily holds Plaintiffs responsible for their agent's assent. It does.

An agent may bind a principal for such acts within its actual or apparent authority. *N.J. Lawyers' Fund for Client Prot.*, 203 N.J. at 220. Actual authority stems from the principal's manifestations to the agent; apparent authority arises when a third party reasonably believes the

[5] *See supra*, n. 1.

agent is authorized to act on the principal's behalf. *Id.* (citing *Restatement (Third) of Agency* §§ 2.01, 2.03). Full Nelson bound Plaintiffs to the Arbitration Agreement in Defendant's Terms of Service under actual authority.

Actual authority exists "when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* (citing *Restatement (Third) of Agency* § 2.01). Plaintiffs cite this same standard but waive it off under the excuse that "Full Nelson was hired to *investigate*." Pl. Supp. at 9 (emphasis in original). In doing so, Plaintiffs ignore a key part of the law: actual authority may be implied. An agent is authorized to do "what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts." *Lewis v. Travelers Ins. Co.*, 51 N.J. 244, 251 (1968) (insurance company's uniform practice of backdating policies to the application date impliedly authorized agents to issue interim contracts pending the company's final decision on applications); *see also Harmon v. BMW of North America*, No. A-0006-23, 2024 WL 524619 (N.J. App. Div. Dec. 30, 2024). Thus, when a principal directs an agent to accomplish some task, the agent is necessarily authorized to take any steps indispensable to carry out that task.

This standard is objective and agent-focused—asking what the agent reasonably understood of the principal's instructions, not what the principal subjectively intended. *See Lewis,* 51 N.J. at 251 ("if the authorization is ambiguous, the agent has authority to act in accordance with what he reasonably believes to be the wish of the principal even though it is contrary to the principal's actual intent"). Here, a two-step analysis establishes that Full Nelson had actual authority to bind Plaintiffs to the Arbitration Agreement. *First*, Atlas directed Full

Nelson to register and utilize IntelX for the purpose of conducting certain targeted searches. Suthammanont Cert. Ex. A (Atlas Interrog. Resp. Nos. 3, 4, 5, 8). *Second*, assent to Defendant's Terms of Service was the indispensable means to completing the agent's task, as there can be no access to full search results through IntelX without registering as a paid end-user and checking the box "I agree to the Terms of Service & Privacy Policy." Declaration of Peter Kleissner ("Kleissner Decl.") (DE 26-4) at ¶¶ 17, 24. Because accepting the Terms of Service, and the Arbitration Agreement within, was the only way to accomplish the main task Atlas assigned, Full Nelson's authority to perform that task necessarily carried implied authority to assent. Any agent in Full Nelson's position would have done the same to carry out their principal's instructions.

Indeed, New Jersey courts have recognized that agents can bind principals to arbitration agreements. *Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560, 569 (App. Div. 2007) (collecting cases); *see also In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148, 154 (3d Cir. 2022) (applying substantively identical Pennsylvania agency law: "A principal will be bound by his agent's acts—including an agreement to arbitrate—if the agent has actual or apparent authority."). An agent's failure to disclose the existence of an arbitration agreement, altogether, does not defeat that. *In re Rotavirus*, 30 F.4th at 155-156; *see also NCP Litig. Tr. v. KPMG LLP*, 187 N.J. 353, 366-67 (2006) (under New Jersey's imputation doctrine, "a principal is deemed to know facts that are known to its agent" and "cannot avoid responsibility through ignorance"). Thus, Plaintiffs' contention that Atlas is "not presently aware of any terms or agreements that were accepted" while obtaining access to IntelX and its search results "by any persons involved in gathering evidence" is irrelevant. *See* Pl. Supp. Br. at 5 (quoting Atlas Interrog. Resp. No. 3). This professed ignorance speaks only "to the *adequacy* of [the agent's] performance," it has no bearing on the existence or scope of an agency relationship. *See In re Rotavirus Vaccines*, 30

F.4th at 156 (emphasis in original). The imputation doctrine specifically prevents what Plaintiffs attempt to accomplish here—"obtaining benefits through their agents while avoiding the consequences of agent" action. *NCP Litig. Trust*, 187 N.J. at 367. Plaintiffs remain "bound to arbitrate because [they] granted actual authority" to Full Nelson, *In re Rotavirus Vaccines*, 30 F.4th at 156, and Full Nelson undeniably assented to Defendant's Terms of Service.

### C. Alternatively, Plaintiffs Ratified Assent to Defendant's Terms of Service by Commencing this Lawsuit

Assuming *arguendo* that Full Nelson lacked authority to assent to Defendant's Terms of Service at the time of its investigation, Plaintiffs are still bound by Full Nelson's conduct under the doctrine of ratification. It is well-established under New Jersey law that a principal who approves or accepts the benefits of an agent's prior act may be deemed to ratify it and be bound by it, "as if originally authorized by him." *Thermo Contracting Corp. v. Bank of N.J.*, 69 N.J. 352, 360-61 (1976) (applying agency law principles to dispute over negotiable instruments). Ratification is all or nothing—Plaintiffs "cannot pick and choose only what is advantageous," they must "ratify the entire transaction or repudiate it entirely." *Clarkson v. Selected Risks Ins. Co.*, 170 N.J. Super. 373, 379 (Law Div. 1979) (quoting *Thermo Contracting Corp.*) (holding that principal ratified agent's unauthorized agreement by filing suit upon it).

Here, Plaintiffs ratified Full Nelson's conduct: Plaintiffs built their entire suit from evidence allegedly uncovered through Full Nelson's investigation into IntelX. As spelled out by Plaintiffs, that investigation involved creating free and paid end-user accounts on Defendant's Website and running searches both manually and via API. Suthammanont Cert. Ex. A (Atlas Interrog. Resp. Nos. 3, 4, 5, 8). Plaintiffs' full access to search results could only be possible if their agent assented to Defendant's Terms of Service. Kleissner Decl. (DE 26-4) at ¶¶ 17, 24.

Having embraced the benefit of their agent's IntelX access, Plaintiffs cannot now disavow the key act permitting that access.

Nor can Plaintiffs claim that they lacked knowledge of any material facts in defense. *See Advanced Disposal Servs. E., Inc. v. N.L.R.B.*, 820 F.3d 592, 603 (3d Cir. 2016) (the ratifying party must have knowledge of all material facts relating to their decision). Plaintiffs confess that Atlas Chief Executive Officer Matt Adkisson personally "captured screenshots of the Terms of Service" on at least two occasions prior to filing the Complaint. Suthammanont Cert. Ex. A (Atlas Interrog. Resp. No. 6). Atlas therefore possessed full knowledge of the Terms of Service, including the disputed Arbitration Agreement within, and still chose to file suit on the fruits of Full Nelson's access and assent. On this alternative and independent ground, Plaintiffs must be compelled to arbitrate.

## II. THE ARBITRATION AGREEMENT IS ENFORCEABLE AGAINST ATLAS AS THE ASSIGNEE OF INDIVIDUAL DANIEL'S LAW CLAIMS

The second legal flaw in Plaintiff's supplemental opposition is that it is premised upon the idea that "the *Covered Persons* and *Individual Plaintiffs* [are] the real parties in interest" and that those individuals "never manifested assent to arbitration." Pl. Supp. Br. at 7. But Atlas does not inform the Court of its directly contrary position in related litigation that *Atlas is the real party in interest*—much less explain the contradiction. *See* Pl. Remand Br. at 20 (DE 33-1 at 34) ("The nature of Atlas's complete assignments confirms its position as a real party in interest . . ."). Nor does it inform the Court of directly contradictory authority <u>from this Court</u> in related Daniel's Law litigation that Atlas is the real party in interest. *Atlas Data Privacy Corp. v. Blackbaud, Inc.*, 757 F.Supp.3d 605, 614 (D.N.J. Nov. 20, 2024) ("Atlas, as the assignee, is the real party in interest . . .").

Thus, it is of no moment that Atlas's assignors purportedly did not assent to arbitration. As Atlas itself noted, the assignors provided Atlas with "the exclusive right to bring such civil enforcement actions anywhere in the world with respect to the Assigned Claim." Pl. Remand Br. at 20. This Court held the same. *Blackbaud*, 757 F.Supp.3d at 614. As demonstrated above, Plaintiffs assented to arbitration through their agent. Accordingly, the arbitration provision should be enforced.

## III. PLAINTIFFS' ARGUMENT REGARDING WHEN DANIEL'S LAW CLAIMS ACCRUED IS A RED HERRING, FORECLOSED BY THE FEDERAL ARBITRATION ACT

Plaintiffs make much of the fact that their agent's registration and use of Defendant's Website occurred *after* any alleged Daniel's Law claims accrued. *See* Pl. Supp. Br. at 8-9, 13-14. But the timing of an agreement to arbitrate in relation to the accrual of a claim is not relevant to enforceability under the FAA.[6] The FAA's core provision, 9 U.S.C.A. § 2, explicitly validates provisions to arbitrate both future disputes ("a controversy thereafter arising") and past or present ones ("an existing controversy"). Courts are clear that arbitration provisions apply retroactively. *Mayer v. Verizon New Jersey, Inc.*, No. 13-CV-3980, 2014 WL 12789832, at *2, *2 n.6 (D.N.J. May 6, 2014) (recognizing "arbitration provisions apply retroactively," even when added via contractual amendment, based on Third Circuit precedent).

Likewise, statutory claims may be arbitrable even where the alleged violation predates entry into the agreement. The Supreme Court has repeatedly stated that statutory claims may be the subject of a valid arbitration agreement, enforceable under the FAA; the Third Circuit has

[6] It is also a novel argument, raised for the first instance in Plaintiff's supplemental opposition. Prior to the Court ordering limited discovery on the issue of arbitrability, Plaintiffs withheld all real information about the sequence of events leading to access of Defendant's Website and instead crafted a legal argument based on facts that did not occur. *See* Pl. Br. in Opp. to Mot. to Compel Arb. at 5 n.2 (DE 31 at 10).

also applied this precedent. *See* Def. Br. in Supp. of Mot. to Compel Arb. at 2 (DE 35 at 6). Plaintiffs provide no reason or case law to support their contention that, based on their statutory nature, Daniel's Law claims should be subject to timing restrictions that do not burden other claims under the FAA. Therefore, the arbitrability of Plaintiffs' claims cannot be defeated based on the timing of when Full Nelson gave assent.

## IV. THE CZECH CHOICE-OF-LAW PROVISION IS VALID AND ENFORCEABLE

Plaintiffs also argue that the Court must ignore the choice-of-law provision in the parties' agreement in favor of New Jersey law, relying on *Adler v. Gruma Corp.*, 135 F.4th 55, 71 (3d Cir. 2025). Pl. Supp. Br. at 14-15. But Plaintiffs fail to inform the Court in their parenthetical describing *Adler* that the only reason the conflict-of-law analysis as to arbitrability arose was because the Federal Arbitration Act did not apply to the employment contract in that case. *Adler*, 135 F.4th at 64 (FAA does not apply "as relevant here" to certain employment contracts). If the FAA does apply, as *Adler* instructs, the FAA preempts any state law that "would prevent" enforcement of an arbitration agreement.[7] *Id.* at 65.

Notably, in their Opposition Brief, Plaintiffs stated their challenge was to the scope of the arbitration provision, not the "validity of the provision or formation" of the agreement to arbitrate.[8] Pl. Br. in Opp. to Mot. to Compel Arb. at 15-16 (DE 31 at 20-21). Because the agreement to arbitrate was valid, the parties' choice of Czech law to govern the dispute must be honored. *See* Def. Reply at 11-12 (DE 35 at 15-16) (citing *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 522, 523 n.5 (3d Cir. 2019) ("applicable state law governs the

---

[7] Defendant explained as much in its Reply Brief in Support of its Motion to Compel Arbitration ("Def. Reply") at 11-14 (DE 35 at 15-18).

[8] For this reason, Plaintiffs' citation to *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir. 2009) is entirely misplaced. *See* Pl. Supp. Br. at 14. First, plaintiff was challenging the validity of the agreement to arbitrate, *Kaneff*, 587 F.3d at 621, which Plaintiffs here expressly said they were not doing. Second, *Kaneff* was applying Pennsylvania law, which is irrelevant to the issues here. *Id.*

scope of an arbitration provision"). Even if New Jersey law governed the dispute, New Jersey courts broadly interpret clauses such as those here (i.e., "All disputes arising from this Agreement and in connection therewith. . .") "as indicative of an extremely broad agreement to arbitrate any dispute relating in any way to the contract." *In re Remicade*, 938 F.3d at 523 (internal quotations and citations omitted).

In sum, Plaintiffs failed to demonstrate a conflict of law between Czech, federal, or New Jersey law sufficient to trigger a conflict-of-laws analysis because the result under each forum is the same: the dispute must be arbitrated. Regardless, the issue is irrelevant under choice-of-law principles, as both the U.S. through the Federal Arbitration Act and the Czech Republic give effect to the parties' choice of an arbitral forum. *See* Def. Reply at 11-12 (DE 35 at 15-16).

The Supreme Court's 1985 dicta footnote in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985), cited by Plaintiffs in their opposition brief and again in their supplemental brief, far from supporting Plaintiffs' position that application of Czech law would extinguish their claims, supports the relief requested by Defendant. First, Plaintiffs offer no proof that any Daniel's Law claims would be extinguished in a Czech arbitration proceeding under Czech law, nor did Defendant "admit" such a result as contended by Plaintiffs. Pl. Supp. Br. at 13.[9] That Defendant's conduct is legal in the Czech Republic—which Plaintiffs do not dispute—says nothing about whether and how a Czech arbitrator and Czech law would treat a Daniel's Law claim asserted in arbitration there. Second, the footnote applies to a "prospective waiver" of a party's claim. Here, Plaintiffs contend that their claims were "pre-existing[.]" Pl. Supp. Br. at 13. Thus, Plaintiffs affirmatively determined to subject their Daniel's

[9] Defendant rebutted this line of argument in its Reply at 8-9 (DE 35 at 12-13), but despite the additional time granted for discovery, Plaintiffs still offer no evidence how Czech law would treat their Daniel's Law claims.

Law claims to Czech law and arbitration—a clearly different factual circumstance than in *Mitsubishi*. *Mitsubishi*, 473 U.S. at 617-18 (arbitration agreement entered *prior to* antitrust claim arising). Finally, the footnote makes clear that, even if the Court's concerns about public policy in that case applied (they do not), the proper sequencing is to refer the matter to arbitration followed by an application to reinstate the court action. *Id*. at 637 n.19.

## **CONCLUSION**

For the reasons set forth above and in Defendant's moving papers, this Court should direct Plaintiffs' claims to arbitration in the Czech Republic through an order dismissing this litigation, or in the alternative, staying all claims pending such arbitration.

August 14, 2026

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
Victor Suthammanont
Kostelanetz LLP
7 World Trade Center, 34th Floor
New York, NY 10007
(212) 719-2649
vsuthammanont@kostelanetz.com