**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, and PETER ANDREYEV,**

**Plaintiffs,**

**-against-**

**KLEISSNER INVESTMENTS S.R.O., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,**

**Defendants.**

**25 Civ. 17065 (HB)**

**ECF CASE**

# SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
Victor Suthammanont
Kostelanetz LLP
7 World Trade Center, 34th Floor
New York, NY 10007

# TABLE OF CONTENTS


Table of Authorities ........ ii

Preliminary Statement ........ 1

Facts ........ 3

I. Plaintiffs Miscontrue The Discovery Record ........ 3

Argument ........ 6

I. Plaintiffs Fail To Meet their Burden To Establish Specific Jurisdiction ........ 6

A. Defendant's Incidental Contacts with New Jersey Are Not Purposeful Availment ........ 6

i. The Court's Prior Rulings Do Not Support Finding Jurisdiction Here ........ 9

B. Exercise of Jurisdiction Offends Traditional Notions of Fairness and Substantial Justice ........ 12

Conclusion ........ 15

# TABLE OF AUTHORITIES

## Cases

*Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332 (D.N.J. 2000)......... 9

*Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629 (D.N.J. 2004)............................. 9

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102 (1987) .......... 13

*Atlas Data Privacy Corp. v. Quantarium Alliance, LLC*, No. 24-11023,
2026 WL 765716 (D.N.J. Mar. 18, 2026) ...............................................................10, 11

*Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322 (D.N.J. 2024) .................. 1, 15

*Atlas Data Privacy Corp. v. We Inform, LLC*, No. 091145,
2026 WL 2327966 (N.J. Aug. 12, 2026)................................................................. 1, 15

*Atlas Data Privacy Corp. v. We Inform, LLC*, No. 25-1555,
2025 WL 3058688 (3d Cir. Sept. 2, 2025)..................................................................... 15

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................ 3

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir. 2020).................... 15

*Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743 (D.N.J. 1999) ............................................ 10

*Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792 (D.N.J. 1996)....................................... 13

*Fisher v. Teva PFC SRL*, 212 F. App'x 72 (3d Cir. 2006) ........................................................... 6

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) ................ 12, 13

*Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024)............................................................ 12

*Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021) ...................................................................... 8, 13

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ....................................................... 6, 9

*Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462 (D.N.J. 2021) ............................................ 7, 9

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) ........................................................................ 1

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007) ................................ 8, 13

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ............................................ 6, 7

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).............................................. 14

Defendant Kleissner Investments, S.R.O. ("Defendant" or "Kleissner") respectfully submits this Supplemental Brief in Support of its Motion to Dismiss.[1]

**PRELIMINARY STATEMENT**

As noted in Defendant's Reply Brief in Support of its Motion to Dismiss ("Def. Reply"), Plaintiff bears the burden of establishing sufficient facts to demonstrate personal jurisdiction exists. *Id*. at 2 (DE 36 at 6) (citing *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007)). The jurisdictional discovery in this case confirms what Kleissner contended all along—Plaintiffs cannot meet their burden because Defendant never purposefully availed itself of the jurisdiction.

The record (entirely proffered by Defendant despite Plaintiffs' burden to demonstrate a prima facie case for jurisdiction and opportunity to do so in their Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp. Br.") (DE 32)) demonstrated that Kleissner Investments lacked minimum contacts with New Jersey, even prior to jurisdictional discovery:

- Defendant operated solely from the Czech Republic using servers solely located there. Decl. of Peter Kleissner (DE 27-4) ¶¶ 4-7.
- Defendant did not advertise in or target marketing efforts towards New Jersey. *Id*. ¶¶ 6, 29.
- Only three of Defendant's end-user customers—0.22%—had addresses in New Jersey. *Id.* ¶ 30; Supp. Kleissner Decl. ¶¶ 4-5.
- Those customers with New Jersey billing addresses comprised only 0.42% of Defendant's revenue. Decl. of Peter Kleissner (DE 27-4) ¶ 31.

---

[1] This brief addresses the issue of personal jurisdiction only. In its original moving papers, however, Defendant argued for dismissal on the grounds that Daniel's Law is facially unconstitutional under the First Amendment. Def. Memo. of Law in Supp. of Mot. to Dismiss ("Def. Br.") at 20 (DE 27-1 at 25). Given the recent ruling of the New Jersey Supreme Court that Daniel's Law is a strict-liability statute, *Atlas Data Privacy Corp. v. We Inform, LLC*, No. 091145, 2026 WL 2327966 (N.J. Aug. 12, 2026), it is, in fact, unconstitutional. *See Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 341 (D.N.J. 2024) (a strict-liability standard "would likely render the law unconstitutional [and] could lead to absurd results").

Jurisdictional discovery has confirmed the lack of minimum contacts. For example, on the last point above, even the three end-user customers with New Jersey billing addresses were not actually located in New Jersey. *See* Certification of Hannah Ambinder ("Ambinder Cert.") Ex. A (Def. Interrog. Resp. No. 2). The relevant customers used New Jersey billing addresses in registering for Defendant's search-engine product (on a Czech Republic website pursuant to an agreement that contained Czech choice-of-law and choice-of-forum provisions), but the users of the product were not situated in New Jersey. *Id.* As noted in its moving papers, Defendant was not specifically aware that it had any customers from New Jersey (whether end users or billing addresses) prior to the filing of the Complaint. Decl. of Peter Kleissner (DE 27-4) ¶ 28.

Moreover, Defendant does not advertise or market its product within New Jersey (or anywhere), Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 4); does not specifically target New Jersey information in its web scraping or data collection activities, *id.* (Def. Interrog. Resp. No. 6); has not executed a contract within or required to be performed within New Jersey, *id.* (Def. Interrog. Resp. No. 8); has not commenced litigation within New Jersey, *id.* (Def. Interrog. Resp. No. 9); has not obtained any tax benefits from New Jersey, *id.* (Def. Interrog. Resp. No. 11); and does not maintain New Jersey-specific databases for searching. Decl. of Peter Kleissner (DE 27-4) ¶ 15 (end-users cannot search Intelligence X by address).

To put the matter in analog terms, imagine a Prague-based library collects, from somewhere in the world, a phone book of U.S. telephone numbers, which happens to include New Jersey telephone numbers. The library does not advertise its collection anywhere in the world. In Prague, it sells access to the library containing the phone book to an individual who traveled to the Czech Republic to view it. The access contract mandates that Czech law and forum will apply to any disputes concerning the library. The individual, who lives in Florida, has

the library's invoice sent to a New Jersey address for whatever reason. A plaintiff then attempts to haul the Prague library into court in New Jersey arguing that the mere knowledge that its collection contained New Jersey data and the delivery of *an invoice* (not even the actual product) into New Jersey meant that the library purposefully availed itself of New Jersey's laws. A reasonable court would not find that personal jurisdiction existed in those circumstances.

At its core, this case is no different. Other than the incidental contacts that arise from operating a website generally accessible from anywhere in the world, Defendant had no purposeful or specific contact with New Jersey. These are not sufficient to assert personal jurisdiction in this case. Because of the manifest lack of contact, Plaintiffs scrape together threads of tangential and incidental contacts, unsupported conclusions, and misapprehensions of the evidence to try to tie Defendant to the forum. The weakness of their arguments confirms what the record demonstrates—there are not enough contacts to find specific jurisdiction here.[2]

## FACTS

### I. PLAINTIFFS MISCONTRUE THE DISCOVERY RECORD

Plaintiffs' supplemental submissions substantially rest on misunderstanding or mischaracterizing what the jurisdictional discovery record revealed. At core, their entire argument that jurisdiction is appropriate—already threadbare—dissolves in light of the true facts.

*First*, while a reseller located in New Jersey sourced Defendant's products for the reseller's clients in 2024 and 2025, the end-users of those licenses were not located in New

---

[2] Having disclaimed (and therefore waived) application of the "effects" test in *Calder v. Jones*, 465 U.S. 783 (1984), as a basis for jurisdiction in their opposition brief, Pl. Opp. Br. at 3 (DE 32 at 10), Plaintiffs attempt to resurrect it in supplemental briefing to "preserve their arguments[.]" Pl. Supp. Br. in Opp. to Mot. to Dismiss ("Pl. Supp. Br.") at 2 (DE 53 at 5). But for the reasons discussed in Defendant's moving papers, there is even less evidence satisfying the *Calder* test than there is evidence of sufficient "minimum contacts" and that Plaintiffs' claims arise from or relate to those contacts. Def. Br. at 15 n.5 (DE 27-1 at 20 n.5).

Jersey.[3] Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 2). Further, the reseller is not an agent or distributor for Defendant—it is *retained by the end-users* to source digital-security services and products. Third Kleissner Decl. ¶¶ 4-8. Put simply, the reseller's clients engage it to find products its clients need, and the reseller, in turn, sought out Defendant in the Czech Republic to purchase the Intelligence X license on behalf of its non-New Jersey principles, who were listed on each license, in a handful of transactions. As such, any connection to New Jersey is entirely fortuitous and irrelevant to the underlying commercial transactions.

*Second*, Plaintiffs fundamentally confuse, and in doing so misrepresent, the facts concerning Defendant's subscription to WHOIS data. *See* Pl. Supp. Br. at 7 (DE 53 at 10). WHOIS data is publicly available information voluntarily provided by individuals or entities when they register for a website domain.[4] Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 5). By acquiring global WHOIS data, Defendant is not specifically targeting New Jersey (or any other jurisdiction on Earth from where individuals and entities register domain names). Nor is Defendant repackaging WHOIS data—which may contain data from any variety of worldwide

---

[3] Each of the end-user licenses specifies the location and address of the end-user in those instances. This practice was in place prior to the commencement of this litigation. Third Declaration of Peter Kleissner ("Third Kleissner Decl.") ¶¶ 9-10.

[4] *See* WHOIS Background at https://atlarge.icann.org/topics/whois/background. ICANN administers the WHOIS protocol. *Id.* Notably, ICANN notes that individuals and entities registering domain names "are obligated to provide and maintain accurate, complete WHOIS data" and "the data is publicly available." *Id.* The decision to provide an individual's home address or telephone number is most often optional, as "some registries and registrars offer privacy or proxy services that show only the contact information of the service to shield registrants from revealing their true identities in the database." *Id.* Thus, to the extent that WHOIS contains data protected by Daniel's Law (which Plaintiffs have not demonstrated), it is because the relevant individual elected to voluntarily provide it.

jurisdictions, with no specific connection to New Jersey—for purposes of jurisdiction-specific searches on Intelligence X.[5] Third Kleissner Decl. ¶¶ 15-16.

*Third,* Plaintiffs misunderstand how Defendant's "buckets" work. Buckets are not, as Plaintiffs suggest, curated datasets. *See* Pl. Supp. Brief at 5-6 (DE 53 at 8-9). Rather, a "bucket" is simply an internal category used by Defendant to organize the published data sources that its web crawler indexes. Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 6). Each bucket corresponds to a set of top-level web domains or data types, and functions as a back-end taxonomy instructing Intelligence X's web crawler where to look. *Id.*; Third Kleissner Decl. ¶¶ 11-13. As explained below, the fact the web crawler maintains buckets corresponding with "U.S. top-level domains" says nothing about Defendant's alleged forum contacts *targeting New Jersey*. This is especially true because within those domains, it is essentially impossible to determine what information, if any, was captured from New Jersey-specific entities or websites. Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 6); *see also* Third Kleissner Decl. ¶ 13.

Plaintiffs' tortured reading of the jurisdictional discovery record to misconstrue the above facts demonstrates that there are no facts supporting that Defendant purposefully availed itself of New Jersey's jurisdiction.

---

[5] On the output side, Intelligence X provides a search engine. Kleissner Decl. (DE 27-4) ¶¶ 9-16. The fact that publicly available data is used as an *input* for indexing purposes does not transform Defendant into a so-called "data broker" any more than Google is a "data broker," as all search results returned constitute information that has been independently published by others online. Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 6).

On the input side, Intelligence X uses publicly available data—such as newly registered domain lists and/or WHOIS records—as input for its crawling and indexing process. Kleissner Decl. (DE 27-4) ¶¶ 9-16. This input process is fundamentally no different from Google, which also crawls the open web, indexes data, and makes it searchable. Kleissner Decl. (DE 27-4) ¶¶ 9-16. In addition to establishing that there is no targeting of New Jersey data, these facts confirm immunity under the Communications Decency Act. S*ee* Def. Br. at 20-23 (DE 27-1 at 25-28).

# ARGUMENT

## I. PLAINTIFFS FAIL TO MEET THEIR BURDEN TO ESTABLISH SPECIFIC JURISDICTION

### A. Defendant's Incidental Contacts with New Jersey Are Not Purposeful Availment

Incidental contacts with the forum state, which may arise in rare circumstances due to Defendant's operation of a generally accessible website, still do not constitute purposeful availment as needed to establish specific jurisdiction. *See* Def. Br. at 10 (DE 27-1 at 15) (collecting cases). Defendant noted its attenuated New Jersey contacts even before jurisdictional discovery was ordered in this matter. Supp. Kleissner Decl. ¶¶ 4-5. Now that the record has been developed, it confirms that those New Jersey contacts were *more* attenuated than even Defendant initially understood. Despite billing addresses in the state, none of the end-users were actually located there. Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 2). This forecloses the exercise of personal jurisdiction. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 (3d Cir. 2003); *see also* Def. Br. at 10-16 (DE 27-1 at 15-21).

Plaintiffs exaggerate the significance of Defendant's potential contacts with the United States, as if contacts with the United State equate to contacts in New Jersey. They do not—for "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (defendant's intent to serve the U.S. market does not establish purposeful availment of New Jersey specifically); *see also Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006) (foreign company's FDA approval to market and sell in "all fifty states, not New Jersey alone" is not New Jersey contact for jurisdictional purposes). As explained in prior briefing, the mere operation of a generally accessible website does not constitute purposeful availment. Def. Br. at 10-11 (DE 27-1 at 15-16). Due process demands "something more"—evidence that "defendant *directed its activity towards the forum*

*state*"—and the record here shows none. *Toys "R" Us, Inc.*, 318 F.3d at 452 (emphasis in original). Courts in this District have applied this precedent to deny jurisdiction against foreign operators of generally accessible websites. *Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 470-71 (D.N.J. 2021) (holding that foreign airline's generally accessible website, through which New Jersey residents buy tickets, cannot be the basis for jurisdiction due to lack of direct targeting by defendant).

Measured against this settled law, Plaintiffs' theories collapse. For example, Plaintiffs insist that the Website's "bucket" architecture proves that Defendant knowingly and actively possessed the data of New Jersey residents. *See* Pl. Supp. Br. at 5-6 (DE 53 at 8-9). But the discovery record shows that Defendant's technology crawls the web generally and uses "buckets" to organize and index various domains, including certain U.S. top-level domains—*not specifically New Jersey ones*. Indeed, it is virtually impossible "to determine what information, if any, is captured from New Jersey entities or New Jersey government websites" by Defendant's web crawler. Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 6); *see also* Third Kleissner Decl. ¶ 13. Using a web crawler to index the content of worldwide or U.S. domains is not conduct directed towards New Jersey, any more than hosting a generally accessible website alone would be conduct directed towards New Jersey.[6] *See*, *e.g.*, *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021). Without more, neither establishes specific jurisdiction.

---

[6] Plaintiffs' supplemental brief turns the jurisdictional test on its head, appearing to require that, in the lack of a defendant actively disclaiming or avoiding the jurisdiction, *any* incidental contact is sufficient to find purposeful availment. But this "gotcha" test is not the law. Even if the Court were to entertain it—and it should not—Defendant well made clear that it sought to remain only within the jurisdiction of the Czech Republic by only operating from Prague and including both a Czech choice-of-law and choice-of-forum provision in its user agreements. *See* Kleissner Decl. (DE 27-4) ¶ 5; Kleissner Decl. Ex. A (DE 27-5) ¶ 39 (Terms of Service).

Plaintiffs' arguments regarding WHOIS data and its modest subscription cost are also unavailing. *See* Pl. Supp. Br. at 7, 10 (DE 53 at 10, 13). As demonstrated in Defendant's moving papers and jurisdictional discovery, no user (or even Defendant itself) can compile a list of all "New Jersey" home address or telephone data indexed by Defendant's search engine or gathered from WHOIS using Defendant's products. The fact that WHOIS, as an underlying source, costs fifty dollars per month is irrelevant as none of that money is directed towards New Jersey or paid for the purpose of collecting New Jersey information. Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 5). Further, Plaintiff makes no showing whatsoever concerning whether any WHOIS data constitutes information protected Daniel's Law. *Id*. Thus, even if the acquisition of *global* data can be construed as somehow specifically targeting New Jersey (which it cannot), there is no indication that Plaintiffs' claims under Daniel's Law arise from that contact. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 323 (3d Cir. 2007). All of this is to say nothing of the fact that WHOIS data comprises less than 0.005% of the data indexed by Defendant. Third Kleissner Decl. ¶ 19

Finally, Defendant's relationship with [redacted] likewise does not constitute purposeful availment. [redacted] initiated the customer relationship, seeking out Defendant (in the Czech Republic) to purchase a handful of product licenses to resell to its own clients, presumably based on *their* wants and needs rather than the instructions of Kleissner. Ambinder Cert. Ex. A (Def. Interrog. Resp. No. 2). Each such license was sold to an end-user located outside of New Jersey. *Id*. Thus, [redacted] was acting at the behest of its non-New Jersey clients, not as Defendant's distributor. Even if [redacted] were Defendant's distributor, this would not be enough for personal jurisdiction in this case. *See J. McIntyre*, 564 U.S. at 886 (no conduct directed at New Jersey despite distribution agreement targeting the United States and that underlying

product "ended up in New Jersey"). A forum-based reseller's unilateral decision to seek out a foreign entity for a small volume of transactions is exactly the kind of "random, fortuitous, or attenuated" third-party contact that cannot establish purposeful availment in accordance with due process, as Defendant itself took no deliberate action. *See Kim*, 513 F. Supp. 3d at 471.

An exercise of jurisdiction here would be an absurd outlier result, as caselaw is replete with findings that there was no purposeful availment with similar or even greater contacts with the forum. *See id*. at 470-471 (no jurisdiction over foreign airline whose website a New Jersey resident used to purchased tickets from the forum state); *Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332, 336-37 (D.N.J. 2000) (no jurisdiction over foreign website operator whose site is *hosted on New Jersey servers*); *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 632, 635 (D.N.J. 2004) (no jurisdiction over payroll service provider that operates a generally accessible website and has no New Jersey clients, but performs hundreds of annual tax filings with the State of New Jersey per year); *Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 748-50 (D.N.J. 1999) (no jurisdiction over out-of-state hotel operating a generally accessible website and engaged in nationwide advertising, including promotional mailings to certain New Jersey residents). Nor does this Court's prior jurisdictional rulings as to other defendants in Atlas litigations help it.

**i. The Court's Prior Rulings Do Not Support Finding Jurisdiction Here**

Plaintiffs' argument that specific jurisdiction may be exercised against Defendant in this case relies heavily on this Court's opinion in *Atlas Data Privacy Corp. v. Quantarium Alliance, LLC*, No. 24-11023, 2026 WL 765716 (D.N.J. Mar. 18, 2026). But *Quantarium Alliance* demonstrates exactly why specific personal jurisdiction may not be exercised against Kleissner Investments, as explained in Defendant's original reply brief and reconfirmed by jurisdictional discovery. *See* Def. Reply at 4-5 (DE 36 at 8-9).

*First*, the business and product of Kleissner Investments is distinguishable from the defendants the Court found availed themselves of New Jersey's jurisdiction in *Quantarium Alliance*. Those defendants included real-estate data-analytics firms (Quantarium Alliance, LLC and Equimine, Inc.), an address look-up and mailing list company (Melissa Data Corp.), "people search" companies (Newber, Inc. and Innovative Web Solutions, LLC), a reverse look-up website (Spy Dialer), and another data provider (PublicNSA, LLC). 2026 WL 765716 at *2-3. Based on the Court's decision, none of these entities appear to operate by simply republishing—without modification or re-compilation—data scraped from elsewhere on the internet such as Defendant's search engine does. *See id*. Further, the factors that contributed to the Court's finding of specific jurisdiction in *Quantanium Alliance* do not apply to Defendant Kleissner.

For example, the Court found that the *Quantarium Alliance* defendants sold New Jersey information to New Jersey residents. *Id.* at *7. It found that the defendants knew or had access to that information "before a user accesses the website." *Id.* It found that the data defendants "collected and made available in New Jersey and elsewhere . . . constitutes the very product of" defendants. *Id.* But Kleissner cannot search for "New Jersey" information in its index or data, much less know whether it was selling access to such information "before a user accesses the website." The factual record is solid that (1) Defendant and users cannot search on Intelligence X by geographical location, Kleissner Decl. (DE 27-4) ¶ 15; (2) Defendant does not recompile or sell any specific datasets (much less any that can be targeted at New Jersey), *id.* ¶ 13; and (3) there is no evidence that *any user other than Plaintiffs' agent* (located in Florida) ever performed a search designed to obtain information about anyone in New Jersey, Ambinder Cert. Ex. B (Atlas Interrog. Resp. No. 3), much less informed Defendant of that intention. Defendant did not knowingly sell its services to any end-user in New Jersey. Kleissner Decl. (DE 27-4) ¶ 28. It

knew that the New Jersey reseller was acquiring licenses for *non-New Jersey* end-users. Finally, unlike the *Quantarium Alliance* defendants, "the information collected and made available in New Jersey" is not "the very product of" Kleissner Investments—its product is the search engine. All data available through Defendant is publicly available elsewhere on the internet in the exact form as it can be accessed from Defendant's search engine. Defendant's product is a *means of searching through such publicly available data*, not the data itself.

Second, despite the sparsity of contacts revealed by jurisdictional discovery, Plaintiffs make no real attempt to address how this Court's ruling in *Quantarium Alliance* comports with *Hasson*'s admonition that "arising out of" connection requires a relatedness "inversely proportional to the overall intensity of the defendant's forum contacts." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 193 (3d Cir. 2024). At best, Plaintiffs paraphrase *Quantarium Alliance*'s language to misrepresent that Defendant's "forum contacts are the product: Defendant's collection, organization, and sale of New Jersey residents' personal information and sale of the product to New Jersey customers." Pl. Supp. Br. at 14 (DE 53 at 17). But jurisdictional discovery confirms that this statement is not true. Defendant does not organize or process the data it collects in a means that targets New Jersey or its residents. Further, jurisdictional discovery confirmed that Defendant does not advertise its product in New Jersey, was not aware of New Jersey billing addresses until after this litigation commenced and had no New Jersey end-users. Not only is this fewer contacts than present in *Hasson*, but the facts here do not approach those present in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) (Ford advertised, sold, and serviced automobiles underlying the claim in the jurisdiction). Plaintiffs ignore entirely the import of cases such as *Hepp*, where the Third Circuit found no jurisdiction despite that the actionable data in that case could be viewed from the forum because, like here, there was no

indication that the data was used in connection with the forum specifically or that it was gathered from within the forum. 14 F.4th at 208.

### B. Exercise of Jurisdiction Offends Traditional Notions of Fairness and Substantial Justice

Even if Defendant had requisite minimum contacts and Plaintiffs' alleged claims arose out of or related to those contacts, both of which are required, *see Ford Motor*, 592 U.S. at 359, an exercise of jurisdiction would be unreasonable and unjust—an independent inquiry sufficient to warrant dismissal. The Supreme Court has recognized that "unique burdens" are "placed upon one who must defend oneself in a foreign legal system," necessitating that "great care must be exercised when considering personal jurisdiction in the international context." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 103, 114 (1987). The Third Circuit agrees. *See O'Connor*, 496 F.3d at 324 ("the burden on the defendant is a 'primary concern' in any case . . . and it is all the more significant" on a *foreign* defendant that must travel two thousand miles to litigate). Here, Defendant is a foreign company, with essentially one employee, based in and operating solely from the Czech Republic in Prague, *see* Kleissner Decl. (DE 27-4) ¶¶ 5-6—over *four thousand miles* from the District of New Jersey. Even where minimum contacts do exist, courts have dismissed claims where the exercise of jurisdiction would not comport with notions of fair play and substantial justice in similar cases. *Eaton Corp. v. Maslym Holding Co*., 929 F. Supp. 792, 798-99 (D.N.J. 1996) (dismissing on these grounds where foreign defendant maintained no presence, employees, or documents in New Jersey itself or the United States as a whole). Further, regardless of New Jersey's interest in Daniel's Law, the Supreme Court has held that the "Due Process Clause . . . may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980).

With jurisdictional discovery confirming what Plaintiffs knew or could have known before filing their Complaint—that there is no basis to assert personal jurisdiction against Defendant—Plaintiffs stoop to argue that Defendant's good-faith participation in the judicial process thus far is evidence of a "modest" burden on Defendant, sufficient to render the exercise of personal jurisdiction reasonable. *See* Pl. Supp. Br. at 14-15 (DE 53 at 17-18). Plaintiffs may be as cavalier about the cost to Defendant in this matter (of retaining local counsel, filing a Motion to Dismiss and Motion to Compel Arbitration, cooperating with court-ordered jurisdictional discovery, and filing supplemental briefs) as they about the facts in their cookie-cutter complaint and briefing in this case, which has been rife with clear factual errors,[7] but this Court should not be. Accepting this argument undermines the functioning and goals of Rule 12 and the due-process protections underlying personal-jurisdiction requirements. A defendant that timely moves to dismiss for lack of personal jurisdiction and cooperates with court-ordered briefing on that issue has not paradoxically *waived* its jurisdictional defense by doing so—even if it removes the case to federal court. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 131-32 (3d Cir. 2020). In addition to being wrong as a matter of law, Plaintiffs' argument creates a perverse incentive for defendants with meritorious jurisdictional objections to default and/or ignore court orders, as it pleases them. Plaintiffs advance a rule that would punish good-faith participation and compliance.

Finally, exercise of jurisdiction is unreasonable as neither this Court nor New Jersey have

---

[7] *See*, *e.g.*, Def. Reply at 1-2 and n.1 (DE 36 at 5-6) (identifying completely unsupported factual averment in Plaintiffs' Response Brief); *id*. at 14-15 (DE 36 at 18-19) (identifying mischaracterization in Plaintiffs' brief without any factual support in citation to Plaintiffs' *own complaint*); Def. Supp. Br. in Supp. of Mot. to Compel Arb. at 9-10 (DE 54 at 13-14) (noting Plaintiffs' failure to identify (i) their own contrary legal position in related litigation and (ii) this Court's directly contrary authority concerning the real party in interest in related litigation).

any interest in enforcing an unconstitutional law, and Daniel's Law is unconstitutional. The New Jersey Supreme Court ruled on August 12, 2026, in response to certified questions from the Third Circuit, that Daniel's Law requires no mental state requirement for actual damages liability to attach. *We Inform, LLC*, 2026 WL 2327966. Both the Third Circuit, *Atlas Data Privacy Corp. v. We Inform, LLC*, No. 25-1555, 2025 WL 3058688 (3d Cir. Sept. 2, 2025), and this Court, *We Inform, LLC*, 758 F. Supp. 3d at 340-41, have recognized that Daniel's Law would be unconstitutional under the First Amendment if it imposed strict liability. Now, it is clear that it does. Extending jurisdiction to enforce claims under an unconstitutional law violates traditional notions of fair play and substantial justice.[8]

Similarly, Defendant moved to dismiss Plaintiffs' Complaint because it is immune from liability under the Section 230 of the Communications Decency Act ("CDA"). Def. Br. at 20-23 (DE 27-1 at 25-28). In their supplemental filings, Plaintiffs offer "a sampling of New Jersey data" obtained through Defendant's website. Agarwal Cert. Ex. C ("Website Screenshot") (DE 53-4). Far from establishing that Defendant targeted New Jersey, the Website Screenshot directly establishes Defendant's CDA immunity.[9] The image contains the filename of the information returned by Defendant's search engine: "USA_Customers_04.2021_(153.986.518).rar/USA_Customers_04.2021_(153.986.518)_2.txt." As explained in Peter Kleissner's Third Declaration, using this filename, Defendant traced the source of the relevant file in its index to two separate publicly available websites. Third Kleissner Decl. ¶¶ 20-22. Defendant republished the file without modifying the original

[8] In addition to violating the First Amendment, Daniel's Law also violates the Foreign Commerce Clause. *See* Def. Br. at 16-20 (DE 27-1 at 21-15).

[9] In addition, nowhere do Plaintiffs prove that the individual they identify is in fact the relevant protected person, that there was a takedown request with respect to that individual, or that Defendant failed to act on that takedown request.

published data or file. *Id*. ¶¶ 23-25. It is therefore immune from liability under the CDA. *See* Def. Br. at 20-23 (DE 27-1 at 25-28). An exercise of jurisdiction would be wholly unreasonable on these grounds.

## CONCLUSION

Plaintiffs have had every opportunity to demonstrate facts supporting the assertion of personal jurisdiction, including the opportunity of jurisdictional discovery despite the lack of any plausible allegations or facts supporting imposing that burden on Defendant. An examination of the record clearly shows, even in a light most favorable to Plaintiffs, that there is a vanishingly small basis to assert personal jurisdiction—*much less* support than what the majority of courts require. If jurisdiction can be asserted over Defendant in this matter, then there is truly no meaningful requirement for minimum contacts and fairness. Respectfully, the Court should grant Defendant's motion to dismiss for lack of personal jurisdiction (and on all other grounds asserted by Defendant).

August 21, 2026

Andrew Gerber
Gerber Law PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Of Counsel:
Victor Suthammanont
Kostelanetz LLP
7 World Trade Center, 34th Floor
New York, NY 10007
(212) 719-2649
vsuthammanont@kostelanetz.com