IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KLEISSNER INVESTMENTS S.R.O., et al. | : | NO. 25-17065 |

MEMORANDUM

Bartle, J. October 20, 2026

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as assignee of over 19,000 persons as well as two individual plaintiffs allege that defendant Kleissner Investments S.R.O. ("Kleissner") has violated Daniel's Law, N.J. Stat. Ann. § 56:8-166.1. Plaintiffs seek damages. Before the court is the motion of the defendant to dismiss this action under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of specific personal jurisdiction and under Rule 12(b)(6) for failure to state a claim.

I

Daniel's Law was enacted by the New Jersey Legislature in the wake of the attempted assassination of United States District Judge Esther Salas. A disgruntled lawyer obtained her home address on the internet, appeared at her home, wounded her husband, and killed her son.

Daniel's Law provides that judges, prosecutors and other law enforcement officers as well as their immediate family members ("covered persons") may request in writing that any person, business, or association not disclose or make available their home addresses and unpublished telephone numbers. The person, business or association must comply with the request not later than ten business days after receiving notification. If there is non-compliance, Daniel's Law provides for actual damages or liquidated damages of $1,000 per violation. The Law also allows for punitive damages for willful or reckless disregard of the law.

Daniel's Law authorizes covered persons to assign their claims. As noted above, over 19,000 covered persons have made assignments to Atlas after using its website to request that Kleissner stop disclosing their personal contact information.

II

The court allowed discovery on the issue of personal jurisdiction and finds the following.

Kleissner is a Czech company with its principal place of business in the Czech Republic. It operates two search engines available online: Intelligence X and Identity Portal. Kleissner describes its products as similar to Google. When a

user inputs a search term, the search engines show an index of results from other relevant websites to the user.[1] While Intelligence X and Identity Portal show these results differently, they both use the same underlying dataset. This data is housed on servers located in the Czech Republic.

The data available on both search engines is gathered using "web crawling" software programs. Kleissner's web crawlers automatically browse, download, and index information from the internet, including dark web repositories, document-sharing platforms, public data leaks, and public records. The web crawlers then index information into specific categories and identify the sources of the information. One of the sources of collected information is from governmental websites. Kleissner does not pay for any of this information.

Kleissner does pay fifty dollars a month for a subscription to whoisdatadownload.com. The subscription provides Kleissner with WHOIS data, but this data consists only of the email addresses and telephone numbers voluntarily provided by people who register web domain names. Kleissner's

1 Plaintiffs counter that Kleissner's products are different from Google because they show data from "specialized, difficult-to-reach sources," which are described further below.

web crawlers use this WHOIS data to determine what websites are available to third parties to browse and index.

Customers may gain access to Intelligence X either for free or by paying for licenses to the website. Identity Portal users must register and pay for a subscription. Only three of Kleissner's customers have billing addresses in New Jersey. Two of these customers, when prompted to select a country setting, chose countries outside of the United States. Significantly, none of these three customers uses their accounts in New Jersey. In 2025, these end user customers constituted 0.22% of Kleissner's customers and accounted for 0.42% of its revenue.

Kleissner also contracted with SHI International Corp. ("SHI"), which has a New Jersey business address. SHI purchases Intelligence X licenses from Kleissner at full price and then resells them to others. These end users therefore do not interact with Kleissner. Each license sold through SHI explicitly states that the end user is outside of New Jersey.

III

Plaintiffs have the burden of proving the existence of specific personal jurisdiction. See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007). As Kleissner is a Czech corporation with its principal place of business in the Czech Republic, plaintiff does not argue that this court has

general personal jurisdiction over it. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).

Plaintiffs argue that this court has jurisdiction over Kleissner under the traditional purposeful availment framework articulated in Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351, 359-60 (2021).

In Ford, the Supreme Court had before it two lawsuits filed in state courts. One involved a driver who died in an accident involving an allegedly defective Ford Explorer in Montana, and the other was brought by a passenger who was injured in an allegedly defective Ford Crown Victoria in Minnesota. Ford argued no personal jurisdiction existed. It maintained there was no causal connection between its in-state activities and the actions, since it did not manufacture or sell the cars involved in the accidents in those states.

The Court explained that for a court to have specific jurisdiction, the lawsuit must "arise out of or relate to the defendant's contacts with the forum." Id. at 362 (quoting Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017)). "Relate to," means that some relationships between a defendant's activities and the litigation will support jurisdiction, even if the plaintiff cannot show that the defendant's activities actually caused the

injury in issue. Id. The Court emphasized that the phrase "relate to" incorporates "real limits" in order "to adequately protect defendants foreign to the forum," and it "does not mean anything goes." Id.

It ruled that Ford had an extensive presence in each state as evidenced in part by its marketing activities and sales of Explorers and Crown Victorias there. It also noted that allowing these states to exercise jurisdiction would be fair and unsurprising to Ford, since Ford enjoyed the protection of the states' laws such as the enforcement of contracts and defense of its property by conducting so much business in Montana and Minnesota. Id. at 367-68. As a result, the Court concluded that there was a sufficient relationship between Ford, the states, and the plaintiffs to establish jurisdiction even though the cars in question had not been made or sold in the states in question. The Court was careful to note that it was not deciding if personal jurisdiction would exist if Ford had not marketed Explorers and Crown Victorias in Minnesota and Montana.

The Supreme Court distinguished the case before it from Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 582 U.S. 255 (2017). In Bristol-Myers, the Court held that California could not exercise jurisdiction over the manufacturer of a nationally marketed prescription drug

because the plaintiffs did not suffer harm, use the drugs, or buy the drugs in California. The Court noted that, in contrast, the Ford plaintiffs were residents of, used Ford cars, and were injured by defective Ford cars in Montana and Minnesota.

Unlike Ford, Kleissner does not have an extensive presence in the forum. Its contacts with New Jersey are so attenuated that they do not meet the minimum contacts requirements of the Due Process Clause of the Constitution. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003). Plaintiffs must show "something more" beyond the fact that Kleissner's search engines are accessible in New Jersey. See id. at 453-54. Mere "fortuitous, random, and attenuated contacts" are insufficient to warrant the exercise of jurisdiction. Id. at 455 (citation modified). What is something more must be decided on a case-by-case basis by evaluating the nature and quality of the contacts, although "non-internet" contacts may form part of the "something more." Id. at 453-54; see also Hasson v. FullStory, Inc., 114 F.4th 181, 193 (3d Cir. 2024).[2]

2 This court has previously held that it can exercise jurisdiction in Daniel's Law actions brought against defendants who had extensive interactions with New Jersey in a variety of ways. See Atlas Data Priv. Corp. v. Quantarium All., LLC, No. 24-cv-11023, 2026 WL 765716, at *4 (D.N.J. Mar. 18, 2026). This included by marketing their products there, receiving tens of thousands to millions of dollars in revenue from New Jersey

Here, plaintiffs argue that the "alleged injury stems from Protected Information about New Jersey Covered Persons that Defendant collected, archived, and made available through its platform to New Jersey customers." They characterize the harm caused by Kleissner's alleged violation of Daniel's law as an invasion of privacy of covered persons in New Jersey.

While it is undisputed that Kleissner's search engines are accessible in New Jersey, Kleissner, which is located in the Czech Republic, does not market in the forum. Nor is there evidence that anyone in New Jersey has accessed the information of covered persons or others. Kleissner does have a contract with SHI, but this contract has no connection with the allegations here. The end users of the licenses SHI buys from Kleissner are outside of New Jersey. SHI's contract with Kleissner also specifies that the end user is outside of New Jersey. An end user with whom Kleissner does not have a contract is not its responsibility. Three of Kleissner's customers listed New Jersey addresses as their billing addresses, but none of these three customers uses their accounts

customers, publicly noting it responded to nondisclosure requests submitted pursuant to Daniel's Law, and obtaining the addresses and contact information of millions of New Jersey individuals and households. Id. at *1-4.

in New Jersey, and they constituted only 0.22% of Kleissner's users.

Plaintiffs argue that Kleissner has availed itself of this court's jurisdiction by purchasing from a vendor WHOIS data, including that of New Jersey residents and covered persons. As noted above, if WHOIS data includes a covered person's information, the covered person must have voluntarily provided that information when registering website domains.[3]

Plaintiffs have provided an example of one New Jersey detective's protected information made available on Kleissner's database as evidence that Kleissner collects the information of covered persons.[4] Kleissner avers that it "indexed and archived [this information] from publicly available sources published elsewhere on the internet." The extent of Kleissner's

---

3 This is analogous to how True Software Scandinavia AB ("True Software") obtained information from covered persons. Atlas Data Priv. Corp. v. Quantarium All., LLC, No. 24-cv-11023, 2026 WL 765716, at *4 (D.N.J. Mar. 18, 2026). True Software only collects home addresses and phone numbers of New Jersey residents if they choose to call its customers or if the information is already known to and voluntarily given by its customers. Id. It "does not possess except possibly in very rare instances any information on covered persons." Id. at *8. This court dismissed Daniel's Law claims against True Software for lack of personal jurisdiction.

4 This detective is not a named plaintiff in this matter, and this example is dated both as July 5, 2021 and August 8, 2024. It is unclear when this information was obtained by Kleissner and if it still makes it available.

collection of addresses and unlisted phone numbers of New Jersey residents has not been established during discovery. This one instance of protected information being shown appears to be an attenuated contact and does not demonstrate that Kleissner offered "something more" than its commercially interactive websites. See Toys "R" Us, Inc., 318 F.3d at 452, 454-55.

There is no causal connection between Kleissner's activities in the forum and the claims in this lawsuit, and even if there is some indirect connection, it is so attenuated that it does not meet the minimum contact requirements of the Due Process Clause of the Constitution.

Nor does this lawsuit relate to defendant's contacts with New Jersey. As noted, Kleissner, unlike Ford, does not have an extensive presence in the forum. While its search engines may be accessible, it does not promote there. Plaintiffs have not established the something more required under Toys "R" Us, Inc.

Accordingly, the motion of defendant Kleissner Investments S.R.O. to dismiss for lack of subject matter jurisdiction will be granted.[5]

BY THE COURT:

/s/ Harvey Bartle III
J.

5 Kleissner also argues that Daniel's Law is unconstitutional and that plaintiffs fail to state a claim. Because the court will dismiss the complaint for lack of jurisdiction, it will not reach the other arguments propounded by Kleissner.